## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERICA DANDRY CONSTANZA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-871** |
| **SPARTA INSURANCE COMPANY, ET AL.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner's (collectively, "Plaintiffs") "Motion for Partial Summary Judgment that Michael Dandry, Jr. Was Not Exposed to Asbestos Through His Father's Employment with Johns-Manville and that Michael Dandry, Jr.'s Father, Michael Dandry, Sr. Did Not Die from Mesothelioma."[1] In this litigation, Plaintiffs allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4] Plaintiffs move the Court to find that Michael Dandry, Jr. was not exposed to asbestos through his father's employment with Johns-Manville and that Michael Dandry, Jr's

---

[1] Rec. Doc. 195.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

1

father, Michael Dandry, Sr., did not die from mesothelioma.[5] Defendants Avondale and Paramount Global (collectively, "Defendants") oppose the motion.[6] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion in part and denies the motion in part.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[7] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[8] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[9] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[10] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[11] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the

---

[5] Rec. Doc. 195.

[6] Rec. Docs. 218, 240.

[7] Rec. Doc. 1-3 at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.* at 5.

safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[12]

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[13] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[14] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[15]

On the other hand, Defendants advance an alternate theory of asbestos exposure from Decedent's father's prior employment.[16] Decedent's father worked for a company called Johns-Manville for eleven days in 1948.[17] While working for Johns-Manville Decedent's father was allegedly subjected to "significant exposure to asbestos."[18] Decedent's father's lived at 5146 Fourth Street in Marrero, Louisiana, while employed with Johns-Manville.[19] Decedent was born in 1953, almost five years after the alleged Johns-Manville asbestos exposure of his father.[20]

---

[12] *Id.*

[13] *Id.* at 18.

[14] *Id.* at 19.

[15] *Id.*

[16] Rec. Doc. 247 at 2.

[17] Rec. Doc. 195-1 at 2.

[18] Rec. Doc. 247 at 2.

[19] Rec. Doc. 195-1 at 2.

[20] *Id.* at 2–3.

Further, the family home at the time of Decedent's birth had moved to 407 Meyers Boulevard in Marrero, Louisiana.[21]

On September 15, 2025, Plaintiffs filed the instant Motion for Partial Summary Judgment.[22] On September 19, 2025, Avondale filed an Opposition to the Motion.[23] On September 26, 2025, Plaintiffs filed a Reply in further support of the Motion.[24] On September 30, 2025, Defendants Liberty Mutual Insurance and Bayer CropScience, Inc. joined Avondale's Opposition.[25]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of their Motion*

Plaintiffs assert there is "no genuine issue of material fact that: (1) that Michael Dandry, Jr. was not exposed to asbestos through his father's employment with Johns-Manville and (2) that Michael Dandry, Jr's father, Michael Dandry, Sr., did not die from mesothelioma[.]"[26] Further, Plaintiffs contend that "Defendants have failed to produce any evidence that Michael Dandry, Jr. sustained exposure through his father's work at Johns-Manville such that the exposure contributed to his mesothelioma."[27]

Plaintiffs submit that the reason Defendants have not provided any evidence concerning Decedent's exposure to asbestos from his father's work is because this theory of exposure is

---

[21] *Id.* at 2.

[22] Rec. Doc. 195.

[23] Rec. Doc. 247.

[24] Rec. Doc. 271.

[25] Rec. Docs. 285, 286.

[26] Rec. Doc. 195-1 at 1.

[27] *Id.* at 2.

"impossible" in this case.[28] While Plaintiffs concede that Decedent's father worked at Johns-Manville for eleven days in 1948, they point out that Decedent was not born until 1953.[29] Further, Decedent's father had moved from the home he occupied during his tenure at Johns-Manville to a different house by the time Decedent was born.[30] Additionally, Plaintiffs offer that no expert has "opined that Michael Dandry, Jr. sustained any exposures whatsoever through his father's employment at Johns-Manville."[31] Finally, Plaintiffs point out that Avondale's own expert, Dr. Bruce Case, testified that Decedent would not have sustained significant asbestos exposure from his father's Johns-Manville employment.[32]

Plaintiffs argue that in support of the Johns-Manville exposure theory Avondale has merely introduced excerpts from Decedent's medical records where Decedent indicated, and his physicians agreed, that he may have had asbestos exposure through his father's employment at Johns-Manville.[33] These excerpts also indicated that Decedent's father "passed away" or "did die from mesothelioma[.]"[34] Plaintiffs assert that it was impossible for Decedent to sustain exposure to asbestos through his father's employment because he was not born at the time.[35]

---

[28] *Id.*

[29] *Id.*

[30] *Id.* at 3.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 4.

[35] *Id.*

Further, Plaintiffs contend that Decedent's father did not die from mesothelioma.[36] This contention is evidenced by the father's death certificate indicating lung cancer as the cause of death.[37] Plaintiff's point out that Avondale's own expert, Dr. Bruce Case, distinguished lung cancer from mesothelioma.[38] Additionally, Dr. Rodney Landreneau explained that the cause of death indicated on Decedent's father's death certificate was lung cancer and that due to the diagnostic methods available at the time of death, mesothelioma would not have been misidentified as lung cancer.[39] Lastly, Plaintiffs state that "Defendants have not come forward with any expert medical testimony establishing that Michael Dandry, Jr.'s father died from mesothelioma" and "expert medical testimony is required to prove causation."[40]

## B.    *Avondale's Arguments in Opposition of the Motion*

Avondale asserts that "there are genuine issues of material fact regarding (1) whether Mr. Dandry sustained exposures to asbestos from his father's Johns-Manville work and (2) whether his father died from mesothelioma."[41] Avondale contends that there is evidence that Decedent was exposed to asbestos because of his father's Johns-Manville employment and that his father died of mesothelioma.[42]

---

[36] *Id.*

[37] *Id.*

[38] *Id.* at 5.

[39] *Id.*

[40] *Id.*

[41] Rec. Doc. 247 at 2.

[42] *Id.* at 4, 7.

Avondale begins by claiming that the evidence shows that the Johns-Manville plant near Marrero manufactured products containing asbestos, including "transite pipe containing crocidolite asbestos and also distributed asbestos-containing scrap material throughout" the area.[43] Further, Avondale introduces "the sick house theory," which is regularly used by plaintiffs in asbestos cases to establish exposure.[44] Avondale points out that Plaintiffs' expert Gerard Baril cites the sick house theory in his report.[45] Avondale cites Mr. Baril's report, which states:

> when workers wear their asbestos-contaminated clothing home from work, the asbestos contaminates the home, and the dust settles on typical household surfaces, including porous materials such as upholstery, bed linen, blankets, pillows, and carpets. Any normal housekeeping activities would re-entrain the dust and result in inhalation. This contamination persists even after the asbestos dust is no longer being introduced into the home.[46]

Additionally, Avondale cites Mr. Baril's deposition where he explains in detail how the sick house theory works.[47] During his deposition Mr. Baril also discussed how the asbestos brought into the home could remain for an indeterminate amount of time and could move from one home to another on contaminated personal property.[48] Avondale asserts that Mr. Baril's statements when applied to the facts surrounding Decedent's father's Johns-Manville employment provides evidence that Decedent could have been exposed to asbestos through said employment.[49] Avondale argues that Decedent's father may have brought asbestos to his home on Fourth Street from Johns-

---

[43] *Id.* at 2.

[44] *Id.* at 4.

[45] *Id.*; Rec. Doc. 247-1 at 42–44.

[46] *Id.*

[47] Rec. Docs. 247 at 5, 247-2 at 7–8.

[48] Rec. Docs. 247 at 5, 247-2 at 8–9.

[49] Rec. Doc. 247 at 6–7.

Manville in 1948.[50] Further, the asbestos may have been transferred to the Meyers Boulevard home on Decedent's father's personal property.[51] Finally, Decedent could have been exposed to said asbestos while living at the Meyers Boulevard home.[52]

Avondale also asserts that "there is clearly an issue of fact [regarding Decedent's father's cause of death] as Mr. Dandry reported to his own doctors that his father died from mesothelioma."[53] Avondale states "[t]he fact that lung cancer is listed on [Decedent's father's] death certificate is not admissible as it is well established that death certificates are not admissible to prove cause of death."[54] In support of this factual dispute Avondale cites Dr. Bruce Case who "testified that death certificates are not always accurate with regard to causes of death."[55]

## C.    *Plaintiffs' Arguments in Further Support of their Motion*

In reply, Plaintiffs contend that Avondale has the burden of proving that Decedent was exposed to asbestos from his father's employment.[56] Plaintiffs aver that this would require proving that Decedent's father was exposed to asbestos while employed at Johns-Manville and that said asbestos was then carried home to Decedent.[57] Plaintiffs state that Avondale has not come forward with any evidence that establishes either of these points.[58]

---

[50] *Id.* at 6.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 7.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] Rec. Doc. 271 at 2.

Further, Plaintiffs point out that Avondale admits that Mr. Baril did not offer any opinion concerning whether Decedent was exposed to asbestos through his father's work at Johns-Manville.[59] Plaintiffs argue that the "Fifth Circuit makes clear that expert testimony is required to establish exposures to toxic substances. Avondale has not submitted such testimony."[60] Additionally, Plaintiffs assert that while Avondale may have presented evidence of Decedent's potential exposure from Johns-Manville facilities distributing asbestos containing materials near his childhood residence, this "is not the subject of Plaintiffs' motion."[61] Plaintiffs conclude this point by stating they are not aware of any expert discussing sick house theory in relation to Decedent's exposure from his father's employment.[62]

Regarding Decedent's father's cause of death, Plaintiffs contend that no expert has testified that the father died from mesothelioma and Avondale does not dispute this.[63] Further, "[t]he fact that Michael Dandry, Jr. or other family members may have believed Michael Sr. died of mesothelioma from things they heard is not sufficient."[64] Lastly, Plaintiffs submit that "[e]xpert medical testimony is required to prove causation."[65]

---

[59] *Id.* at 3.

[60] *Id.*

[61] *Id.*

[62] *Id.* at 6.

[63] *Id.* at 8.

[64] *Id.*

[65] *Id.*

## III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[66] The court must view the evidence in the light most favorable to the nonmovant.[67] Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[68] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute.[69] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[70]

## IV. Analysis

### A.    *Asbestos Exposure through Decedent's Father's Johns-Manville Employment*

Plaintiffs assert that there is no genuine dispute of material fact that Decedent was not exposed to asbestos through his father's employment with Johns-Manville. Specifically, Plaintiffs argue that to survive summary judgment regarding an issue of specific causation in a toxic-tort case the non-movant must provide admissible expert testimony demonstrating the alleged causation.[71] However, Avondale contends that it has provided sufficient evidence by citing the sick house theory and statements from Plaintiffs' expert Gerard Baril.[72] The Fifth Circuit has ruled that "conclusory, unsubstantiated assertions, or only a scintilla of evidence cannot on their own

---

[66] Fed. R. Civ. P. 56(a).

[67] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[68] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[69] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[70] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

[71] Rec. Doc. 271 at 3 (citing *Seaman v. Seacor Marine, LLC*, 326 Fed. App'x 721, 729 (5th Cir. 2009)).

[72] Rec. Doc. 247 at 4–6.

create a genuine issue of material fact."[73] A scintilla of evidence is something less than the amount of evidence necessary to support a reasonable finding of fact.[74] Avondale has cited Mr. Baril's application of the sick house theory to Decedent's exposure while working for Avondale and Mr. Baril's application of the sick house theory in other cases.[75] Avondale argues that this is sufficient evidence that the sick house theory is plausible theory of exposure through Decedent's father's employment.[76] The Court disagrees. Not only has Avondale failed to cite any expert testimony to support its contention that the sick house theory applies here, but it has also failed to address Dr. Bruce Case's testimony refuting this claim.[77] Thus, the Court finds that Avondale has merely presented a scintilla of evidence to support its assertion that Decedent may have been exposed to asbestos through his father's Johns-Manville employment. Accordingly, the Court grants summary judgment in favor of Plaintiffs on this issue.

## B.    *Decedent's Father's Cause of Death*

Plaintiffs contend that there is no genuine dispute of material fact that Decedent's father did not die from mesothelioma. In support of this contention, Plaintiffs submit Decedent's father's death certificate listing lung cancer as the cause of death coupled with the testimony of Dr. Rodney Landreneau stating that it would be unlikely for mesothelioma to be misidentified as lung cancer. Avondale argues that a death certificate is not admissible to establish the cause of death. Here,

---

[73] *Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024) (internal citations omitted).

[74] *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994) ("A rational trier of fact might conclude that Davis'[s] allegations present a scintilla of evidence, but a mere scintilla is not enough to defeat a motion for summary judgment.").

[75] Rec. Doc. 247 at 4.

[76] *Id.* at 5–6.

[77] Rec. Doc. 247.

11

Plaintiffs bear the burden of establishing that there is no genuine issue of material fact in dispute.[78] Further, "Louisiana jurisprudence makes clear, [Louisiana statutory law] does not require a court to accept the death certificate as proof of the cause of death when it is called into question in a lawsuit.  In fact, a death certificate is inadmissible for proving the cause of death in court[.]"[79] Hence, absent any proof independent of Decedent's father's death certificate Plaintiffs have failed to meet their burden to prove there is no genuine issue of material fact. Thus, the Court denies summary judgment on the issue of Decedent's father's cause of death. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Partial Summary Judgment that Michael Dandry, Jr. Was Not Exposed to Asbestos Through His Father's Employment with Johns-Manville and that Michael Dandry, Jr.'s Father, Michael Dandry, Sr. Did Not Die from Mesothelioma."[80] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that it seeks summary judgment that Michael Dandry, Jr. was not exposed to asbestos through his father's employment with Johns-Manville. The motion is **DENIED** to the extent it requests summary judgment that Michael Dandry, Sr. did not die from mesothelioma.

**NEW ORLEANS, LOUISIANA,** this   28th day of October, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[78] *See Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir. 1993).

[79] *Rivera v. Walmart, Inc.*, No. 19-12616, 2021 WL 2894148, at *3 (E.D. La. July 9, 2021) (citing *Alexander v. State, Dep't of Health and Hosps.*, 94-714, (La. App. 3 Cir. 12/7/94), 648 So. 2d 11, 14).

[80] Rec. Doc. 195.