# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ERICA DANDRY CONSTANZA, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                            **CASE NO. 24-871**

**SPARTA INSURANCE COMPANY, ET AL.**                  **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court is Defendant Paramount Global's ("Paramount") "Motion for Partial Summary Judgment Regarding Turbines."[1] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner ("Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties, including Paramount (collectively, "Defendants").[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4] Paramount moves the Court to dismiss all claims asserted by Plaintiffs and Avondale regarding Paramount supplied marine turbines, as the potential source of Decedent's asbestos exposure.[5]

---

[1] Rec. Doc. 199.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

[5] Rec. Doc. 199.

1

Plaintiffs and Avondale oppose the motion.[6] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[7] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[8] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[9] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[10] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[11] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[12]

---

[6] Rec. Docs. 242, 246.

[7] Rec. Doc. 1-3 at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.* at 5.

[12] *Id.*

Plaintiffs also name numerous additional defendants, including Paramount, who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[13] Plaintiffs allege that Defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[14] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[15] It is also alleged that Paramount failed to warn of the hazards of asbestos, including the risk of mesothelioma.[16] Additionally, Plaintiffs allege that Mr. Dandry died of mesothelioma as a result of exposures to asbestos, in part originating from asbestos attributable to Paramount products—including the insulation and gaskets used with marine turbines.[17] Avondale filed a crossclaim against Paramount for contribution.[18]

Billy Jambon was employed by Avondale in a similar role as Decedent during the same time as Decedent.[19] Mr. Jambon specifically recalled seeing Mr. Dandry working as an outside machinist helper at Avondale's Shipyard in the engine rooms of Destroyer Escorts and LASH vessels, which were under construction.[20] Mr. Jambon testified that Mr. Dandry was working on

---

[13] *Id.* at 18.

[14] *Id.* at 19.

[15] *Id.*

[16] Rec. Doc. 1-2 at 10.

[17] *Id.* at 2, 4, 5, 8, 13.

[18] Rec. Doc. 5.

[19] Rec. Doc. 242-2 at 9. In addition to being Decedent's coworker Mr. Jambon was also related to Decedent through marriage.

[20] *Id.* at 10–11.

turbines manufactured by Paramount in the engine rooms of the Destroyer Escorts.[21] Mr. Jambon noted that while in the engine rooms, Mr. Dandry would have worked around insulators who were covering pipes and insulating equipment.[22] With regard to the insulating materials, Mr. Jambon testified that the various materials would create dust, which would "fly all over the place."[23] Further, multiple experts retained in this case have opined that Decedent had exposure to asbestos from the insulation of the Paramount turbines.[24] Additionally, those experts share the opinion that said asbestos exposure "significantly increased the risk" or was a significant contributing factor to Decedent's development of mesothelioma.[25]

On September 16, 2025, Paramount filed the instant Motion for Partial Summary Judgment.[26] On September 23, 2025, Avondale and Plaintiffs opposed the Motion.[27] On September 29, 2025, Paramount filed a reply in further support of the Motion.[28]

## II. Parties' Arguments

### A.    *Paramount's Arguments in Support of the Partial Motion for Summary Judgment*

Paramount claims that "there is no evidence Michael P. Dandry, Jr. was exposed to asbestos containing products manufactured, sold, supplied or installed by [Paramount] in connection with marine turbines, much less that such exposure, if any, was a substantial contributing cause of his

---

[21] *Id.* at 17.

[22] *Id.* at 13–14.

[23] *Id.* at 17–18.

[24] Rec. Docs. 242-6 at 39; 242-8 at 8; 242-11 at 37–38.

[25] Rec. Docs. 242-6 at 39; 242-9 at 7; 242-11 at 7–8.

[26] Rec. Doc. 199.

[27] Rec. Docs. 242, 246.

[28] Rec. Doc. 283.

mesothelioma."[29] Paramount contends that the substantial factor test governs the issue of causation here, where "two or more causes of injury are present in a cumulative disease case."[30] Paramount asserts that in order to meet their burden Plaintiffs "must first prove that Decedent was actually exposed to an asbestos-containing product manufactured, sold, or supplied by [Paramount]."[31] Further, Paramount submits that Plaintiffs must show that Decedent had "significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury."[32] To meet this standard Paramount asserts that Plaintiffs must prove "frequent" and "regular" exposure to the source of asbestos.[33]  Paramount claims that Plaintiffs cannot meet their burden of proof because "[t]here is no testimony or other evidence that Decedent personally worked on a [Paramount] turbine or that he was a bystander to others performing work on a [Paramount] turbine."[34] Additionally, Paramount argues that the presence of turbines manufactured by Paramount on vessels that Decedent boarded during his employment does not prove that Decedent was exposed to asbestos attributable to those turbines.[35]

Paramount submits that even if Decedent was around Avondale employees performing insulation work on a Paramount turbine, Paramount "is not legally responsible for Decedent's

---

[29] Rec. Doc. 199 at 1.

[30] Rec. Doc. 199-2 at 5 (citing *Young v. Logue*, 94-0585, p. 19 (La. App. 4 Cir. 5/16/95), 660 So.2d 32, 46-47).

[31] *Id.* at 6.

[32] *Id.*

[33] *Id.* (citing *In Re Asbestos Plaintiffs v. Bordelon, Inc.*, 96-0525 (La. App. 4 Cir. 10/21/98), 726 So.2d 926, 939).

[34] *Id.* at 7.

[35] *Id.* at 7–8.

alleged exposure to asbestos-containing products it did not manufacture, sell, supply, or install."[36] Paramount asserts that there is no dispute that Paramount's marine turbines were "bare metal" when supplied to Avondale.[37] Further, Paramount contends that any exterior insulation work done on said turbines was "done by Avondale, using materials manufactured, sold, and supplied by Avondale and/or companies other than [Paramount]."[38] Paramount cites *Newman v. General Motors Corp.* to argue that "a manufacturer or seller cannot be liable in a products liability action where it proves that it did not manufacture, install, or sell the component part alleged to be defective."[39]

Finally, Paramount cites *Cortez v. Lamorak Ins. Co.*, a recent case in another section of this Court where it was held that products liability claims brought against Paramount failed because Paramount "could not be liable for insulation which Avondale installed on its products when [Paramount] did not manufacture or supply the insulation."[40] Paramount asserts that *Cortez* is directly on point for the instant matter because here Paramount "did not manufacture, sell, design, install, specify, require, or recommend that asbestos-containing exterior insulation be applied to its marine turbines."[41] Further, Paramount contends that it had no duty to warn about "the dangers inherent in the products of third parties, which were purchased and installed by Avondale."[42] Thus,

---

[36] *Id.* at 9.

[37] *Id.*

[38] *Id.*

[39] *Id.* (citing 524 So. 2d 207 (La. Ct. App. 4 Cir. 1988)).

[40] *Id.* at 10 (citing 610 F. Supp. 3d 877, 890 (E.D. La. 2022)).

[41] *Id.* at 10–11.

[42] *Id.*

even if Decedent was exposed to asbestos-containing insulation applied to a Paramount turbine, Paramount argues it cannot be held liable.[43]

## B.    *Avondale's Arguments in Opposition to the Partial Motion for Summary Judgment*

Avondale opposes the instant motion, claiming that there are "genuine issues of material fact as to whether: 1) Decedent, Mr. Michael Dandry, Jr., was exposed to asbestos from [Paramount] turbines; and 2) such exposures were a substantial contributing cause of his mesothelioma."[44] First, Avondale argues that Paramount incorrectly cites a more stringent causation standard that is not applicable to mesothelioma cases.[45] Avondale contends that the "frequent, regular exposure" causation standard is reserved for asbestosis and lung cancer cases, not mesothelioma cases.[46] Avondale submits that because mesothelioma can be contracted with significantly less exposure the Louisiana Fourth Circuit has applied a different causation standard.[47] That court has held that "[a]ll above-background or non-trivial exposures to asbestos are substantial contributing causes of mesothelioma."[48]

Second, Avondale criticizes Paramount's "bare metal" defense.[49] Avondale contends that even if Paramount did not manufacture or supply the asbestos-containing insulation, it can be liable for Decedent's resulting mesothelioma because those materials were necessary for the safe

---

[43] *Id.* at 11.

[44] Rec. Doc. 242 at 1.

[45] *Id.* at 10.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 11 (quoting *McAskill v. American Marine*, 2007-1445, 7–8 (La. App. 4 Cir. 3/4/09), 9 So.3d 264, 268).

[49] *Id.* at 11

operation of the turbines.[50] Avondale cites multiple cases in this Court and others where the courts found that a defendant was not entitled to a "bare metal" defense where the asbestos containing materials were integrated into the defendant's product according to the defendant's specifications.[51] Avondale argues that because Paramount designed its turbines to require insulation for proper functionality, it must have known that asbestos-containing insulation would be used since this was the only effective insulation material commercially available in the 1960s and 1970s, when the turbines at issue would have been manufactured.[52]

Turning to the evidence, Avondale asserts that Mr. Jambon, an Avondale coworker of Decedent, testified that he specifically recalled seeing Decedent working in the engine rooms of Destroyer Escorts and LASH vessels, which were under construction.[53] Further, Mr. Jambon said that Decedent was working on the turbines of the Destroyer Escorts which were manufactured by Paramount.[54] Additionally, Mr. Jambon testified that Decedent would have worked around insulators who were covering pipes and insulating equipment in the engine rooms.[55] Mr. Jambon also testified that the insulating materials would create dust which would "fly all over the place."[56]

---

[50] *Id.* at 11–12.

[51] *Id.* at 12–13 (citing *McAllister v. McDermott, Inc.*, 2020 WL 4745743, at *12 (M.D. La. Aug. 14, 2020); *Bell v. Foster Wheeler Energy Corp.*, 2017 WL 889083, at *5 (E.D. La. Mar. 6, 2017); *Lopez v. McDermott, Inc.*, 2020 WL 3964989, at **7-9 (E.D. La. Jul. 13, 2020); *Becnel v. Lamorak Ins. Co., et al.*, 2022 WL 3704029, at *6 (E.D. La. Aug. 26, 2022)).

[52] *Id.* at 15.

[53] *Id.* at 2.

[54] *Id.* at 2–3.

[55] *Id.* at 3.

[56] *Id.*

In addition to Mr. Jambon's testimony, Avondale offers the reports and testimony of several experts that connect the Paramount turbines to Decedent's alleged asbestos exposure.[57] First, Avondale cites Dr. Rodney Landreneau's report, who opines that Decedent's exposure to asbestos from Paramount turbines was a significant contributing cause to Decedent's development of mesothelioma.[58] Further, in Dr. Stephen Kraus's report he noted that Decedent had significant exposure to asbestos from Paramount turbines and said exposure was a significant contributing cause to Decedent's development of mesothelioma.[59] Additionally, in Mr. Gerard Baril's report he opined that Decedent sustained exposures to asbestos from Paramount turbines, which significantly increased the risk of Decedent developing mesothelioma.[60]

Avondale also offers the testimony of various former Avondale employees who confirm the presence asbestos-containing insulation and gaskets on Paramount turbines during the period when Decedent worked at Avondale.[61] These former employees also recall that Paramount representatives directed or oversaw the installation of insulation on the turbines.[62] Moreover, Avondale asserts that Paramount representatives have testified that Paramount turbines were designed to be insulated and that Paramount often shipped insulation with the turbines to be applied on location.[63]

---

[57] *Id.*

[58] *Id.*

[59] *Id.* at 3–4.

[60] *Id.* at 4.

[61] *Id.* at 5–7.

[62] *Id.*

[63] *Id.* at 7–8.

Additionally, Avondale relies on the testimony of Mark Perello, a Paramount corporate designee, to assert that Paramount required asbestos insulation blankets to be used with its turbines.[64] Avondale also cites the testimony of James Gate, a corporate representative for Paramount, who testified that the turbines were designed to be insulated.[65] Further, Avondale puts forth a corporate representative of Paramount, Roy Belanger's testimony, which established that the turbines required insulation because without it there was a risk of a catastrophic equipment failure.[66] Avondale also asserts that Mr. Belanger's testimony proves that Paramount knew that asbestos-containing insulation would be used on its turbines because that was the only commercially available insulation at the time.[67] Lastly, Avondale refers to Paramount corporate representative, Douglas Ware's testimony to assert that Paramount had a specification calling for the use of an asbestos insulation blanket on its turbine until 1973.[68]

Avondale contends that the standard of proof to defeat summary judgment here is "merely a preponderance of the evidence" and that "circumstantial evidence is sufficient to constitute a preponderance, when, taking evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not."[69] However, Avondale asserts that in light of the above-referenced direct and circumstantial evidence the facts establish that:

> (1) Michael Dandry, Jr. was exposed to asbestos-containing products, including asbestos containing insulation and gaskets, from Westinghouse turbines; (2) the corporate representative of Westinghouse testified that Westinghouse turbines were installed

---

[64] *Id.* at 7.

[65] *Id.* at 8.

[66] *Id.*

[67] *Id.* at 9.

[68] *Id.*

[69] *Id.* at 16.

aboard the Destroyer Escorts that were constructed during Mr. Dandry's Avondale employment, (3) according to Billy Jambon, Mr. Dandry worked around Westinghouse turbines in the engine rooms of vessels at Avondale, including Destroyer Escorts; (4) Westinghouse turbines were designed to require the use of asbestos-containing materials including asbestos insulation and gaskets; (5) Westinghouse knew and expected that asbestos insulation and gaskets would be used to insulate its turbines but never provided any warnings about asbestos hazards; and (6) Plaintiffs' experts, Dr. Stephen Kraus, Gerard Baril, and Dr. Rodney Landreneau, have opined that Mr. Dandry's exposure to asbestos associated with Westinghouse turbines was significant such that it was a substantial contributing factor in Mr. Dandry's development of mesothelioma.[70]

Hence, Avondale argues that material issues of fact exist as to whether Decedent was significantly exposed to asbestos from Paramount's turbines, which was a substantial contributing factor to the development of his mesothelioma.[71]

### C.    *Plaintiffs' Arguments in Opposition to the Partial Motion for Summary Judgment*

Like Avondale, Plaintiffs assert that Decedent's exposure to asbestos from Paramount's turbines was a significant contributing factor in his development of mesothelioma.[72] In support of their assertion, Plaintiffs cite similar evidence as cited above by Avondale including: (1) Mr. Jambon's testimony; (2) the testimony of numerous former Avondale employees; (3) the testimony of Paramount representatives; and (4) the testimony of numerous expert witnesses.[73]

Further, Plaintiffs like Avondale argue that the "bare metal" defense cannot be successfully asserted where the metal product requires an asbestos-containing product to function.[74] Plaintiffs

---

[70] *Id.* at 17–18.

[71] *Id.* at 16.

[72] Rec. Doc. 246 at 1.

[73] *Id.* at 2–15.

[74] *Id.* at 16 (citing *Legendre v. Huntington Ingalls Inc.*, No. 22-1767, 2024 WL 1624889, at *3 (E.D. La. Apr. 15, 2024)).

assert that Paramount designed its turbines to require asbestos-containing insulation materials and gaskets for safe operation.[75] Thus, Paramount may not rely on a "bare metal" defense.[76] Accordingly, Plaintiffs imply that the evidence in the absence of a feasible "bare metal" defense establishes a material dispute of fact that Decedent was exposed to a significant amount of asbestos from Paramount's turbines and that said asbestos exposure was a significant contributing factor to Decedent's development of mesothelioma.[77]

### D.    *Paramount's Arguments in Further Support of the Partial Motion for Summary Judgment*

In reply, Paramount reasserts that there is no evidence that Decedent was exposed to asbestos attributable to Paramount.[78] Paramount maintains its position despite testimony by former Avondale employees confirming the presence of Paramount turbines along with asbestos-containing insulation and gaskets on Destroyer Escorts, and Mr. Jambon's testimony claiming that he saw Decedent aboard Destroyer Escorts.[79] Paramount submits that none of these witnesses actually witnessed Decedent while he was working.[80] Therefore, Paramount contends that neither the testimonial nor other evidence establishes that Decedent "personally worked on a marine turbine, or that he was present while others installed a marine turbine[.]"[81] As a result, Paramount

---

[75] *Id.* at 16–18.

[76] *Id.*

[77] *See generally* Rec. Doc. 246.

[78] Rec. Doc. 283 at 1.

[79] *Id.* at 2–3.

[80] *Id.* at 3.

[81] *Id.*

asserts that Plaintiffs cannot meet the higher threshold of proving that Decedent was exposed to asbestos dust coming from the turbine insulation or gaskets.[82]

Paramount also renews its argument that even if Decedent was exposed to asbestos-containing insulation or gaskets from its turbines, Paramount did not manufacture, sell, supply, or install the asbestos-containing materials and therefore cannot be held liable for the resulting injury.[83] Further, Paramount replies to the testimony of Mark Perello a Paramount representative cited by the opposing parties, which confirmed that Paramount turbines required asbestos insulation to function properly.[84] Paramount asserts that Mr. Perello was referring to "land-based turbines, not marine turbines."[85] Thus, Paramount contends that there is no evidence that their marine turbines required asbestos insulation.[86] Additionally, Paramount claims that the other Paramount representatives that testified that Paramount knew that the marine turbines would be insulated with asbestos insulation are factually incorrect.[87] Paramount submits that it knew its turbines would be insulated, but did not require the insulation to contain asbestos.[88]

Paramount avers that the caselaw relied upon by the opposing parties is either distinguishable from the case at bar, supports Paramount's position, or is not controlling on this Court.[89] Paramount argues that *Bencel v. Laromark Ins. Co.* does not contradict the holding in

---

[82] *Id.*

[83] *Id.*

[84] *Id.* at 4.

[85] *Id.* The docket entry cited by Paramount to support this assertion (Rec. Doc. 196-21) does not exist.

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.*

*Cortez*; thus, the Court should follow *Cortez*, which is directly on point.[90] Further, *Bell v. Foster Wheeler Energy Corp.* "applies general maritime law rather than Louisiana Law," the *McAllister v. McDermott, Inc.* opinion was issued in the Middle District of Louisiana, the court in *Lopez v. McDermott, Inc.* "did not consider the fact that the design of the valves [ ] did not [require] the use of an asbestos-containing gasket," and in *Legendre v. Huntington Ingalls Inc.* the court dismissed the plaintiff's design defect claim because "she failed to provide any evidence that the design of [Paramount's] turbines required asbestos containing insulation."[91] For these reasons, Paramount asserts that the Court should follow the holding in *Cortez*.[92]

Finally, Paramount replies to the opposing parties' reliance on expert witnesses.[93] Paramount contends that Gerard Baril, Dr. Stephen Kraus, and Dr. Rodney Landreneau all presumed that Decedent worked on or around Paramount turbines when forming their opinions.[94] Paramount asserts that when a "fact relied upon by an expert is not proven, the opinion based on that fact cannot be considered."[95] Hence, Paramount argues that said experts' opinions cannot be relied upon because no admissible evidence confirms that Decedent worked on or near the

---

[90] *Id.*

[91] *Id.* at 5–6 (citing *McAllister*, 2020 WL 4745743, at *12; *Bell*, 2017 WL 889083, at *5; *Lopez*, 2020 WL 3964989, at **7–9; *Becnel*, 2022 WL 3704029, at *6; *Legendre*, 2024 WL 1624889, at *3).

[92] *Id.* at 6.

[93] *Id.* at 7.

[94] *Id.*

[95] *Id.* 7–8 (citing *Williams v. Illinois*, 567 U.S. 50, 80–81 (2012) (finding if there is no independent, admissible evidence to prove foundational facts, the expert's testimony cannot be given weight by the trier of fact)).

turbines.[96] Therefore, Paramount contends that the opposing parties have failed to establish a genuine issue of material fact to overcome summary judgment.[97]

### III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[98] The court must view the evidence in the light most favorable to the nonmovant.[99] Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[100] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute.[101] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[102]

### IV. Analysis

#### A.    Causation Standard

The parties do not dispute that Plaintiffs bear the burden of showing that Decedent:(1) "had significant exposure to the product complained of, and that (2) the exposure to the product was a substantial factor in bringing about [Decedent's] injury."[103] However, Paramount asserts that

---

[96] *Id.* at 8.

[97] *Id.*

[98] Fed. R. Civ. P. 56(a).

[99] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[100] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[101] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[102] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

[103] *Cortez*, 610 F. Supp. at 882 (citing *Rando v. Anco Insulations, Inc.*, 2008-1163, p. 35 (La. 05/22/09), 16 So. 3d 1065, 1091 (internal quotations omitted)).

Plaintiffs must prove frequent and regular exposure to the source of asbestos to meet the substantial factor standard. This assertion is incorrect, in *Williams v. Boeing Co.* the Fifth Circuit held that "[e]ven if the plaintiff was only exposed to asbestos for a short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma."[104] To survive summary judgment Plaintiffs "need only show that a reasonable jury could conclude that it is more likely than not that [Decedent] inhaled defendant's asbestos fibers, even if there were only slight exposures[.]"[105] Hence, Plaintiffs need only prove that Decedent was exposed to the asbestos-containing insulation or gaskets used on Paramount's marine turbines and that a reasonable jury could conclude that it is more likely than not that that Decedent inhaled asbestos fibers from those materials, even if the exposure was only for a brief period.

**B.    *Decedent's Exposure to Asbestos from Turbine Materials***

The products complained of here are the asbestos-containing insulation and gaskets used on the marine turbines, which were installed on Destroyer Escorts during Decedent's employment at Avondale. The parties do no dispute that Paramount turbines were installed on Destroyer Escorts during Decedent's employment. Instead, Paramount argues that there is no evidence establishing that Decedent worked around or near its turbines. However, multiple former Avondale employees have testified that the insulation used on Paramount's turbines contained asbestos during the period of Decedent's employment. Further, Mr. Jambon, who worked at Avondale during the same period as Decedent, recalled seeing Decedent working in the engine rooms where the turbines were located. Mr. Jambon also testified that when the insulation materials were installed on the turbines

---

[104] 23 F.4th 507, 512 (5th Cir. 2022) (alteration in original) (internal quotations omitted).

[105] *Id.*

dust would "fly all over the place."[106]  Taken together, because Plaintiffs need only establish "slight exposur[e]" to respirable asbestos, based on the testimony of Mr. Jambon and the other former Avondale employees, the Court finds that "a reasonable jury could conclude that it is more likely than not" that Decedent inhaled asbestos fibers attributable to the turbine insulation or gaskets.[107]

However, the issue remains of whether Decedent's potential asbestos exposure could be legally attributed to Paramount. Paramount argues that even if Decedent was exposed to asbestos while working on or near its turbines, said exposure is not attributable to Paramount because it did not manufacture sell, supply, or install the asbestos-containing materials. In opposition, Avondale puts forth the testimony of four Paramount corporate representatives. Relying on said testimony, Avondale asserts that Paramount knew that its turbines had to be insulated for them to safely operate and were designed to be insulated by asbestos-containing materials because that was the only suitable insulation commercially available at the time and the specifications called for asbestos insulating blankets until at least 1973.

Turning to the legal standard, "[t]he substantive law that governs [P]laintiffs' claims is the law in effect when the alleged exposure occurred."[108] The applicable law here is the Louisiana products-liability law in effect prior to the 1987 enactment of the Louisiana Products Liability Act ("LPLA").[109] This law was summarized by the Louisiana Supreme Court in *Halphen v. Johns-Manville Sales Corp.*, where the court explained that "[i]n order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition

---

[106] Rec. Doc. 242-2 at 17–18.

[107] *Williams*, 23 F.4th at 512

[108] *Cortez*, 610 F. Supp. at 882 (citing *Rando v. Anco Insulations, Inc.*, 2008-1163, p. 35 (La. 05/22/09), 16 So. 3d 1065, 1091 (internal quotations omitted)).

[109] *Id.* at 883.

made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control."[110] At issue here is whether Paramount's product was "unreasonably dangerous," under any of the recognized theories of liability: "(1) unreasonably dangerous in construction or composition, (2) unreasonably dangerous per se, (3) unreasonably dangerous in design, or (4) unreasonably dangerous for failure to warn."[111] Further, pre-LPLA Louisiana law categorized asbestos as unreasonably dangerous per se.[112] "A product is unreasonably dangerous *per se* if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product."[113]

Regarding the gaskets used in the turbines, former Avondale employee Clemcy Legendre testified that asbestos-containing gaskets would sometimes come shipped with the turbines.[114] Further, Mr. Legendre stated that the gaskets sometimes had labeling that indicated they contained asbestos and that Paramount representatives, who never provided any warning about the dangers, called the gaskets "[a]sbestos gaskets".[115] Given Mr. Legendre's testimony, a reasonable jury could find that Paramount could be liable for supplying that asbestos product and failing to warn.

Additionally, Paramount representative Roy Belanger testified that Paramount would have been aware during the 1960s and 1970s that its turbines would be insulated with asbestos-containing insulation.[116] Mr. Belanger also stated that Paramount never provided any warnings

---

[110] 484 So. 2d 110, 113 (La. 1986).

[111] *Becnel*, 2022 WL 3704029, at *3.

[112] *Id.*

[113] *Adams v. Owens-Corning Fiberglass Corp.*, 2004-1589 (La. App. 1 Cir. 09/23/05), 923 So. 2d 118, 122.

[114] Rec. Doc. 242-12 at 4–5.

[115] *Id.* at 6.

[116] Rec. Doc. 242-4 at 20.

related to the asbestos used with the turbines.[117] Further, Paramount representative Douglas Ware testified that the 600-359 asbestos blanket insulation was the insulation used by Paramount until 1973.[118] The U.S. Supreme Court held in *Air & Liquid Sys. Corp. v. DeVries* that a manufacturer has a duty to warn when its product requires later incorporation of a dangerous part for the integrated product to function as intended.[119] Thus, because Paramount required insulation for its turbines to function safely and there is testimonial evidence that Paramount was aware the asbestos-containing insulation would be used on its turbines, a jury may find Paramount liable based on their failure to warn of the dangers of the required asbestos insulation. Accordingly,

**IT IS HEREBY ORDERED** that Paramount's "Motion for Partial Summary Judgment Regarding Turbines"[120] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this _10th_ day of November, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[117] *Id.* at 12.

[118] Rec. Doc. 242-18 at 2.

[119] 586 U.S. 446, 454–55.

[120] Rec. Doc. 199.