UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERICA DANDRY CONSTANZA, ET AL. | CIVIL ACTION |
| VERSUS | CASE NO. 24-871 |
| SPARTA INSURANCE COMPANY, ET AL. | SECTION: "G"(5) |

## ORDER AND REASONS

Before the Court is Third-Party Defendant, Liberty Mutual Insurance Company's ("Liberty"), as alleged insurer of Wayne Manufacturing Corporation ("Wayne"), Motion for Partial Summary Judgment as to Commercial Supplier Strict Liability Claims.[1] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner (collectively, "Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4]

Avondale brings third-party claims against Liberty, as the alleged insurer for Wayne, for negligence and strict liability as a commercial supplier of asbestos-containing products.[5] Liberty

---

[1] Rec. Doc. 203.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

[5] Rec. Doc. 5.

1

moves for summary judgment on the issue of whether Wayne can be held strictly liability as a commercial supplier.[6] Avondale opposes the motion.[7] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion.

## **I. Background**

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[8] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[9] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[10] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[11] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[12] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the

---

[6] Rec. Doc. 203.

[7] Rec. Doc. 227.

[8] Rec. Doc. 1-3 at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

[12] *Id.* at 5.

safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[13]

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[14] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[15] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[16]

Avondale brings third-party claims against Liberty, as the alleged insurer for Wayne, for negligence and strict liability as a commercial supplier of asbestos-containing products.[17] On September 16, 2025, Liberty filed the instant Motion for Partial Summary Judgment as to Commercial Supplier Strict Liability Claims.[18] On September 22, 2025, Avondale opposed the motion.[19] On September 26, 2025, Liberty filed a reply brief in further support of the motion.[20]

---

[13] *Id.*

[14] *Id.* at 18.

[15] *Id.* at 19.

[16] *Id.*

[17] Rec. Doc. 5.

[18] Rec. Doc. 203.

[19] Rec. Doc. 227.

[20] Rec. Doc. 268.

3

## II. Parties' Arguments

*A.    Liberty's Arguments in Support of their Motion*

Liberty asserts that the first and only reference to "commercial supplier" strict liability in Louisiana was not until 1991, long after Decedent's alleged exposures to asbestos at Avondale.[21] Because retroactive application of substantive law is impermissible without express legislative expression to the contrary, Liberty contends the 1991 classification of the term "commercial supplier" strict liability does not apply as a matter of law to these claims.[22]

Additionally, Liberty argues that "commercial supplier" strict liability is not, and has never been, a valid theory of liability.[23] The only Louisiana case to use the phrase "commercial supplier" is *Guidry v. Frank Guidry Oil Co.*[24] According to Liberty, the *Guidry* court was not creating a new type of liability; but instead, it was applying strict liability principles.[25] As a result, Liberty submits the "commercial supplier" strict liability theory alleged by Avondale against Wayne is inapplicable both to this case and as a matter of law and should be dismissed on partial summary judgment.[26]

*B.    Avondale's Arguments in Opposition of the Motion*

According to Avondale, Wayne can be held liable under a commercial supplier theory of strict liability.[27] Under *Guidry*, Avondale submits that strict liability applies when "(1) the injury resulted from the condition of the product; (2) the condition made the product unreasonably

---

[21] Rec. Doc. 203-2 at 4.

[22] *Id.*

[23] *Id.* at 5.

[24] 579 So.2d 947 (La. 1991).

[25] Rec. Doc. 203-2 at 5.

[26] *Id.*

[27] Rec. Doc. 227 at 8.

4

dangerous in normal use; and (3) the condition existed at the time the product left the control of the supplier."[28] Avondale contends this test is satisfied here because: (1) Decedent's mesothelioma allegedly resulted, at least in part, from exposure to asbestos from panels manufactured and supplied to Hopeman Brothers Inc. ("Hopeman") by Wayne and cut and installed by Hopeman on ships at Avondale; (2) the asbestos panels were unreasonably dangerous in normal use; and (3) the panels contained asbestos when Wayne relinquished control of them.[29] Under these circumstances, Avondale contends material issues of fact exist as to whether Wayne is strictly liable as a commercial supplier.[30]

C.     *Liberty's Arguments in Further Support of their Motion*

In reply, Liberty reasserts its argument that *Guidry* did not create a new cause of action and cannot be applied retroactively to the conduct at issue in this case.[31]

### III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] The court must view the evidence in the light most favorable to the nonmovant.[33] Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[34] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] Rec. Doc. 268.

[32] Fed. R. Civ. P. 56(a).

[33] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[34] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

dispute.[35] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[36]

## IV. Analysis

In the Third-Party Complaint, Avondale alleges that Wayne was "in the business of manufacturing or facilitating the manufacturing of asbestos-containing products and/or was a commercial supplier and/or professional vendor of asbestos-containing products."[37] The Third-Party Complaint further alleges that Wayne "manufactured wallboard sold and/or supplied by Hopeman Brothers, Inc. at Avondale, which product was defective, unreasonably dangerous, and unreasonably dangerous per se."[38] Therefore, the Third-Party Complaint alleges Wayne was strictly liable and negligent.[39] Liberty moves the Court to grant summary judgment on the issue of whether Wayne can be held strictly liable under a "commercial supplier" theory.

The Louisiana Supreme Court's 1991 decision in *Guidry v. Frank Guidry Oil Co.* appears to be the only Louisiana case to discuss "commercial supplier" strict liability. The Louisiana Supreme Court stated, in pertinent part, "a commercial supplier who sells a product in a defective and unreasonably dangerous condition is strictly liable for harm caused by the defect, even if the supplier was not negligent."[40] Courts have consistently found that the *Guidry* court was not creating a new theory of liability; but instead, it was applying strict product liability principles.[41]

---

[35] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[36] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

[37] Rec. Doc. 5 at 20–21.

[38] *Id.* at 21.

[39] *Id.*

[40] *Guidry*, 579 So. 2d at 951.

[41] *Becnel v. Lamorak Ins. Co.*, No. 19-cv-14536, 2022 WL 3369161, at *4 (E.D. La. Aug. 16, 2022); *see also Rivet v. Huntington Ingalls, Inc.*, No. 22-cv-2584, at 1 (E.D. La. Sept. 4, 2025)*; Matherne v. Huntington Ingalls, Inc.*,

*Guidry* cited *Bell v. Jet Wheel Blast* for the proposition that in order to recover from the defendant, "plaintiffs had to prove that: (1) the injury or damage resulted from the condition of the product; (2) the condition made the product unreasonably dangerous in normal use; and (3) the condition existed at the time the product left the control of the supplier."[42]

Avondale has not shown that the commercial supplier theory of strict liability set forth by the Louisiana Supreme Court in *Guidry* is applicable to this case. *Guidry* was decided by the Supreme Court in 1991. This case relates to asbestos exposures that allegedly occurred at Avondale in 1971. Louisiana survival actions in asbestos cases are governed by the law in effect at the time of exposure.[43] Avondale does not cite any caselaw applying the commercial supplier theory of liability before 1991. Additionally, the parties do not cite, and the Court has been unable to locate, any other case finding cognizable theory of recovery for "commercial suppliers."

*Guidry* is also distinguishable on the facts. The defendant in *Guidry* was a gasoline and diesel fuel supplier.[44] The plaintiff's husband was killed when a 55-gallon drum of diesel fuel exploded.[45] Diesel fuel will not explode unless contaminated with gasoline, and evidence was adduced at trial that the fuel supplier had used a gasoline tank for diesel fuel without cleaning the

---

No. 2:22-cv-2656, (E.D. La. Jan. 23, 2024); *Legendre v. La. Ins. Guaranty Ass'n*, No. 2:22-cv-1767, (E.D. La. Apr. 10, 2024).

[42] 579 So. 2d at 951 (citing *Bell v. Jet Wheel Blast, Div. of Ervin Ind.*, 462 So.2d 166 (La. 1985)).

[43] *Legendre v. Huntington Ingalls Inc.*, No. CV 17-2162, 2017 WL 1458209, at *4 (E.D. La. Apr. 25, 2017), *aff'd*, 885 F.3d 398 (5th Cir. 2018); *see also Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076 (La. 1992).

[44] *Guidry*, 579 So. 2d at 948–49.

[45] *Id.* at 948.

tank.[46] Thus the defendant had actual control of the product, and altered it in such a way as to make it unreasonably dangerous.[47]

Unlike in *Guidry*, Avondale does not present any evidence to show that Wayne altered the asbestos-containing wallboard in such a way that would make it unreasonably dangerous. Avondale's statement of material facts states that Wayne "manufactured asbestos-containing wallboards by laminating a decorative cover to a 'Marinite core.'"[48] The Marinite core was manufactured by Johns-Manville Corporation, and it contained a substantial amount of asbestos.[49] Wayne would use a non-asbestos-containing glue to apply the decorative cover to the Marinite core.[50] Wayne then shipped the wallboards to Avondale, where Hopeman employees would often have to saw them, which created a significant amount of dust.[51] While the evidence shows that Wayne had control over the wallboard, Avondale does not present any evidence to show Wayne altered the product in such a way as to make it unreasonably dangerous, as the wallboard contained asbestos from the manufacturing process, which was not performed by Wayne. Therefore, there are no issues of material fact in dispute, and Liberty is entitled to judgment as a matter of law on the commercial supplier strict liability claims. Accordingly,

---

[46] *Id.* at 949, 951.

[47] *Id.* at 947, 951.

[48] Rec. Doc. 227-1 at 2.

[49] *Id.* at 3.

[50] Rec. Doc. 203-1 at 2; Rec. Doc. 227-1 at 1–2.

[51] Rec. Doc. 227-1 at 3.

**IT IS HEREBY ORDERED** that Liberty's Motion for Partial Summary Judgment as to Commercial Supplier Strict Liability Claims[52] is **GRANTED**. The commercial supplier strict liability claims[53] Avondale raises against Liberty Mutual Insurance, Co. as alleged insurer of Wayne Manufacturing Corp., are **DISMISSED WITH PREJUDICE.**

**NEW ORLEANS, LOUISIANA,** this __10th__ day of November, 2025.

                                                      **NANNETTE JOLIVETTE BROWN**
                                                      **UNITED STATES DISTRICT JUDGE**

---

[52] Rec. Doc. 203.

[53] Liberty mentions "professional vendor" claims once in its memorandum in support of the motion. Rec. Doc. 203-2 at 3. However, it does not submit any briefing on that issue. Therefore, that issue is not addressed in this Order and Reasons.