UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERICA DANDRY CONSTANZA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-871** |
| **SPARTA INSURANCE COMPANY, ET AL.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner's (collectively, "Plaintiffs") "Motion for Partial Summary Judgment Regarding Exposures from Neighboring Properties."[1] In this litigation, Plaintiffs allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4] Plaintiffs move the Court to find that Defendants cannot prove Decedent sustained exposures to asbestos from neighboring properties.[5] Defendants Avondale, Paramount Global, and Bayer CropScience, Inc. (collectively,

---

[1] Rec. Doc. 211.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

[5] Rec. Doc. 211.

1

"Defendants") oppose the motion.[6] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[7] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[8] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[9] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[10] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[11] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[12]

---

[6] Rec. Docs. 243, 285, 286.

[7] Rec. Doc. 1-3 at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.* at 5.

[12] *Id.*

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[13] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[14] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[15]

On the other hand, Defendants advance an alternate theory of asbestos exposure from other sources, including on properties near Decedent's childhood home and workplace.[16] Decedent was born in 1953, and the family home at the time of Decedent's birth was 407 Meyers Boulevard in Marrero, Louisiana.[17] Decedent lived there until he was two years old.[18] Decedent also worked at a shoe repair shop located at 409 Meyers Boulevard.[19] Both of these properties were part of a larger property located in the 400 block of Myers Boulevard at the intersection of Fourth Street, which was owned by Decedent's grandfather.[20] A driveway, parking lot, and courtyard area at the property was made up of scrap material containing asbestos manufactured by Johns-Manville.[21]

---

[13] *Id.* at 18.

[14] *Id.* at 19.

[15] *Id.*

[16] Rec. Doc. 243.

[17] Rec. Doc. 211-4 at 2.

[18] *Id.*

[19] *Id.*

[20] Rec. Doc. 243-1 at 2.

[21] *Id.* at 3–4.

Reagan Maloney was hired by Avondale to take soil samples of this property.[22] She took samples in the driveway, parking lot, and yards of 411 Meyers Boulevard, 413 Meyers Boulevard, 413 ½ Meyers Boulevard, 423 Meyers Boulevard, and 5919 Fourth Street, as well as outside of the fence of 5919 Fourth Street and near a canal adjacent to 413 ½ Meyers Boulevard.[23] Of the twenty soil samples collected, two did not contain asbestos fibers and were not considered asbestos-containing material, and two were below the EPA 1% asbestos-containing material threshold.[24] All remaining sixteen samples were found to contain asbestos fibers greater than the 1% EPA threshold and are considered asbestos-containing material.[25] The primary type of asbestos identified was chysotile, with crocidolite being a secondary type of asbestos identified in thirteen soil samples.[26]

On September 16, 2025, Plaintiffs filed the instant Motion for Partial Summary Judgment.[27] On September 23, 2025, Avondale filed an Opposition to the Motion.[28] On September 26, 2025, Plaintiffs filed a Reply in further support of the Motion.[29] On September 30, 2025, Defendants Paramount Global and Bayer CropScience, Inc. joined Avondale's Opposition.[30]

---

[22] Rec. Doc. 211-5.

[23] *Id.* at 30.

[24] *Id.* at 5.

[25] *Id.*

[26] *Id.*

[27] Rec. Doc. 211.

[28] Rec. Doc. 243.

[29] Rec. Doc. 272.

[30] Rec. Docs. 285, 286.

## II. Parties' Arguments

### A.  *Plaintiffs' Arguments in Support of their Motion*

Plaintiffs assert the only information submitted by Avondale's expert, Reagan Maloney, is that in March 2025 the neighboring properties (411 Meyers Boulevard, 413 Meyers Boulevard, 413 ½ Meyers Boulevard, 423 Meyers Boulevard, and 5919 Fourth Street) contained some amounts of asbestos.[31] Plaintiffs contend Avondale has submitted no evidence that any of the properties where Decedent lived or worked (407 and 409 Meyers Boulevard) contained asbestos.[32] Plaintiffs contend Avondale has failed to submit any evidence that Decedent disturbed asbestos scrap from another neighboring property or that he was ever in the area of any such property.[33] Even assuming that such disturbance was established, Plaintiffs submit Avondale's own expert admitted that there exists no scientific data which would confirm that walking on such material would even release asbestos fibers above general background concentrations.[34] Therefore, Plaintiffs request that the Court enter summary judgment finding that Defendants cannot prove that Michael Dandry, Jr. sustained exposures to asbestos from the neighboring properties.[35]

### B.  *Avondale's Arguments in Opposition of the Motion*

According to Avondale, Decedent's sisters and daughters testified that the Dandry family property located in the 400 block of Meyers Boulevard at the intersection of Fourth Street in Marrero was one property owned by Michael Dandry, Jr.'s grandfather, Randolph Dandry.[36]

---

[31] Rec. Doc. 211-1 at 5.

[32] *Id.* at 5–6.

[33] *Id.* at 6.

[34] *Id.*

[35] *Id.*

[36] Rec. Doc. 243 at 3.

Avondale contends the property included several family businesses, several homes, a communal driveway/parking lot/courtyard area, and a separate shed/garage.[37] Avondale asserts that the testimony of Decedent's sisters confirms that Decedent played in the driveway/courtyard area, they played in a galvanized tub of water in the driveway area, they were always "in and out" of the various Dandry businesses, and they continued to visit the family property even after moving to Oak Street.[38]

Avondale contends the analysis of the material in the driveway/courtyard area of the Dandry property demonstrated the continued presence of crocidolite asbestos and chrysotile asbestos in multiple samples.[39] Avondale notes that there was a previous soil asbestos analysis conducted on the Dandry family property in 2007, which showed the same presence of crocidolite and chrysotile asbestos on the property.[40] Avondale contends its expert in industrial hygiene reviewed the depositions of Decedent's sisters and the results of the soil sampling at the Dandry family property, and many other documents.[41] Relying on the testimony of Decedent's sister that the scrap material was present when Decedent was living at the property, the expert opines that Decedent would have had potential exposure to crocidolite asbestos while living at the Dandry family complex, during visits to his grandparent's house, and while working at the shoe repair shop and grocery store on the property.[42]

---

[37] *Id.*

[38] *Id.* at 5.

[39] *Id.* at 6.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 7.

According to Avondale, Plaintiffs' argument that this testimony should be disregarded because he did not have any specific data (*i.e.* air monitoring results obtained while Decedent was being exposed to asbestos on the Dandry family property) is flawed.[43] Avondale points out there is also no scientific data available for any potential asbestos exposures of Decedent, including those which allegedly occurred at the Avondale shipyard.[44] Avondale submits if Plaintiffs' argument regarding the lack of scientific data is accepted, then Plaintiffs will be unable to prove Decedent was exposed to asbestos at any location.[45]

Avondale submits there are genuine disputes of material fact precluding summary judgment on the issue of Decedent's exposures from the property.[46] Avondale contends the evidence is clear Decedent sustained years of exposure to asbestos resulting from his residence, visits, and employment at the Dandry family property.[47] For these reasons, Avondale contends Plaintiffs' motion should be denied.[48]

C. *Plaintiffs' Arguments in Further Support of their Motion*

In reply, Plaintiffs contend that Avondale does not cite to any evidence that the Dandry property included the properties identified above as the "neighboring properties," where the soil sampling was done by Ms. Maloney.[49] Plaintiffs contend the only addresses mentioned by

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at 10.

[47] *Id.*

[48] *Id.*

[49] Rec. Doc. 272 at 3.

Decedent's sisters and daughters were the 407 Meyers address and the 409 Meyers address.[50] Plaintiffs assert Ms. Maloney failed to test those addresses, instead testing 411 Meyers, 413 Meyers, 413 ½ Meyers, 423 Meyers, and 5919 Fourth Street.[51]

According to Plaintiffs, Avondale's expert opined about the possibility of exposures but only after qualifying this opinion by assuming certain conditions are met, such that Decedent drove or walked in a courtyard area that had asbestos scrap.[52] Plaintiffs submit Decedent's sister's declaration that her brother had no reason to park or walk on the neighboring property where the soil sampling was done.[53] Moreover, Plaintiffs point out that the expert admitted there is no scientific data indicating that walking on J-M scrap material would release asbestos fibers in excess of general background concentrations.[54] Plaintiffs contend a mere possibility of exposure to an asbestos-containing product is not sufficient to meet Avondale's burden of proof.[55] Plaintiffs submit Avondale lacks both factual proof of an actual disturbance of asbestos scrap as well as lack of scientific proof that such disturbance releases asbestos fibers above background levels.[56]

### III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[57] The court must view the evidence in the

---

[50] *Id.*

[51] *Id.* at 4.

[52] *Id.* at 8.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 9.

[56] *Id.*

[57] Fed. R. Civ. P. 56(a).

light most favorable to the nonmovant.[58] Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[59] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute.[60] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[61]

### IV. Analysis

Decedent was born in 1953, and the family home at the time of Decedent's birth was 407 Meyers Boulevard in Marrero, Louisiana.[62] Decedent lived there until he was two years old.[63] Decedent also worked at a shoe repair shop located at 409 Meyers Boulevard.[64] Both of these properties were part of a larger property located in the 400 block of Myers Boulevard at the intersection of Fourth Street, which was owned by Decedent's grandfather.[65] A driveway, parking lot, and courtyard area at the property was made up of scrap material containing asbestos manufactured by Johns-Manville.[66]

---

[58] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[59] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[60] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[61] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

[62] Rec. Doc. 211-4 at 2.

[63] *Id.*

[64] *Id.*

[65] Rec. Doc. 243-1 at 2.

[66] *Id.* at 3–4.

Reagan Maloney was hired by Avondale to take soil samples of this property.[67] She took samples in the driveway, parking lot, and yards of 411 Meyers Boulevard, 413 Meyers Boulevard, 413 ½ Meyers Boulevard, 423 Meyers Boulevard, and 5919 Fourth Street, as well as outside of the fence of 5919 Fourth Street and 413 ½ Meyers Boulevard near a canal.[68] Of the twenty soil samples collected, two did not contain asbestos fibers and were not considered asbestos-containing material, and two were below the EPA 1% asbestos-containing material threshold.[69] All remaining sixteen samples were found to contain asbestos fibers greater than the 1% EPA threshold and are considered asbestos-containing material.[70] The primary type of asbestos identified was chysotile, with crocidolite being a secondary type of asbestos identified in thirteen soil samples.[71]

Plaintiffs argue that this evidence should be excluded because Ms. Maloney did not test the addresses where Decedent actually lived or worked. However, Decedent's sisters and daughters testified that the Dandry family property located in the 400 block of Meyers Boulevard at the intersection of Fourth Street in Marrero was one property owned by Michael Dandry, Jr.'s grandfather, Randolph Dandry.[72] The testimony of Decedent's sisters confirms that Decedent played in the driveway/courtyard area, they played in a galvanized tub of water in the driveway

---

[67] Rec. Doc. 211-5.

[68] *Id*. at 30.

[69] *Id*. at 5.

[70] *Id*.

[71] *Id*.

[72] Rec. Doc. 243-4 (Legendre deposition) at pp. 13–18; Rec. Doc. 243-5 (Lonergan deposition) at pp. 13–18, 37–38; Rec. Doc. 243-6 (Constanza deposition) at pp. 14–16; Rec. Doc. 243-7 (Hallner deposition) at pp. 11–12.

area, they were always "in and out" of the various Dandry businesses, and they continued to visit the family property even after moving to Oak Street.[73]

James Shea, Avondale's expert in industrial hygiene, reviewed the depositions of Decedent's sisters and the results of the soil sampling at the Dandry family property.[74] Relying on the testimony of Decedent's sister that the scrap material was present when Decedent was living at the property, Mr. Shea opines that Decedent would have had potential exposure to crocidolite asbestos while living at the Dandry family complex, during visits to his grandparent's house, and while working at the shoe repair shop and grocery store on the property, if Decedent were engaged in some sort of dust-producing activity.[75]

Plaintiffs rely on the Louisiana Fourth Circuit in *Oddo v. Asbestos Corp. Ltd.*, which addressed the very issue of exposures to asbestos from driveways made of scrap from Johns-Manville. In *Oddo*, the plaintiff testified he lived in a home for one year that had an asbestos driveway made from Johns-Manville scrap.[76] The plaintiff testified that he drove over it daily and that he actually raked the driveway and passed over it with his lawn mower, creating dust.[77] Following a trial, the jury found that Johns-Manville was negligent, but did not assign a percentage of fault to Johns-Manville.[78] Reviewing this evidence on appeal, the Louisiana Fourth Circuit found:

---

[73] Rec. Doc. 243-4 (Legendre deposition) at pp. 15, 17, 21, 22, 26; Rec. Doc. 243-5 (Lonergan deposition) at pp. 19, 34, 38.

[74] Rec. Doc. 211-9 (Shea deposition).

[75] *Id.* at 52, 75–76.

[76] *Oddo v. Asbestos Corp.*, 2014-0004 (La. App. 4 Cir. 8/20/15), 173 So. 3d 1192, 1214, *writ denied*, 2015-1712 (La. 11/6/15), 180 So. 3d 308.

[77] *Id.* at 1215.

[78] *Id.* at 1213.

A preponderance of the evidence fails to demonstrate that this "disturbance" of the driveway exposed Mr. Oddo to above-background levels of asbestos. Given the fact that he lived at this address for only one year and the lack of evidence as to the extent of exposure from the driveway, we do not find that Mr. Oddo's exposure to asbestos from Johns–Manville was significant enough to be a substantial contributing cause of his mesothelioma.[79]

*Oddo* is distinguishable from the instant case, where the appellate court was reviewing a jury's verdict. This case is at the summary judgment stage. Avondale has presented some evidence to show that Decedent was exposed to asbestos at the property. Plaintiffs cite to evidence that these exposures likely were not above background levels. This evidence must be weighed by a jury. Accordingly, there are genuine disputes of material fact precluding summary judgment on the issue of Decedent's exposures from the property.[80] Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Partial Summary Judgment Regarding Exposures from Neighboring Properties"[81] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  10th  day of November, 2025.

                                    **NANNETTE JOLIVETTE BROWN**
                                    **UNITED STATES DISTRICT JUDGE**

---

[79] *Id.* at 1215.

[80] *Id.* at 10.

[81] Rec. Doc. 211.