# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**ERICA DANDRY CONSTANZA, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                             **CASE NO. 24-871**

**SPARTA INSURANCE COMPANY, ET AL.**                   **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court is Defendant Paramount Global's ("Paramount")[1] "Motion for Partial Summary Judgment Regarding FRDM."[2] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner ("Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[3] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties, including Paramount (collectively, "Defendants").[4] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[5] Paramount moves the Court to dismiss all claims asserted by Plaintiffs and Avondale regarding Paramount supplied Fire Retardant Decorative Micarta ("FRDM"), as the potential source of

---

[1] Paramount was formerly known as: ViacomCBS Inc., CBS Corporation, a Delaware corporation, Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, Westinghouse Electric Corporation.

[2] Rec. Doc. 201.

[3] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[4] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[5] *Id.*

1

Decedent's asbestos exposure.[6] Plaintiffs and Avondale oppose the motion.[7] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[8] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[9] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[10] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[11] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[12] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the

---

[6] Rec. Doc. 201.

[7] Rec. Docs. 241, 250.

[8] Rec. Doc. 1-3 at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

[12] *Id.* at 5.

safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[13]

Plaintiffs also name numerous additional defendants, including Paramount, who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[14] Plaintiffs allege that Defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[15] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[16] It is also alleged that Paramount failed to warn of the hazards of asbestos, including the risk of mesothelioma.[17] Additionally, Plaintiffs allege that Mr. Dandry died of mesothelioma as a result of exposures to asbestos, in part originating from asbestos attributable to Paramount products, including FRDM.[18] Avondale filed a crossclaim against Paramount for contribution.[19]

---

[13] *Id.*

[14] *Id.* at 18.

[15] *Id.* at 19.

[16] *Id.*

[17] Rec. Doc. 1-2 at 10.

[18] *Id.* at 2, 4, 5, 8, 13.

[19] Rec. Doc. 5.

On September 16, 2025, Paramount filed the instant Motion for Partial Summary Judgment.[20] On September 23, 2025, Avondale and Plaintiffs opposed the Motion.[21] On September 29, 2025, Paramount filed a reply in further support of the Motion.[22]

## II. Parties' Arguments

### A.    *Paramount's Arguments in Support of the Partial Motion for Summary Judgment*

Paramount claims that there is no evidence Michael P. Dandry, Jr. was exposed to asbestos attributable to FRDM, much less that such exposure, if any, was a substantial contributing cause of his mesothelioma.[23] Paramount contends that FRDM was never approved for use on Navy ships.[24] With respect to the LASH vessels, Paramount asserts that Decedent primarily worked in the engineering spaces not in the habitability spaces where Hopeman Brothers, Inc. ("Hopeman") was installing FRDM.[25]

Paramount asserts that the substantial factor test governs the issue of causation here, where "two or more causes of injury are present in a cumulative disease case."[26] Paramount argues that in order to meet their burden Plaintiffs must first prove that Decedent was actually exposed to

---

[20] Rec. Doc. 201.

[21] Rec. Docs. 241, 250.

[22] Rec. Doc. 281.

[23] Rec. Doc. 201-2 at 1.

[24] *Id.* at 4.

[25] *Id.* at 4–5.

[26] *Id.* at 6–7.

asbestos-containing FRDM.[27] Absent any evidence of exposure, Paramount contends there is no basis to show that FRDM was a substantial factor in causing Decedent's mesothelioma.[28]

**B.      *Avondale's Arguments in Opposition to the Partial Motion for Summary Judgment***

Avondale opposes the instant motion, claiming that there are "genuine issues of material fact as to: (1) whether Michael Dandry, Jr., was exposed to asbestos from [FRDM]; and (2) whether such exposures were a substantial contributing cause of [his] mesothelioma."[29] Avondale argues that Paramount incorrectly cites a more stringent causation standard that is not applicable to mesothelioma cases.[30] Avondale submits that because mesothelioma can be contracted with significantly less exposure than asbestosis or lung cancer the Louisiana Fourth Circuit has applied a different causation standard.[31] That court has held that "[a]ll above-background or non-trivial exposures to asbestos are substantial contributing causes of mesothelioma."[32]

Turning to the evidence, Avondale asserts that Mr. Jambon, an Avondale coworker of Decedent, testified that Decedent worked in multiple environments where Hopeman employees were performing joiner work and cutting asbestos-containing wallboard, including Micarta.[33] Avondale also relies on the testimony of Daniel Dufrene, who was employed at Avondale from 1967–1973, who described the dust created by the wallboard cutting as "a white fog, like a

---

[27] *Id.* at 7–8.

[28] *Id.* at 9.

[29] Rec. Doc. 241 at 1.

[30] *Id.* at 8.

[31] *Id.*

[32] *Id.* (quoting *McAskill v. American Marine*, 2007-1445, 7–8 (La. App. 4 Cir. 3/4/09), 9 So.3d 264, 268).

[33] *Id.* at 5.

cloud."[34] In addition to the co-workers' testimony, Avondale cites the opinions of experts Dr. Rodney Landreneau, Dr. Stephen Kraus, and Mr. Gerard Baril finding that exposure to FRDM was a substantial contributing cause of Decedent's mesothelioma.[35]

### C.    *Plaintiffs' Arguments in Opposition to the Partial Motion for Summary Judgment*

Like Avondale, Plaintiffs assert that Decedent's exposure to asbestos from FRDM was a significant contributing factor in his development of mesothelioma.[36] In support of their assertion, Plaintiffs cite similar evidence as cited above by Avondale including: (1) Mr. Jambon's testimony; (2) the testimony of numerous former Avondale employees; (3) the testimony of Paramount representatives; and (4) the testimony of numerous expert witnesses.[37]

### D.    *Paramount's Arguments in Further Support of the Partial Motion for Summary Judgment*

In reply, Paramount reasserts that there is no evidence that Decedent was exposed to FRDM.[38] Paramount maintains there is no evidence that the wall panels Decedent allegedly encountered were asbestos containing FRDM, as asbestos-containing FRDM was just one of several different types of interior finish panels that Hopeman employees utilized at Avondale.[39]

Finally, Paramount replies to the opposing parties' reliance on expert witnesses.[40] Paramount contends that Gerard Baril, Dr. Stephen Kraus, and Dr. Rodney Landreneau all

---

[34] *Id.* at 6.

[35] *Id.* at 6–7.

[36] Rec. Doc. 250 at 1.

[37] *Id.* at 2–15.

[38] Rec. Doc. 281 at 2.

[39] *Id.* at 3.

[40] *Id.* at 5.

presumed that Decedent worked around FRDM when forming their opinions.[41] Paramount asserts that when a "fact relied upon by an expert is not proven, the opinion based on that fact cannot be considered."[42] Hence, Paramount argues that said experts' opinions cannot be relied upon because no admissible evidence confirms that Decedent worked around FRDM.[43] Therefore, Paramount contends that the opposing parties have failed to establish a genuine issue of material fact to overcome summary judgment.[44]

### III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[45] The court must view the evidence in the light most favorable to the nonmovant.[46] Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[47] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute.[48] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[49]

---

[41] *Id.*

[42] *Id.* at 6.

[43] *Id.*

[44] *Id.*

[45] Fed. R. Civ. P. 56(a).

[46] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[47] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[48] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[49] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

## IV. Analysis

The parties do not dispute that Plaintiffs bear the burden of showing that Decedent: (1) "had significant exposure to the product complained of, and that (2) the exposure to the product was a substantial factor in bringing about [Decedent's] injury."[50] However, Paramount asserts that Plaintiffs must prove frequent and regular exposure to the source of asbestos to meet the substantial factor standard. This assertion is incorrect, in *Williams v. Boeing Co.* the Fifth Circuit held that "[e]ven if the plaintiff was only exposed to asbestos for a short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma."[51] To survive summary judgment Plaintiffs "need only show that a reasonable jury could conclude that it is more likely than not that [Decedent] inhaled defendant's asbestos fibers, even if there were only slight exposures[.]"[52] Hence, Plaintiffs need only prove that Decedent was exposed to the asbestos-containing FRDM and that a reasonable jury could conclude that it is more likely than not that that Decedent inhaled asbestos fibers from those materials, even if the exposure was only for a brief period.

The product complained of here is asbestos-containing Fire Retardant Decorative Micarta, which was installed on LASH vessels during Decedent's employment at Avondale. The parties do no dispute that FRDM was installed on LASH vessels during Decedent's employment. Instead, Paramount argues that there is no evidence establishing that Decedent worked around or near the FRDM while the wallboards were being cut by Hopeman employees. Mr. Jambon, who worked at Avondale during the same period as Decedent, recalled Decedent working around Hopeman

---

[50] *Cortez v. Lamorak Ins. Co.*, 610 F. Supp. 3d 877, 882 (E.D. La. 2022) (citing *Rando v. Anco Insulations, Inc.*, 2008-1163, p. 35 (La. 05/22/09), 16 So. 3d 1065, 1091 (internal quotations omitted)).

[51] 23 F.4th 507, 512 (5th Cir. 2022) (alteration in original) (internal quotations omitted).

[52] *Id.*

employees who were cutting wallboard to "make it fit."[53] Paramount asserts there is no evidence to show this wallboard contained FRDM, rather than other non-asbestos-containing materials. Hopeman's corporate representative confirmed that FRDM was the only government-approved product of its kind until 1972–1973 and was continuously purchased and installed.[54] This testimony creates a genuine issue as to whether the wallboard being cut during Decedent's employment contained FRDM. Taken together, because Plaintiffs need only establish "slight exposur[e]" to respirable asbestos, based on the testimony of Mr. Jambon and the other former Avondale employees, the Court finds that "a reasonable jury could conclude that it is more likely than not" that Decedent inhaled asbestos fibers attributable to the FRDM.[55]

**IT IS HEREBY ORDERED** that Paramount's Motion for Partial Summary Judgment Regarding FRDM"[56] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __19th__ day of November, 2025.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[53] Rec. Doc. 250-2 at 13–14, 22–23.

[54] Rec. Doc. 241-8 at 200.

[55] *Williams*, 23 F.4th at 512

[56] Rec. Doc. 201.