**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ERICA DANDRY CONSTANZA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-871** |
| **SPARTA INSURANCE COMPANY, ET AL.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court are two motions for partial summary judgment filed by Defendant Liberty Mutual Insurance Company's ("Liberty"), as alleged insurer of Hopeman Brothers, Inc. ("Hopeman").[1] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner (collectively, "Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4]

Liberty moves for summary judgment on three issues: (1) Hopeman is not liable for intentional tort; (2) Hopeman is not an alter ego of Wayne Manufacturing Corporation ("Wayne");

---

[1] Rec. Docs. 205, 207.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

1

and (3) Hopeman was not a manufacturer of asbestos-containing products.[5] Plaintiffs oppose the motions.[6] Having considered the motions, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motions.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[7] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[8] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[9] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[10] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[11] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the

---

[5] Rec. Docs. 205, 207.

[6] Rec. Doc. 227.

[7] Rec. Doc. 1-3 at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.* at 5.

safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[12]

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[13] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[14] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[15]

On September 16, 2025, Liberty filed the instant Motions for Partial Summary Judgment.[16] On September 23, 2025, Plaintiffs opposed the motions.[17] On September 26, 2025, Liberty filed a reply brief in further support of both motions.[18]

## II. Parties' Arguments

### A.    *Liberty's Arguments in Support of the Motions*

Liberty moves for summary judgment on three issues: (1) Hopeman is not liable for intentional tort; (2) Hopeman is not an alter ego of Wayne; and (3) Hopeman was not a manufacturer of asbestos-containing products.[19]

---

[12] *Id.*

[13] *Id.* at 18.

[14] *Id.* at 19.

[15] *Id.*

[16] Rec. Docs. 205, 207.

[17] Rec. Doc. 245.

[18] Rec. Doc. 269.

[19] Rec. Docs. 205, 207.

First, Liberty argues that summary judgment is appropriate on the issue of intent because Hopeman did not: (1) have a conscious desire to inflict Decedent with mesothelioma; or (2) know with substantial certainty that Decedent would contract mesothelioma because of exposure to Hopeman's operations.[20]

Second, Liberty argues that Plaintiffs have failed to put forth any evidence that Hopeman and Wayne are alter egos.[21] Liberty submits that Hopeman and Wayne are separate corporations, and they were incorporated at different times, in different states, and for completely different business purposes.[22] According to Liberty, the corporations are distinct legal entities because: (1) Hopeman was, and remains, properly incorporated; (2) Hopeman was a profitable business both before and after the dissolution of Wayne; (3) Wayne and Hopeman maintained separate checking accounts as well as a separate accounting thereof; (4) Hopeman has always separately filed its tax returns; and (5) customers always knew they were dealing with separate corporate entities.[23]

Third, Liberty contends there is no evidence that Hopeman was a manufacturer of asbestos-containing products.[24] Liberty cites numerous cases finding that Hopeman was not a manufacturer of asbestos-containing products.[25] Liberty argues that the Louisiana Products Liability Act ("LPLA") should not apply to this case because it was enacted after the asbestos-exposure at issue in this case.[26] Liberty submits that Hopeman was directed to install asbestos-containing bulkhead

---

[20] Rec. Doc. 207-2 at 5–7.

[21] *Id.* at 11.

[22] *Id.*

[23] *Id.* at 13.

[24] Rec. Doc. 205-2 at 5.

[25] *Id.*

[26] *Id.*

by the relevant specifications and Hopeman followed those specifications.[27] Liberty asserts these actions do not make Hopeman a manufacturer.[28]

**B.    *Plaintiffs' Arguments in Opposition of the Motions***

Plaintiffs oppose summary judgment on all three issues.[29] First, Plaintiffs assert that summary judgment must be denied on the intentional tort claims.[30] Plaintiffs submit Hopeman knew of the hazards of asbestos and precautionary measures that should have been taken years before Decedent's exposure.[31]

Second, Plaintiffs argue Hopeman is an alter ego of Wayne.[32] Plaintiffs contend Wayne was a wholly owned subsidiary of Hopeman during the relevant time period, there was duplication of officers between Hopeman and Wayne, most of Wayne's assets were transferred to another wholly owned subsidiary of Hopeman when Wayne was liquidated, and Hopeman supplied Micarta and Marinite to Wayne so that Wayne could glue the boards together.[33]

Third, Plaintiffs contend that Hopeman fabricated or refurbished bulkheads and living quarters, and installed asbestos-containing products into these areas as component parts of ships.[34] As such, Plaintiffs argue Hopeman is liable as a manufacturer of asbestos-containing products.[35]

---

[27] *Id.*

[28] *Id.* at 6.

[29] Rec. Doc. 245.

[30] *Id.* at 2–18.

[31] *Id.* at 18.

[32] *Id.* at 18–20.

[33] *Id.* at 19–20.

[34] *Id.* at 24.

[35] *Id.*

**C.     Liberty's Arguments in Further Support of the Motions**

In reply, Liberty asserts Plaintiffs offer no meaningful opposition to the argument that Hopeman was not a manufacturer.[36] Liberty contends that Wayne's alleged assembly of the wallboard with glue does not transform Hopeman into a manufacturer, especially considering there is no evidence that the gluing process created a new defect or increased the risk of asbestos exposure.[37] Liberty also argues there are no material facts in dispute on alter ego and Plaintiffs cannot meet the stringent veil-piercing standard.[38] Finally, Liberty argues that summary judgment should be granted on the intentional tort, fraud, and concealment claims.[39]

### III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] The court must view the evidence in the light most favorable to the nonmovant.[41] Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[42] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine

---

[36] Rec. Doc. 269 at 2.

[37] *Id.* at 3.

[38] *Id.* at 4.

[39] *Id.* at 5–8.

[40] Fed. R. Civ. P. 56(a).

[41] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[42] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

dispute.[43] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[44]

### IV. Analysis

#### A.    *Intentional Tort Claims*

Liberty, as the alleged insurer of Hopeman, moves for summary judgment on Plaintiffs' intentional tort claims. As an initial matter, the Court notes that generally, summary judgment is disfavored when issues of intent or state of mind are involved because those determinations are inherently a question of fact which turns on credibility.[45] However, a court is not precluded from granting summary judgment where elusive concepts such as motive or intent are at issue.[46]  But the Fifth Circuit has cautioned that "the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party."[47] For example, summary judgment may still be appropriate when intent or state of mind is at issue if the non-moving party merely rests on conclusory allegations or unsupported speculation.[48]

To prove that a defendant committed an intentional tort under Louisiana law, a plaintiff must show that a defendant either "'(1) consciously desires the physical result of his act, whatever

---

[43] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[44] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

[45] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265–66 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility.").

[46] *Id*. at 1266 ("This is not to say that the court can never enter summary judgment when intent or state of mind is at issue, only that the court must recognize that undermining the moving party's professed state of mind is not a simple task. Therefore, the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party.").

[47] *Id*.

[48] *Id*. (internal citation omitted).

the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.'"[49] "Thus, intent has reference to the consequences of an act rather than to the act itself."[50] Therefore, Plaintiffs must prove that Hopeman either consciously desired that Decedent would contract mesothelioma, or knew that result was "substantially certain to follow from [Hopeman's] conduct."[51] Plaintiffs do not address the first prong, but instead argue that Hopeman knew of the hazards of asbestos and were substantially certain that disease would occur.[52]

Substantial certainty "requires more than a reasonable probability that an injury will occur."[53] To satisfy the criterion of "substantial certainty," Plaintiffs must prove that Decedent's contracting mesothelioma was "inevitable or incapable of failing."[54] "[M]ere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct."[55] The "belie[f] that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts. . . ."[56] To prove a claim for intentional tort, Plaintiffs would have to show that Hopeman's "conduct [went] beyond knowingly permitting a hazardous work condition to exist, ordering an

---

[49] *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So. 2d 208, 211 (quoting *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981)).

[50] *Bazley*, 397 So. 2d at 481.

[51] *Zimko v. Am. Cyanamid*, 2003-0658 (La. App. 4 Cir. 6/8/05); 905 So. 2d 465, 475, *cert. denied*, 2005-2102 (La. 3/17/06), 925 So. 2d 538 (internal citations omitted).

[52] Rec. Doc. 245.

[53] *Reeves*, 731 So. 2d at 213 (internal citations omitted).

[54] *Id.* (internal citations omitted).

[55] *Id*. (internal citations omitted).

[56] *Id*. at 212.

employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work. . . ."[57]

Several judges in this District have considered intentional tort claims against Avondale arising out of asbestos exposure.[58] In *Vedros v. Northop Grumman Shipbuilding, Inc.*, the plaintiffs argued that Avondale had awareness of the risks associated with asbestos as well as unsafe working conditions, and despite this knowledge, Avondale did not remedy those conditions.[59] The district judge granted summary judgment and found that "[e]ven considering the facts in the light most favorable to Plaintiffs and assuming that Defendants were aware there was a major risk, or even a probability, that [the decedent] would contract mesothelioma," the plaintiffs did not provide evidence that would allow a reasonable jury to determine "that [the decedent's] contracting mesothelioma was 'inevitable or incapable of failing' and was thus substantially certain to result from" Avondale's conduct.[60] Similarly in *Cortez*, the district judge found that the plaintiff's general assertions that Avondale "knew that asbestos was a health hazard," that asbestos "caused fatal lung disease," and that Avondale "had problems with it . . . falls short of what is necessary to raise a material issue for an intentional-tort claim."[61] Likewise in *Becnel*, the district court held that "even assuming the defendants were aware that the alleged asbestos from their respective products was dangerous, and they should have used precautionary measures," plaintiffs failed to meet their

---

[57] *Zimko*, 905 So. 2d at 477 (internal citations omitted).

[58] *Legendre v. Louisiana Ins. Guar. Ass'n*, No. 22-1767, 2024 WL 1556842 (E.D. La. Apr. 10, 2024); *Becnel v. Lamorak Ins. Co.*, No. CV 19-14536, 2022 WL 3665085 (E.D. La. Aug. 25, 2022); *Cortez v. Lamorak Ins. Co.*, 597 F. Supp. 3d 959 (E.D. La. Apr. 4, 2022); *Vedros v. Northop Grumman Shipbuilding, Inc.*, No. 11-1198, 2014 WL 906164 (E.D. La. Mar. 7, 2014).

[59] *Vedros*, 2014 WL 906164 at *3.

[60] *Id.*

[61] 597 F.Supp.3d at 977.

evidentiary burden "whereby a reasonable juror could conclude that [the plaintiff's] primary lung cancer was 'inevitable or incapable of failing.'"[62]

In *Dempster v. Lamorak Insurance Co.*, this Court denied Avondale's motion for reconsideration of a prior state court order denying summary judgment on this issue.[63] The Court noted that Avondale had not presented any newly discovered or previously unavailable evidence, nor did Avondale identify a change of law that would warrant granting the motion.[64] The Court finds its prior decision in *Dempster* distinguishable from the instant case, because the Court is considering this motion for partial summary judgment for the first time, not on a motion for reconsideration of any earlier decision made in state court.

The Court finds that the evidence Plaintiffs present in this case falls below the bar of what is needed to raise a material issue for an intentional tort claim. Plaintiffs cite the deposition testimony of Decedent's co-workers, showing that Decedent was exposed to various asbestos-containing products by Hopeman employees.[65] Plaintiffs also cite to their experts' reports concluding that Decedent was often exposed to significant concentrations of asbestos from Hopeman's work and his exposure to such products significantly increased his risk for developing mesothelioma.[66] Plaintiffs cite to the Louisiana Workers' Compensation Act, the Walsh Healey Act, and the 1943 Louisiana Sanitary Code for support that Hopeman had notice of the hazards of

---

[62] *Becnel*, 2022 WL 3665085 at *4.

[63] *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 3892810 (E.D. La. July 10, 2020).

[64] *Id.* at 7.

[65] Rec. Doc. 245 at 5–12.

[66] *Id.* at 12–13.

asbestos.[67] Plaintiffs also cite testimony from former Hopeman executives establishing that Hopeman had knowledge of the dangers of asbestos in 1965.[68]

Viewing this evidence in the light most favorable to Plaintiffs, the evidence only suggests that Hopeman knew of the hazards of asbestos at the time of Decedent's exposure in 1971. However, Plaintiffs do not submit any evidence suggesting that Hopeman consciously intended to harm Decedent or that his mesothelioma was "inevitable or incapable of failing."[69] Even assuming that Hopeman had awareness that workplace exposure to asbestos was dangerous and that they should have utilized precautionary measures, Plaintiffs fail to bring forward sufficient evidence "whereby a reasonable juror could conclude that [Decedent's mesothelioma] was inevitable" such that it was substantially certain to result from Hopeman's conduct.[70] Accordingly, the Court finds Plaintiffs' claim against Hopeman "lies in the realm of negligence, not in the realm of intentional tort."[71] Thus, Hopeman is entitled to summary judgment dismissing Plaintiffs' intentional tort claim against it.

## B.    Alter Ego Claims

Liberty also moves for summary judgment on Plaintiffs' claims against Hopeman as the alleged alter ego of Wayne. Under Louisiana law, "[c]orporations function as distinct legal entities, separate from the individuals who own them, and their shareholders are not generally liable for the

---

[67] *Id.* at 13.

[68] *Id.* at 13–14.

[69] *Reeves*, 731 So. 2d at 213.

[70] *Becnel*, 2022 WL 3665085 at *4.

[71] *Cortez*, 597 F. Supp. 3d at 977.

debts of the corporation."[72] The same principal of limited shareholder liability "applies where one corporation wholly owns another."[73] In certain circumstances Louisiana law permits "piercing the corporate veil" on an alter ego basis.[74] This usually involves "situations where fraud or deceit has been practiced by the shareholder acting through the corporation."[75] "Louisiana courts have declared that the strong policy of Louisiana is to favor the recognition of the corporation's separate existence, so that veil-piercing is an extraordinary remedy, to be granted only rarely."[76]

In *Riggins v. Dixie Shoring Co.* the Louisiana Supreme Court set forth the following factors for courts to consider when determining whether to apply the alter ego doctrine:

(1) commingling of corporate and shareholder funds;
(2) failure to follow statutory formalities for incorporating and transacting corporate affairs;
(3) undercapitalization;
(4) failure to provide separate bank accounts and bookkeeping records; and
(5) failure to hold regular shareholder and director meetings.[77]

Plaintiffs do not present any evidence to support application of the alter ego doctrine based on these factors. Instead, Plaintiffs rely on *Green v. Champion Insurance Co.*,[78] and request that the Court deem Hopeman and Wayne a single business enterprise under the eighteen-factor test laid out in that case. *Green* set forth eighteen factors for determining whether affiliated entities

---

[72] *Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 385 (5th Cir. 2000) (citing *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1167 (La. 1991).

[73] *Bujol v. Entergy Servs., Inc.*, 2003-0492 (La. 5/25/04), 922 So. 2d 1113, 1127.

[74] *Hollowell*, 217 F.3d at 385 (quoting *Riggins*, 590 So. 2d at 1168).

[75] *Id.* (quoting *Riggins*, 590 So. 2d at 1168).

[76] *Bujol*, 922 So. 2d at 1128 (quoting Glenn G. Morris and Wendell H. Holmes, *Louisiana Civil Law Treatise, Vol. 8, Business Organizations* § 32.02 (1999)).

[77] *Riggins*, 590 So. 2d at 1168.

[78] 577 So. 2d 249 (La. App. 1 Cir. 1991).

constitute a single business enterprise:

> (1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
> (2) common directors or officers;
> (3) unified administrative control of corporations whose business functions are similar or supplementary;
> (4) directors and officers of one corporation act independently in the interest of that corporation;
> (5) corporation financing another corporation;
> (6) inadequate capitalization ("thin incorporation");
> (7) corporation causing the incorporation of another affiliated corporation;
> (8) corporation paying the salaries and other expenses or losses of another corporation;
> (9) receiving no business other than that given to it by its affiliated corporations;
> (10) corporation using the property of another corporation as its own;
> (11) noncompliance with corporate formalities;
> (12) common employees;
> (13) services rendered by the employees of one corporation on behalf of another corporation;
> (14) common offices;
> (15) centralized accounting;
> (16) undocumented transfers of funds between corporations;
> (17) unclear allocation of profits and losses between corporations; and
> (18) excessive fragmentation of a single enterprise into separate corporations.[79]

The court explained that the factors are "illustrative and [are] not intended as an exhaustive list," and "[n]o one factor is dispositive."[80]

Plaintiffs do not contest Liberty's evidence that: the companies were separately incorporated in different states at different times, the companies maintained separate accounting systems, the companies used separate checking accounts, the companies filed separate tax returns, and Wayne was profitable from its inception in 1922 to its dissolution in 1985.[81] Plaintiffs submit evidence showing that Wayne and Hopeman shared some officers, the businesses shared the same

---

[79] *Id.* at 257–58.

[80] *Id.* at 258.

[81] Rec. Doc. 207-2 at 12.

address for a period of time, Wayne primarily provided composite wallboards to Hopeman, and Wayne was a wholly-owned subsidiary of Hopeman at the relevant time.[82]

Louisiana appellate courts have declined to pierce the corporate veil under the single business enterprise framework where "[u]nlike in the *Green* case . . . there is simply no wrongdoing or other extraordinary circumstances present in the relationship between [the companies] that justifies disregarding the law of Louisiana corporations."[83] The Fifth Circuit has also instructed that single business enterprise veil-piercing is utilized "for the purpose of preventing fraud or achieving equity."[84] The evidence presented to support application of the single business enterprise doctrine in this case is "perfectly consistent with legitimate, efficient business operations, such as common control, common employees, officers, and directors, shared offices, and some form of centralized accounting."[85]

Plaintiffs have not shown that the single business enterprise theory should apply in this case. Only a few of the *Green* factors are present, and the factors at issue are all consistent with legitimate business practices. Plaintiffs have not pointed to evidence showing that any extraordinary circumstances, such as fraud or other wrongdoing, exist. Claims against Wayne and Hopeman are both pending before this Court. Therefore, considering Louisiana's strong public

---

[82] Rec. Doc. 245 at 19–20.

[83] *Johnson v. BP Prod. N. Am., Inc.*, No. 14-541, 2014 WL 5410646, at *4 (La. App. 4 Cir. 10/22/14), *writ denied*, 161 So. 3d 641 (La. 2015); *see also Spillman v. Gasco, Inc.*, No. 47,085 (La. App. 2 Cir. 5/16/12), 110 So. 3d 150, 159, *writ denied*, 99 So. 3d 652 (La. 2012) (rejecting single business enterprise liability where "the case present[ed] none of the normal grounds for piercing the corporate veil"); *Town of Haynesville, Inc. v. Entergy Corp.*, No. 42,019 (La. App. 2 Cir. 5/2/07), 956 So. 2d 192, 198–99 (reversing trial court's single business enterprise finding when there was no evidence of "wrongdoing or other extraordinary circumstances" affecting the plaintiff's dealings with a subsidiary within an affiliated group).

[84] *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 335 (5th Cir. 2007).

[85] *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of Louisiana*, 690 F. Supp. 2d 435, 445 (E.D. La. 2010).

policy supporting corporations functioning as distinct legal entities, the Court finds that application of the alter ego doctrine is not appropriate in this case.

### C.    *Manufacturer Liability Claims*

Liberty moves for summary judgment on the issue of whether Hopeman was a manufacturer of asbestos-containing products. A plaintiff can recover against a manufacturer by "proving that his injury was caused by a condition of the product existing at the time it left the manufacturer's control that rendered the product unreasonably dangerous in normal use."[86] Liberty argues that Hopeman did not manufacture any asbestos-containing products and was merely a subcontractor that provided furnished wallboard to Avondale. Plaintiffs assert that Hopeman was a manufacturer because it modified and fabricated the wallboards.

Plaintiffs argue that the Louisiana Products Liability Act ("LPLA") should be "illustrative" in this case because it codified pre-existing jurisprudence. The Louisiana Supreme Court has found that the LPLA only has prospective effect.[87] Nevertheless, even assuming that the LPLA's definition of manufacturer applies, Plaintiff has not demonstrated that Hopeman was a manufacturer.

The LPLA defines a "manufacturer" is "a person or entity who is in the business of manufacturing a product for placement into trade or commerce."[88] The statute provides that "'[m]anufacturing a product' means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product."[89] Under the statute, manufacturer is

---

[86] *Becnel v. Lamorak Ins. Co.*, No. 19-14546, 2022 WL 3369163, at *2 (E.D. La. Aug. 16, 2022).

[87] *Gilboy v. Am. Tobacco Co.*, 582 So.2d 1263, 1264–65 (La. 1991).

[88] La. Rev. Stat. § 9:2800.53.

[89] *Id.*

also defined as: (1) "[a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product;" and (2) "[a] manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer."[90]

Plaintiffs assert that Hopeman was a joiner at Avondale from decades and worked to install asbestos panels as bulkhead panels and divisional panels throughout ships constructed there. Plaintiffs contend that Wayne would manufacture panels for Hopeman's use, which Hopeman would then cut down aboard ships to install, producing asbestos dust. Multiple judges in this District have found that Hopeman cannot be held liable as a manufacturer based on these same facts.[91] Hopeman was a subcontractor that furnished a component part to Avondale, who was responsible for production of the ships. "To deem Hopeman a manufacturer would be to deem all joiners, carpenters, sheet rock installers, and other subcontractors as manufacturers of a finished product."[92] Plaintiffs have not demonstrated that this such an application is consistent with Louisiana law.

Accordingly,

---

[90] *Id.*

[91] *Matherne v. Huntington Ingalls Inc.*, No. 22-2656, Rec. Doc. 327, at *9 (E.D. La. Jan. 24, 2024); *Adams v. Eagle, Inc.*, No. 21-694, Rec. Doc. 209, at *12 (E.D. La. Sept. 8, 2022); *Cortez v. Lamorak Insurance Company*, No. 20-2389, Rec. Doc. 1142 (E.D. La. Aug. 10, 2022).

[92] *Matherne*, No. 22-2656, Rec. Doc. 327, at *9.

**IT IS HEREBY ORDERED** that Liberty's motions for partial summary judgment[93] are **GRANTED**. Liberty is entitled to summary judgment finding that Hopeman is not a manufacturer under Louisiana law. Plaintiffs' claims for intentional tort and alter ego liability against Hopeman are also **DISMISSED WITH PREJUDICE.**

**NEW ORLEANS, LOUISIANA,** this  19th  day of November, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[93] Rec. Docs. 205, 207.