## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ERICA DANDRY CONSTANZA, ET AL.**                   **CIVIL ACTION**

**VERSUS**                                           **CASE NO. 24-871**

**SPARTA INSURANCE COMPANY, ET AL.**                 **SECTION: "G"(5)**


## ORDER AND REASONS

Before the Court is Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner's (collectively, "Plaintiffs") "Motion for Partial Summary Judgment Regarding Avondale's Government Contractor Defense."[1] In this litigation, Plaintiffs allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4] Plaintiffs move the Court to hold that Avondale may not assert a sovereign immunity defense as a government contractor against Plaintiffs' claims for failure to: warn, prevent the spread of asbestos and protect workers

---

[1] Rec. Doc. 208.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] Id.

from exposure to asbestos.[5] Avondale opposes the motion.[6] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[7] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[8] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[9] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[10] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[11] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the

---

[5] Rec. Doc. 208.

[6] Rec. Doc. 226.

[7] Rec. Doc. 1-3 at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.* at 5.

safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[12]

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[13] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[14] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[15]

On September 16, 2025, Plaintiffs filed the instant Motion for Partial Summary Judgment.[16] On September 22, 2025, Avondale filed an Opposition to the motion.[17] On September 26, 2025, Plaintiffs filed a Reply in further support of the motion.[18]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of the Motion for Partial Summary Judgment*

Plaintiffs argue that the tortious conduct undertaken by Avondale here was not specifically approved by the government and that Avondale's alleged misconduct was discretionary, therefore the government contractor defense does not apply to Plaintiffs' claims for failure to: warn, prevent

---

[12] *Id.*

[13] *Id.* at 18.

[14] *Id.* at 19.

[15] *Id.*

[16] Rec. Doc. 208.

[17] Rec. Doc. 226.

[18] Rec. Doc. 270.

the spread of asbestos and protect workers from exposure to asbestos.[19] Plaintiffs assert that the government contractor defense is available "where the contractor has complied with a directive from the government which prevented them from protecting [Decedent]."[20] Further, Plaintiffs submit that there is "no evidence that the government made Avondale fail to protect Avondale employees and their family members from asbestos dust."[21] Additionally, Plaintiffs cite multiple cases in other sections of this Court where the presiding judges rejected Avondale's government contractor defense under allegedly similar facts.[22] For the same reasons set forth in those cases, Plaintiffs contend the Court should reject Avondale's government contractor defense here.[23] Plaintiffs expound by asserting that the contracts between Avondale and the government did not constrain Avondale in any way from:

> (1) warning its employees about the hazards of asbestos, and (2) from implementing its own engineering and industrial hygiene protocols to prevent contamination by asbestos to its employees because implementing these safety protocols would not have required Avondale to depart from the terms of the government specifications.[24]

Plaintiffs also rely on the testimony of Felix Albert, a government safety inspector at Avondale, who testified that there were no government safety inspectors working at Avondale

---

[19] Rec. Doc. 208-1 at 2.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 3–4. (citing *Legendre v. La. Ins. Guaranty Ass'n*, No. 22-1767, 2024 WL 1556842 (E.D. La. Apr. 10, 2024); *Matherne v. Huntington Ingalls Inc.*, No. 22-2656, 2024 WL 216925 (E.D. La. Jan 19, 2024); *Crossland v. Huntington Ingalls, Inc.*, No. 20-3470, 2022 U.S. Dist. LEXIS 190583 (E.D. La. Oct. 22, 2022); *Falgout v. Anco Insulations, Inc*., No. 21-1443, 2022 U.S. Dist. LEXIS 187097 (E.D. La. Oct. 12, 2022); *Adams v. Eagle, Inc*., No. 21-694, 2022 U.S. Dist. LEXIS 158790 (E.D La. Sept. 2, 2022); *Broussard v. Huntington Ingalls Inc.*, No. 20-836, 2021 U.S. Dist. LEXIS 225247 (E.D. La. Nov. 22, 2021)).

[23] *Id.* at 4.

[24] *Id.* at 8 (citing *Adams*, 2022 U.S. Dist. LEXIS 158790 at *12).

between 1965 and 1976.[25] Further, Plaintiffs offers the testimony Peter Territo, a former Avondale

Safety Director, and Edie Blanchard, a Superintendent of Outfitting at Avondale, to assert that

government inspectors that did perform site visits at Avondale did not direct or control Avondale's

safety department.[26] Additionally, Plaintiffs contend that the testimony of Danny Joyce,

Avondale's corporate representative, establishes that there was no government policy that

> would have prohibited Avondale from using engineering controls
> such as localized or general exhaust, providing a warning to
> Avondale workers, educating workers about the hazards or potential
> hazards of asbestos or asbestos-containing products, performing air
> monitoring tests, or segregating Avondale workers away from where
> asbestos-containing products were being [used] and installed.[27]

Plaintiffs also point out that Avondale admitted in its pleadings that "[t]he Government did

not prohibit Avondale Shipyard from providing warnings about the dangers of respirable asbestos

to Avondale employees,"[28] and that it "had discretion to warn employees of about the hazards of

asbestos."[29]

Lastly, Plaintiffs assert that the commercially available off-the-shelf products used at

Avondale do not, as a matter of law, trigger sovereign immunity.[30] Plaintiffs contend that the

asbestos-containing products here were not manufactured with the special needs of the military in

mind, and therefore cannot trigger sovereign immunity under the government contractor defense.[31]

---

[25] *Id.* at 9 (citing Rec. Doc. 208-9 at 3).

[26] *Id.* at 10 (citing Rec. Docs. 208-14 at 3–4, 208-15 at 3–4).

[27] *Id.* (citing Rec. Doc. 208-16 at 4).

[28] *Id.* at 11 (citing Rec. Doc. 208-10 at 2).

[29] *Id.* (citing Rec. doc. 208-10 at 3).

[30] *Id.* at 16.

[31] *Id.* at 16–17.

**B.**     *Avondale's Arguments in Opposition of the Motion for Partial Summary Judgment*

In response, Avondale asserts that dismissal of the government contractor defense under *Yearsley v. W.A. Ross Construction Co.*[32] and *Boyle v. United Technologies Corp.*[33] is unwarranted.[34] Avondale claims that while the *Yearsley* and *Boyle* defenses are similar, they are distinct and neither should be precluded by summary judgment.[35] Avondale submits that its "government contracts during the relevant time set the precise requirements for use, installation, and handling of asbestos on federal vessels, including requirements related to safety and warnings."[36] Avondale contends that the Court should decline to follow *Adams*, where another section of this Court "incorrectly held that claims for Avondale's failure to warn or protect employees from asbestos were unrelated to the government's directives and exercise of discretion."[37] Instead Avondale puts forth *Latiolais v. Huntington Ingalls, Inc.* arguing that it should instruct the Court here.[38]

Avondale alleges that *Latiolais* involved similar facts as the instant case and this Court should likewise apply the three *Boyle* factors to determine if the defense is applicable.[39] Avondale states that the three *Boyle* factors here are: "whether (1) the government approved reasonably precise specifications for construction of the vessels at issue with asbestos, (2) Avondale's

---

[32] 309 U.S. 18 (1940).

[33] 487 U.S. 500 (1988).

[34] Rec. Doc. 226 at 1.

[35] *Id.* at 15.

[36] *Id.* at 2.

[37] *Id.* (citing *Adams*, 2022 U.S. Dist. LEXIS 158790).

[38] *Id.* at 7 (citing 951 F.3d 286 (5th Cir. 2020)).

[39] *Id.*

construction of the vessels conformed to those specifications, and (3) Avondale warned the government of any asbestos-related hazards that were known by Avondale but unknown by the government."[40]

Regarding the first *Boyle* factor, Avondale asserts that "[t]he government need not address the specific defect alleged, but rather, need only evaluate the design feature in question."[41] Further, Avondale claims that the government's continued use of a product despite knowledge of its hazardous nature, meets the first *Boyle* factor.[42] Avondale submits that here, as in *Latiolais*, the federal vessels were built under contract with the federal government.[43] Additionally, Avondale alleges those contracts included a requirement to install asbestos containing materials.[44] Avondale also contends that it was required to follow government mandated safety standards and subject to government safety inspections.[45] Avondale claims that this government involvement creates a genuine issue of material fact as to whether the first *Boyle* factor is met.[46]

Avondale asserts that the evidence shows that it complied with the reasonably precise government specifications "requiring the use of asbestos on federal vessels," thus there is a genuine question of material fact as to whether the second *Boyle* factor is met.[47] Further, Avondale contends that there is a genuine questions of material fact as to whether the third *Boyle* factor is met, because

---

[40] *Id.* (citing *Latiolais,* 951 F.3d at 296–98).

[41] *Id.* at 8 (internal quotation omitted) (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400–01 (5th Cir. 1998)).

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.* at 9.

[46] *Id.*

[47] *Id.* at 9–10.

the government knew more than private shipyards about the health hazards of asbestos at the time.[48]

Additionally, Avondale argues that the district court decisions cited by Plaintiffs all suffer from the same flaw as *Adams*, which is that those courts declined to follow the *Boyle* elements applied by the Fifth Circuit in *Latiolais*.[49] Finally, Avondale claims that Plaintiffs fail to establish that the federal vessels constructed by Avondale were "commercially available products."[50] Avondale asserts that the combination of commercially available component parts does not negate the government's role in designing the final product.[51] Hence, Avondale claims it has a valid *Boyle* defense or at minimum presents issues of fact that preclude summary judgment.[52]

Avondale also asserts that summary judgment is not warranted on their *Yearsley* defense.[53] Avondale alleges that *Yearsley* holds,

> that the actions of a government contractor will be treated as the actions of the government—and therefore be subject to a derivative immunity that is co-extensive with the government's sovereign immunity—where (1) the contractor's acts complied with the terms of a federal government contract, and (2) the contract was validly conferred by the government.[54]

As to the first *Yearsley* element, Avondale claims that the evidence demonstrates that it complied with all the government's requirements, including those related to "asbestos use,

---

[48] *Id.* at 10.

[49] *Id.* at 11.

[50] *Id.* at 24–25.

[51] *Id.* at 25.

[52] *Id.* at 12.

[53] *Id.* at 15.

[54] *Id.* (citing *Yearsley*, 309 U.S. at 21).

handling, and warnings of hazards related to same."[55] As to the second element, Avondale contends that it is undisputed that the government conferred authority on Avondale to construct the federal vessels.[56] Thus, Avondale argues that both *Yearsley* elements are satisfied here, and therefore Avondale is entitled to share the United States' sovereign immunity.[57] Alternatively, Avondale pleads that there is at least a genuine dispute of material facts regarding its entitlement to the *Yearsley* defense.[58]

## C.    *Plaintiffs' Arguments in Further Support of the Motion for Partial Summary Judgment*

In reply, Plaintiffs assert that all arguments raised by Avondale in its opposition have been rejected in multiple other cases in this district.[59] Further, Plaintiffs point out that prior decisions that Avondale has cited in an attempt to distinguish the instant matter involved motions to remand rather than a motion for summary judgment.[60] Plaintiffs assert that they are not seeking summary judgment for all claims, but only to preclude the government contractor defense to Plaintiffs' claims for failure to: warn, prevent the spread of asbestos and protect workers from exposure to asbestos.[61]

---

[55] *Id.* at 18–19.

[56] *Id.* at 18.

[57] *Id.*

[58] *Id.* at 19.

[59] Rec. Doc. 270 at 1–2 (citing *Crossland v. Huntington Ingalls, Inc.*, No. 20-3470, 2022 U.S. Dist. LEXIS 190583 (E.D. La. 10/22/2022); *Falgout v. Anco Insulations, Inc.*, No. 21-1443, 2022 U.S. Dist. LEXIS 187097 (E.D. La. 10/12/22); *Adams v. Eagle, Inc.*, No. 21-694, 2022 U.S. Dist. LEXIS 158790 (E.D. La. 9/2/22); *Broussard v. Huntington Ingalls Inc.*, No. 20-836, 2021 U.S. Dist. LEXIS 225247 (E. D. La. 11/22/21); *Legendre v. Louisiana Ins. Guaranty Association*, 2024 WL 1556842 (E.D. La. 4/10/24)).

[60] *Id.* at 2.

[61] *Id.* at 2–3.

Further, Plaintiffs contend that *Crossland* is directly on point, and in that case Judge Vance declined to permit Avondale to assert a *Boyle* or *Yearsley* defense.[62] In that case Plaintiffs claim that the Court held that, "[t]he Fifth Circuit had made clear that if the government merely 'rubber-stamp[s]' the contractor's decisions, this is not enough to entitle a contractor to immunity under *Boyle*.[63] Additionally, Plaintiffs contend the Court in *Crossland* held that a *Yearsley* defense requires "that the contractor possess an actual agency relationship with the government."[64] Plaintiffs argue that like in *Crossland* that requirement is not met here and Avondale should be precluded from asserting a *Yearsley* defense.[65]

### III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[66] The court must view the evidence in the light most favorable to the nonmovant.[67] Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[68] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine

---

[62] *Id.* at 5–6 (citing *Crossland*, 2022 U.S. Dist. LEXIS 190583 at *34, 39).

[63] *Id.* at 5 (citing *Crossland*, 2022 U.S. Dist. LEXIS 190583 at *34).

[64] *Id.* at 6.

[65] *Id.* at 6–7.

[66] Fed. R. Civ. P. 56(a).

[67] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[68] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

dispute.[69] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[70]

**IV. Analysis**

The Court first examines Avondale's entitlement to immunity to under the doctrine announced in *Boyle*.[71] It then turns to their claim to immunity under the doctrine established in *Yearsley*.[72]

### A.    *Immunity Under the Boyle Doctrine*

Avondale's claim of immunity depends on the scope of protection available to government contractors under *Boyle*. *Boyle* involved a claim predicated on a defective helicopter door that was designed by a contractor pursuant to the government's design specifications.[73] The Supreme Court held that under certain circumstances, a contractor is entitled to immunity from state law tort claims for product design defects. Otherwise, the court reasoned, "[t]he imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price."[74]

In order for a defendant to "claim the government contractor defense" for design defect claims, "(1) the government must have approved 'reasonably precise' specifications; (2) the

---

[69] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[70] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

[71] 487 U.S. 500 (1988)

[72] 309 U.S. 18 (1940).

[73] *Boyle*, 487 U.S. at 503.

[74] *Id.* at 507.

equipment must have conformed to those specifications; and (3) the supplier/contractor must have warned of those equipment dangers that were known to the supplier/contractor, but not to the government."[75] The first two requirements "assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself."[76] The third requirement "is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability."[77] "Stripped to its essentials," the government contractor defense in *Boyle* is "fundamentally a claim that the [g]overnment made me do it."[78]

In the context of failure-to-warn claims, the Fifth Circuit has applied a "modified *Boyle* test."[79] "If a plaintiff brings a failure-to-warn case alleging a failure to conform to state law requirements, and the defendant establishes that the federal government was involved in the decision to give (or not to give) a warning and that the defendant complied with the federal government's provisions, there necessarily exists a conflict between state law and federal policy in this area."[80] Accordingly, under the modified *Boyle* test, government contractors are immune from liability for failure to warn only when "(1) the United States exercised discretion and

---

[75] *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 435 (5th Cir. 2000) (citing *Boyle*, 487 U.S. at 512).

[76] *Boyle*, 487 U.S. at 512.

[77] *Id.*

[78] *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) (internal quotation marks omitted).

[79] *Kerstetter*, 210 F.3d at 438.

[80] *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 353 (5th Cir. 2010).

approved the warnings; (2) the contractor provided a warning that conformed to the approved warnings; and (3) the contractor warned about dangers it knew, but the government did not."[81]

Plaintiffs contend that they are entitled to summary judgment on the issue of Avondale's entitlement to *Boyle* immunity because Avondale has identified no evidence indicating that the government was involved in the decision of whether to issue asbestos-related warnings. Plaintiffs assert that to the contrary, the record shows that Avondale had discretion to warn its employees about the dangers of asbestos, and workplace safety was Avondale's responsibility, not the government's. Avondale argues it is entitled to immunity under *Boyle* because the government exercised discretion when it considered the safety risks that employees faced and issued only those warnings it thought were necessary.

Plaintiffs contend that the existence of these minimum safety requirements does not give rise to immunity under the *Boyle* doctrine because there is no evidence or language in the contracts which constrained Avondale in any way from issuing warnings to its employees. Plaintiffs argue that because the government did not prevent Avondale from issuing warnings to employees, it cannot claim immunity under *Boyle* for its failure to do so.

Several courts in this district have adopted a restrictive approach to *Boyle* immunity when assessing claims like those raised by Plaintiffs here. For example, in *Broussard v. Huntington Ingalls, Inc.*, the Court granted summary judgment to the plaintiff on the issue of Avondale's entitlement to *Boyle* immunity, because "it appears that nothing prevented Avondale from satisfying the terms of its Navy contracts and meeting its obligations under Louisiana law, without doing violence to either."[82] Similarly, in *Sheppard v. Northrop Grumman Systems Corp.*, the court

---

[81] *Kerstetter*, 210 F.3d at 438.

[82] No. 20-836, 2021 U.S. Dist. LEXIS 225247, 2021 WL 5448795, at *3 (E.D. La. Nov. 22, 2021).

held that the defendant lacked a colorable *Boyle* defense for purposes of removal, because "no government regulation or contract specification prevented [the contractors] from providing safety warnings," thereby permitting the contractors to "comply with both their contractual obligations and their state-prescribed duty of care."[83]

The Fifth Circuit has not explicitly required a contractor to demonstrate that it was prevented by the government from providing additional warnings in order to enjoy immunity under the *Boyle* doctrine. To the contrary, several cases suggest the Fifth Circuit takes a more permissive approach to the availability of *Boyle* immunity.

For example, in *Kerstetter*, the family of a Navy instructor sued the manufacturer of a pilot restraint system after the instructor died when he was inadvertently ejected from his aircraft.[84] The family brought claims for design defect and failure to warn, and the manufacturer argued it was entitled to immunity under *Boyle*. Regarding the design defect claim, the Fifth Circuit rejected the plaintiffs' argument that the manufacturer was not entitled to immunity because it could have designed a safer pilot restraint system without violating the government contract.[85] The Fifth Circuit further held that the manufacturer was entitled to immunity on the failure-to-warn claim because even though the government did not require the contractor to issue a warning about the specific hazard the deceased faced—inadvertent seat release—the government nevertheless "exercised discretion in approving [other] warnings in the flight manual."[86] The court did not require an additional showing that the manufacturer was prohibited from issuing further warnings.

---

[83] No. 07-2208, 2007 U.S. Dist. LEXIS 38463, 2007 WL 1550992, at *6 (E.D. La. May 24, 2007).

[84] *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 433-34 (5th Cir. 2000).

[85] *Id.* at 437.

[86] *Id.* at 438.

The Fifth Circuit reached a similar conclusion ten years later in *Jowers*.[87] In that case, the district court instructed the jury that in order for the contractor to have immunity to a failure-to-warn claim, the contractor must show that "the United States Government had an identifiable interest or policy in the existence or methods of warnings on welding products," and that "there was a significant conflict between this Federal interest or policy and the requirements of [state] law regarding the provision of adequate warnings."[88] The contractor argued "this added element erroneously required it to show physical impossibility to comply with both the state law standard of care and the federal government's specifications in order to prevail on the government contractor defense."[89] The Fifth Circuit agreed, holding that "[i]f a plaintiff brings a failure-to-warn case alleging a failure to conform to state law requirements, and the defendant subsequently establishes that the federal government was involved in the decision to give (or not to give) a warning and that the defendant complied with the federal government's provisions, there necessarily exists a conflict between state law and federal policy in this area."[90] The contractor was not required to also prove that the government prohibited it from issuing additional warnings.[91]

Even under the more permissive approach to *Boyle* immunity, the Court finds that Avondale has failed to establish its entitlement to immunity. The fact that the government provided a maximum threshold for asbestos exposure does not indicate that the government exercised meaningful discretion in the decision of whether to issue warnings related to asbestos. Avondale argues that the government required warnings about asbestos in the event employees were exposed

---

[87] 617 F.3d at 353.

[88] *Id.* at 352.

[89] *Id.*

[90] *Id.* at 353

[91] *Id.*

in excess of the maximum thresholds, but there is no evidence of the content of any warnings required by the government, or any contract provision, regulation, statute, or document that required warnings. There is no provision in the Walsh-Healey Act or any regulations that required such warnings. Additionally, Avondale cites to no other source for this requirement. Unlike in *Kerstetter*, where the government's exercise of discretion regarding the issuance of warnings was made clear by evidence that the government affirmatively approved the contractor's warnings,[92] here, the government appears to have been uninvolved in the decision of which, if any, warnings would be issued to Avondale's employees about asbestos.

Further, as Plaintiffs note, Felix Albert, a Navy inspector who worked at Avondale during the same time as Decedent, testified that Avondale handled safety matters at the shipyard.[93] This evidence indicates that, contrary to Avondale's assertions otherwise, the government did not exercise meaningful discretion in the area of asbestos warnings.

The Court also does not accept Avondale's conclusion that the government's decision to work with Avondale even though Avondale did not issue warnings to workers about asbestos gives rise to immunity under *Boyle*. The Fifth Circuit has made clear that if the government merely "rubber-stamp[s]" the contractor's decisions, this is not enough to entitle a contractor to immunity under *Boyle*.[94] Avondale also emphasizes that the government was closely involved with designing and overseeing the construction of the asbestos-containing vessels, but that fact does not demonstrate that the government was involved with the issuance of warnings to employees about the risks of asbestos.

---

[92] 210 F.3d at 438.

[93] Rec. Doc. 226-3 at 30.

[94] *Jowers*, 617 F.3d at 353.

Accordingly, the Court finds that Avondale has not met its burden of identifying evidence creating a genuine dispute of material fact as to whether "the federal government had [a] hand in" the decision of whether to issue warnings related to asbestos.[95] Rather, the record indicates that "no governmental discretion was exercised."[96] The Court thus holds that Avondale is not entitled to *Boyle* immunity for Plaintiffs' failure-to-warn claims.

The same is true for Plaintiffs' claims premised on Avondale's failure to implement additional safety measures to prevent the spread of asbestos. The safety and health standards of the Walsh-Healey Act provide that no employee shall be exposed to asbestos in excess of a specified limit, unless he is protected therefrom by respiratory equipment approved for the purpose by the United States Bureau of Mines of the United States Department of the Interior and operated in accordance with the recommendations of its manufacturer.[97] Further, Avondale has submitted testimony that the Navy had a team of people throughout the shipyard inspecting every single part of the work performed, including for safety, and that some of these safety inspections focused on Avondale's compliance with the Walsh-Healey Act. The specifications in the Walsh-Healey Act appear to be reasonably precise, but the Act includes a catch-all provision that it expresses only minimum safety and health standards, and that compliance with the standards expressed herein will not relieve anyone from any obligation to comply with any more strict standard stemming from any other source whatsoever. While it is true that as a general matter, a contractor may be immune under *Boyle* if it followed reasonably precise government specifications, even if it could

---

[95] *Adams v. Eagle*, 2022 U.S. Dist. LEXIS 158790, 2022 WL 4016749, at *7 (E.D. La. Sept. 2, 2022).

[96] *Id.*

[97] Walsh-Healey Act, Pub. L. No. 81-793, 64 Stat. 198 (1950).

have performed the contract in a safer way,[98] this principle does not apply here, as the government expressly stated that the safety requirements it specified are minimum standards that do not relieve contractors of from their obligation to comply with stricter standards. Accordingly, the Court holds that Avondale's compliance with the minimum health and safety requirements of the Walsh-Healey Act does not give rise to immunity under *Boyle*.[99]

In opposition Avondale cites *Latiolais v. Huntington Ingalls, Inc.*, a recent en banc decision by the Fifth Circuit.[100] There, much like here, the plaintiff brought claims against Avondale for failure to warn him about asbestos hazards and failure to provide adequate safety equipment.[101]. Avondale removed the case to federal court under 28 U.S.C. § 1442(a)(1).[102] On appeal of the district court's remand order, the Fifth Circuit discussed each of the requirements for removal under section 1442(a)(1), including whether Avondale presented a colorable federal immunity defense. In stating the requirements for immunity, the court reiterated the *Boyle* test it traditionally applied in design defect cases: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."[103] The court went on to hold that Avondale's claim for *Boyle* immunity was not frivolous because it offered evidence that "the government approved reasonably precise specifications about the installation of asbestos," including evidence that "the Navy generally required Avondale to

---

[98] *See Kerstetter*, 210 F.3d at 437.

[99] *See Adams*, 2022 WL 4016749, at *8-9.

[100] 951 F.3d 286 (5th Cir. 2020).

[101] *Id.* at 290.

[102] *Id.*

[103] *Id.*

install asbestos and to comply with certain related safety practices;" that "Avondale complied with those specifications;" and "that the federal government knew more than Avondale knew about asbestos-related hazards and related safety measures."[104]

Although *Latiolais* considered *Boyle* in the context of removal rather than assessing the defense on the merits, there is no reason the elements of the *Boyle* defense would be different in these contexts, even if the removal standard requires only that the test be supported by a colorable showing. The court noted that the *Boyle* "government contractor defense does not necessarily apply only to claims labeled 'design defect;'" rather, whether the defense "will apply to a particular claim depends only upon whether *Boyle's* three conditions are met with respect to the particular product feature upon which the claim is based."[105] *Latiolais* thus suggests that the proper test for failure-to-warn claims arising from asbestos installed under government contracts is the same as the test used in the design defect context. If that were the case, it is unclear that Plaintiffs are entitled to summary judgment. Nevertheless, the Fifth Circuit in *Latiolais* did not expressly overrule its earlier line of cases analyzing the modified *Boyle* test, including *Kerstetter* and *Jowers*. The Court will not presume that the Fifth Circuit intended to overrule these cases without expressly doing so. Accordingly, the Court holds that, under the traditional failure-to-warn test applied in *Kerstetter* and *Jowers*, Avondale has failed to demonstrate it is entitled to a defense under *Boyle*.

**B.    *Immunity under the Yearsley Doctrine***

Avondale contends it is independently entitled to immunity under the *Yearsley* doctrine. In *Yearsley*, the plaintiffs sought to recover damages for erosion of their land that resulted from the

---

[104] *Id.* at 297–98.

[105] *Id.* at 297 (quoting *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 801 (5th Cir. 1993)) (emphasis in original).

defendant's performance of a government contract to build dikes.[106] The Supreme Court held that there can be "no liability on the part of [a] contractor for executing [the government's] will," so long as (1) the contractor's authority to perform was validly conferred by the government, and (2) the contractor did not exceed the authority conferred by its contract.[107]

As a threshold matter, it is unclear whether *Yearsley* even applies in cases such as this one. Courts have observed that "the context in which [*Yearsley* and *Boyle*] immunities apply is different."[108] The Fifth Circuit has pointed out that "[t]he application of the contractor defense in the context of military-equipment manufacturers is an area of law that has [ ] been arguably distinguished from the general *Yearsley* defense in *Boyle*" and its progeny.[109] "The problem of applying the *Yearsley* defense in the context of the military contractor is the apparent requirement that the contractor possess an actual agency relationship with the government."[110] "The difficulty of establishing a traditional agency relationship with the government makes the derivative sovereign immunity defense ill-suited to many manufacturers of military equipment."[111]

Even if the *Yearsley* doctrine applies to claims brought against military-equipment manufacturers, the Court finds that Avondale is entitled to *Yearsley* immunity. Avondale contends that it is entitled to immunity because the government authorized and directed its use of asbestos, but this argument relies on a mischaracterization of Plaintiffs' claims. In the instant motion

---

[106] *Yearsley*, 309 U.S. at 19.

[107] *Id.* at 21.

[108] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 2179, 2016 WL 614690, at *10 n. 6 (E.D. La. Feb. 16, 2016).

[109] *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 205 (5th Cir. 2009).

[110] *Bynum v. FMC Corp.*, 770 F.2d 556, 564 (5th Cir. 1985).

[111] *Id.* (noting that parties that have "close contractual ties with the government" may nevertheless be "independent contractors").

Plaintiffs do not seek summary judgment for liability on the part of the contractors for executing the government's will in using asbestos-containing materials.[112] Rather, Plaintiffs' claims are based on their failure to take steps to properly protect workers from the asbestos they were directed to use. According to *Yearsley*, immunity applies to acts that were "all authorized and directed by the Government of the United States."[113] *Yearsley* does not stand for the proposition that a government contractor is immune liability for wrongful acts or omissions that are not "authorized and directed" by the government. As discussed above, Avondale has failed to meet its burden of establishing that the government "authorized and directed" its efforts to protect workers, including their issuance of warnings about asbestos-related safety hazards. Therefore, it is not entitled to *Yearsley* immunity.

In its opposition brief, Avondale primarily rely on two cases, *In re Deepwater Horizon*[114] and *Taylor Energy Company, LLC v. Luttrell*,[115] to support its argument that it is entitled to immunity under *Yearsley*. Neither case compels that conclusion. Regarding *In re Deepwater Horizon*, the federal government, rather than a contractor, had "ultimate responsibility" for "addressing worker health safety concerns," and OSHA "review[ed] training programs for incoming clean-up workers, help[ed] to determine the appropriate level of [PPE] to be worn by clean-up workers, prepar[ed] safety and health related guidance materials," among other things.[116] That case is distinguishable because the federal government had extensive involvement in deciding on and implementing worker protections. Avondale has not demonstrated that the government

---

[112] *Yearsley*, 309 U.S. at 21.

[113] *Yearsley*, 309 U.S. at 20 (internal quotation marks omitted).

[114] 2016 WL 614690.

[115] 3 F.4th 172 (5th Cir. 2021).

[116] 2016 WL 614690, at *9.

came close to having the same degree of involvement in safety decisions at Avondale as it had in *In re Deepwater Horizon*.

*Taylor Energy* is even less factually analogous to the instant case. In that case, the Coast Guard hired a contractor to assist with oil spill cleanup efforts at the expense of an energy company responsible for the spill.[117] The contractor ultimately charged the energy company over ten times the initial estimate.[118] The energy company sued, arguing the contractor undertook activities beyond the scope of the Coast Guard's directive.[119] In response, the contractor argued it was entitled to *Yearsley* immunity because it acted at the direction of the Coast Guard.[120] The Fifth Circuit held that the contractor was entitled to *Yearsley* immunity because even though it retained some discretion on the manner in which it carried out the Coast Guard's directions, it complied with government directives.[121]

Notably, Plaintiffs do not seek summary judgment regarding liability on Avondale for complying with government directives. Rather, Plaintiffs seek summary judgment on the *Yearsley* defense on claims that Avondale "chose not to warn [their] employees of the dangers of asbestos or put other measures in place to prevent the spread of asbestos" ultimately "boil down to a broad claim against [defendants] for [a] separate act of negligence."[122] Much like in *Adams*, Avondale

---

[117] 3 F.4th at 173–74.

[118] *Id.* at 174.

[119] *Id.* at 174–75.

[120] *Id.* at 175.

[121] *Id.* at 176.

[122] *See Adams*, 2022 WL 4016749, at *11 (distinguishing *Taylor Energy* on the grounds that it did not concern immunity for separate acts of negligence committed while fulfilling a government contract); *see also Ackerson*, 589 F.3d at 207 (distinguishing a valid challenge to governmental direction from a "separate act of negligence" by the contractor).

here cannot claim immunity under *Yearsley* for its alleged negligent "failure to warn of the dangers of asbestos and failure to prevent the spread of asbestos."[123]

Avondale's argument against this result rests on the same faulty premise as its arguments about *Boyle* immunity: that the government's lack of asbestos-related warnings was an intentional policy decision deserving of protection. As discussed herein, Avondale's conclusion that its workplace-safety policies were baked into the government's discretionary decisions regarding appropriate workplace-safety precautions is not supported by the evidence in the record. Hence, the Court finds that Avondale's decisions about workplace safety measures were not "directed or authorized" by the government. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Partial Summary Judgment Regarding Avondale's Government Contractor Defense"[124] is **GRANTED**. Avondale may not assert a sovereign immunity defense as a government contractor against Plaintiffs' claims for failure to warn, prevent the spread of asbestos, and protect workers from exposure to asbestos claims.

**NEW ORLEANS, LOUISIANA,** this  19th  day of November, 2025.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[123] 2022 WL 4016749, at *12.

[124] Rec. Doc. 208.

23