UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERICA DANDRY CONSTANZA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-871** |
| **SPARTA INSURANCE COMPANY, ET AL.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Defendant Paramount Global's ("Westinghouse")[1] Motion in Limine Concerning the Jeffrey J. Bair Memo.[2] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner's (collectively, "Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated's ("Avondale"),[3] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[4] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[5] Westinghouse moves the Court to issue an Order excluding a memo authored by in-house counsel Jeffrey J. Bair.[6] Plaintiffs

---

[1] Paramount Global was formerly known as: ViacomCBS Inc., CBS Corporation, a Delaware corporation, Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, and Westinghouse Electric Corporation.

[2] Rec. Doc. 328.

[3] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[4] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[5] *Id.*

[6] Rec. Doc. 328.

oppose the motion.[7] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[8] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[9] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[10] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[11] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[12] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[13]

---

[7] Rec. Doc. 428.

[8] Rec. Doc. 1-3 at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

[12] *Id.* at 5.

[13] *Id.*

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[14] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[15] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[16]

Trial in this matter is set to begin on March 9, 2026. On November 18, 2025, Westinghouse filed the instant motion.[17] On November 24, 2025, Plaintiffs filed an opposition to the motion.[18]

The instant motion relates to a memorandum prepared by Westinghouse's in-house counsel, Jeffrey Bair (the "Memo").[19] In October 1987, Bair was tasked with reviewing documents in the custody of the Westinghouse Industrial Hygiene department and developing a document retention and disposal policy. The Memo references documents described as potentially problematic to Westinghouse's pending and future litigation efforts, including the characterization of some documents as "smoking gun[s]."[20] In the Memo, Bair suggested the disposal of several different groups of documents, including plant correspondence files created before 1974, which Bair asserted were potentially harmful due to opinionated "self-analysis" and "editorializing"

---

[14] *Id.* at 18.

[15] *Id.* at 19.

[16] *Id.*

[17] Rec. Doc. 328.

[18] Rec. Doc. 428.

[19] Rec. Doc. 328-3 at 19–40.

[20] *Id.*

commentary on the company's practices by Westinghouse employees.[21] A January 22, 1988 draft letter from Bair to Wayne Bickerstaff, a manager in the Industrial Hygiene department, stated that the document retention guidelines had been developed and the program was to be implemented.[22] On January 29, 1988, a letter authored by Bickerstaff, which resembled the draft Bair had sent one week before, stated that the document retention system had been developed.[23] He described the same system outlined in the January 22 draft letter and the Bair Memo, explaining that the company would begin to implement the measures described in the correspondence, and noted that the project would be completed by June 30, 1988.[24]

In a February 9, 1988 memorandum, Bair instructed the Industrial Hygiene department not to begin the document reduction program until the files were reviewed to ensure that documents relevant to ongoing insurance coverage litigation were not discarded, which "should take place within the next few weeks."[25] He also stated that care should be taken not to discard employee exposure records, air sampling date, adverse reaction records, and certain medical information.[26] Bair's personal notes for March 3, 1988 reflect that he had informed Wayne Bickerstaff to begin discarding documents.[27] On March 8, 1988, Bair sent a memorandum to his supervisor stating that Bickerstaff and his staff had begun discarding documents per the retention guidelines.[28] Bair's

---

[21] *Id.* at 31–32.

[22] Rec. Doc. 328-4 at 5–6.

[23] *Id.* at 8–10.

[24] *Id.* at 2–3.

[25] *Id.* at 8–9.

[26] *Id.* at 8.

[27] *Id.* at 12.

[28] *Id.* at 16.

handwritten notes from late-March state that Westinghouse management decided not to implement his plan and concluded that Industrial Hygiene records should not be destroyed.[29] In 1993, Bair attested that Westinghouse management decided not to follow the recommendations contained in the Memo and that no asbestos-related documents were destroyed in response to the Memo.[30]

## II. Parties' Arguments

### A.    *Westinghouse's Arguments in Support of the Motion*

Westinghouse argues that the Memo should be excluded because it is irrelevant to any issues of liability or damages at trial.[31] Westinghouse asserts the Memo is irrelevant because its provisions do not pertain to asbestos-related issues and were never implemented.[32] Additionally, Westinghouse asserts that admitting the Memo or permitting any reference to it would be highly prejudicial and confuse the jury because it does not relate to asbestos records.[33] Finally, Westinghouse contends the Memo is inadmissible hearsay.[34]

### B.    *Plaintiffs' Arguments in Opposition to the Motion*

Plaintiffs assert that the Memo and accompanying documents are highly relevant because they support a finding that Westinghouse destroyed documents that it felt would have hampered the firm in toxic-tort litigation.[35] Plaintiffs argue that Westinghouse's own documents indicate that Westinghouse was destroying "smoking gun" documents as part of its response to toxic tort

---

[29] *Id.* at 13–14.

[30] *Id.* at 18–19.

[31] Rec. Doc. 328-1 at 10.

[32] *Id.*

[33] *Id.* at 11.

[34] *Id.* at 12.

[35] Rec. Doc. 428 at 2.

litigation.[36] Therefore, Plaintiffs assert that Westinghouse's destruction of the documents constituted spoliation of evidence.[37] Plaintiffs also argue that the Memo is not hearsay because it was prepared before January 1, 1998, and its authenticity is established.[38]

### III. Legal Standard

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[39] Under Federal Rule of Evidence 402, relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court provide otherwise.[40] Pursuant to Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[41] The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only sparingly[.]"[42] "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403."[43]

---

[36] *Id.* at 11.

[37] *Id.* at 2.

[38] *Id.* at 12.

[39] Fed. R. Evid. 401.

[40] Fed. R. Evid. 402.

[41] Fed. R. Evid. 403.

[42] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

[43] *Id.* at 1115–16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)).

## IV. Analysis

Westinghouse moves to exclude a Memo by a Westinghouse in-house attorney regarding a proposed document retention program under Rules 401, 403, and 801 of the Federal Rules of Evidence. Beginning with Westinghouse's argument that the Memo is hearsay, Federal Rule of Evidence 803(16) provides that a "statement in a document that was prepared before January 1, 1998, and whose authenticity is established" is excepted from hearsay. Because there is no dispute as to the authenticity of the memorandum, and it was prepared prior to 1998, the Court finds that it is not barred by the hearsay rule.

Westinghouse also argues that the Memo is irrelevant, or any limited probative value is substantially outweighed by its unfair prejudicial effects. Westinghouse has admitted in prior cases that it was aware of the dangers of asbestos in the 1930s or 1940s, well before Decedent's exposure in the 1970s.[44] To the extent Plaintiffs assert that Westinghouse destroyed documents that reflected its knowledge of asbestos hazards, this evidence is cumulative of other evidence Plaintiffs already have. It is also unclear from the documents presented that the document retention program proposed by Bair even concerned asbestos hazards. Therefore, the Memo is not highly probative of the facts at issue in this case.

As another court in this district has observed, "[l]itigating the Bair scenario involves many documents and several witnesses, and to put this before the jury would consume precious trial time in a mini-trial on an issue that is of at best marginal relevance."[45] This Court agrees. The limited probative value of the Memo is substantially outweighed by its propensity to waste time, unduly delay the trial, mislead the jury, and involve the needless presentation of cumulative evidence.

---

[44] *See Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2022 WL 13935280, at *6, n.20 (E.D. La. Oct. 24, 2022).

[45] *Id.* at *6.

**IT IS HEREBY ORDERED** that Westinghouse's Motion in Limine Concerning the Jeffrey J. Bair Memo[46] is **GRANTED.**

**NEW ORLEANS, LOUISIANA,** this  11th  day of February, 2026.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[46] Rec. Doc. 328.