UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERICA DANDRY CONSTANZA, ET AL.                    CIVIL ACTION


VERSUS                                            CASE NO. 24-871


SPARTA INSURANCE COMPANY, ET AL.                  SECTION: "G"(5)


**ORDER AND REASONS**

Before the Court is Defendant Paramount Global's ("Westinghouse")[1] Motion in Limine

to Exclude the Testimony of Billy Jambon.[2] Also pending before the Court is Defendant Bayer

CropScience, Inc.'s ("Bayer")[3] Motion in Limine to Exclude the Testimony of Billy Jambon.[4] In

this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner (collectively,

"Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for

Huntington Ingalls Incorporated's ("Avondale"),[5] was exposed to asbestos and asbestos-containing

products manufactured, distributed, sold, and/or handled by Avondale and other parties.[6] Plaintiffs

---

[1] Paramount Global was formerly known as: ViacomCBS Inc., CBS Corporation, a Delaware corporation, Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, and Westinghouse Electric Corporation.

[2] Rec. Doc. 354.

[3] Bayer is successor to Rhone-Poulenc AG Company, formerly known as: Amchem Products, Inc. and Benjamin Foster Company.

[4] Rec. Doc. 386.

[5] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[6] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[7] Westinghouse and Bayer both move the Court to exclude the deposition testimony of Billy Jambon.[8] Plaintiffs oppose both motions.[9] Considering the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motions.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[10] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[11] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[12] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[13] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[14] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling

---

[7] *Id.*

[8] Rec. Docs. 354 and 386.

[9] Rec. Doc. 423.

[10] Rec. Doc. 1-3 at 2.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 4.

[14] *Id.* at 5.

asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[15]

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[16] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[17] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[18]

Trial in this matter is set to begin on March 9, 2026. On November 19, 2025, Westinghouse and Bayer both filed Motions to Exclude the Testimony of Billy Jambon filed the instant motion.[19] On November 24, 2025, Plaintiffs opposed both motions.[20] On December 8, 2025, Bayer filed a reply brief in further support of its motion.[21]

## II. Parties' Arguments

### A.    *Westinghouse and Bayer's Arguments in Support of the Motions*

Westinghouse and Bayer move the Court to issue an Order excluding the deposition

---

[15] *Id.*

[16] *Id.* at 18.

[17] *Id.* at 19.

[18] *Id.*

[19] Rec. Docs. 354 and 386.

[20] Rec. Doc. 423.

[21] Rec. Doc. 459.

testimony of Billy Jambon taken in this case.[22] Westinghouse and Bayer argue that Jambon's

testimony is not based on personal knowledge because he never observed Decedent working at

Avondale.[23] Westinghouse and Bayer assert that Jambon's testimony should be excluded under

Rule 804 because Jambon refused to produce handwritten notes brought to the deposition,

depriving Defendants of an opportunity to cross-examine Jambon regarding the issues contained

in the notes.[24]

Westinghouse raises one additional argument not raised by Bayer. Westinghouse argues

that Jambon's testimony is inconsistent with testimony he gave in prior cases.[25] Due to direct,

material contradictions in the testimony and the inability to cross-examine Jambon on these issues

as he is now deceased, Westinghouse contends the probative value of the evidence is substantially

outweighed by the dangers of unfair prejudice, jury confusion, and misleading the jury.[26]

**B.      *Plaintiffs' Arguments in Opposition to the Motions***

Plaintiffs assert that Jambon has personal knowledge of Decedent's work at Avondale.[27]

Plaintiffs point out that Jambon was related to Decedent by marriage, and Jambon performed the

same job as Decedent when Jambon first started working at Avondale.[28] Plaintiffs contend that the

fact Jambon was assigned to a different department when Decedent worked at Avondale does not

---

[22] Rec. Doc. 354-1 at 1; Rec. Doc. 386-1 at 1.

[23] Rec. Doc. 354-1 at 5; Rec. Doc. 386-1 at 4–5.

[24] Rec. Doc. 354-1 at 11; Rec. Doc. 386-1 at 6–7.

[25] Rec. Doc. 354-1 at 6.

[26] *Id.* at 10.

[27] Rec. Doc. 423 at 2.

[28] *Id.* at 3.

mean he did not see Decedent working on the vessels.[29] Even if Jambon did not personally witness

Decedent performing his work, Plaintiffs submit that Jambon was intimately familiar with the job

duties of an outside machinist helper and his testimony is consistent with other evidence.[30]

Plaintiffs submit that the testimony of Billy Jambon is consistent with his deposition testimony in

prior cases, but even if there are some inconsistencies, Plaintiffs contend the amount of weight to

give testimony is for the trier of fact to decide.[31] Finally, Plaintiffs contend that Jambon's

testimony should not be excluded under Rule 804(b)(1) because counsel for both defendants had

the opportunity to cross-examine Jambon on at least three separate occasions, Jambon did not even

reference the notes during the deposition, and the notes only referenced products that Jambon had

already discussed in his prior depositions.[32]

## C.    *Bayer's Arguments in Further Support of its Motion*

In reply, Bayer asserts exclusion of Jambon's deposition testimony is required because: (1)

Jambon lacked personal knowledge regarding the subject matter of his testimony as it relates to

Decedent; and (2) as Jambon is now deceased, his deposition testimony is incomplete and should

be excluded from trial under Federal Rules of Evidence 804(b)(1) and 612.[33]

### III. Legal Standard

Rule 804(b)(1) of the Federal Rules of Evidence provides for the admissibility of former

testimony when the declarant is unavailable as a witness. The testimony may be admitted if it:

---

[29] *Id.*

[30] *Id.* at 7.

[31] *Id.* at 11.

[32] *Id.* at 16–21.

[33] Rec. Doc. 459 at 2.

(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.[34]

The Fifth Circuit has clarified that the "similar motive" requirement of Rule 804(b)(1) "does not mean identical motive."[35] Instead, in order for parties' motives to be considered "similar" as envisioned by Rule 804(b)(1), the parties must be "on the same side of the same issue at both proceedings" and must also have "a substantially similar interest in asserting and prevailing on the issue."[36]

Rule 602 of the Federal Rules of Evidence provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[37] "Evidence to prove personal knowledge may consist of the witness's own testimony."[38]

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[39] Under Federal Rule of Evidence 402, relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence

---

[34] Fed. R. Evid. 804(b)(1).

[35] *Battle ex rel. Battle v. Mem'l. Hosp. at Gulfport*, 228 F.3d 544, 552 (5th Cir. 2000) (citing *United States v. Salerno*, 505 U.S. 317, 326 (1992)).

[36] *Id.* (citing *United States v. DiNapoli*, 8 F.3d 909, 912 (2nd Cir. 1993)).

[37] Fed. R. Evid. 602.

[38] *Id.*

[39] Fed. R. Evid. 401.

or other rules prescribed by the Supreme Court provide otherwise.[40] Pursuant to Federal Rule of

Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[41]

The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only

sparingly[.]"[42] "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice,

*substantially* outweighing probative value, which permits exclusion of relevant matter under Rule

403."[43]

### IV. Analysis

There is no dispute that Jambon is not available to testify, as he is now deceased. Therefore,

his deposition testimony may be admitted under Rule 804(b)(1), unless it is otherwise inadmissible

under the Federal Rules of Evidence.

Westinghouse and Bayer argue that Jambon did not have personal knowledge of Decedent's

work. Decedent worked at Avondale from June 1, 1971 to August 16, 1971, as an outside machinist

helper. Jambon began working at Avondale in 1965 as an outside machinist helper but had moved

into the maintenance department by 1971 when Decedent began work at Avondale.[44] Although

Jambon was not assigned to the same department as Decedent during the time they both worked

at Avondale, Jambon knew Decedent as they were related through marriage, and he testified to

---

[40] Fed. R. Evid. 402.

[41] Fed. R. Evid. 403.

[42] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

[43] *Id.* at 1115–16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)).

[44] Rec. Doc. 423-2 at 9, 36, 38, 64.

seeing Decedent working at Avondale.[45] Jambon also was familiar with the type of work Decedent

performed, because he previously did the same work for the same supervisor.[46] Defendants had

the opportunity to cross-examine Jambon about the fact that he did not work with Decedent on a

daily basis.[47] Defendants can present this evidence to the jury and argue that it is a reason for the

jury to give less weight to Jambon's testimony, but it is not a basis to exclude Jambon's testimony.

Westinghouse also argues that Jambon's testimony is inconsistent with testimony he gave

in prior cases. During a deposition Jambon gave in a prior case, he testified that the AVON

SENIOR was the only vessel he worked on while he was in the maintenance department.[48] In the

deposition Jambon gave in this case, he testified that he "*went* on a lot of vessels when I was in

the maintenance department," but he also clarified that he "didn't go in there to do work on the

vessel as far as putting the vessel back in the water or whatever."[49] It is difficult to see how this

testimony is inconsistent. Nevertheless, Defendants thoroughly questioned Jambon about the

alleged inconsistency during the deposition, and they can present that evidence and argument to

the jury. Again, this is not a basis to exclude the testimony.

Finally, Westinghouse and Bayer argue that Jambon's deposition testimony should be

excluded under Rule 804 because he did not produce a copy of his notes during the deposition.

Westinghouse and Bayer now have a copy of the notes, but they do not provide any additional

detail on how the notes would have impacted the questions they asked on cross-examination or

---

[45] *Id.* at 9–11.

[46] *Id.* at 9–11, 36.

[47] *Id.* at 101, 116.

[48] Rec. Doc. 354-3 at 3.

[49] Rec. Doc. 423-2 at 65.

what additional questions they would have asked had they been provided a copy of the notes during the deposition. The fact that Jambon had the notes is discussed in detail in the deposition transcript. Defendants are free to argue that Jambon used the notes to refresh his recollection of his work at Avondale. The deposition testimony is being offered against Defendants, who had an opportunity to develop it on cross-examination. Therefore, the requirements of Rule 804(b)(1) are satisfied, and Jambon's deposition testimony is admissible at trial. Accordingly,

**IT IS HEREBY ORDERED** that the Motions in Limine to Exclude the Testimony of Billy Jambon[50] are **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __11th__ day of February, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[50] Rec. Docs. 354, 386.