**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ERICA DANDRY CONSTANZA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-871** |
| **SPARTA INSURANCE COMPANY, ET AL.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Defendant Sparta Insurance Company's ("SPARTA") "Motion for Summary Judgment Seeking Dismissal of Claims Against Certain Alleged Avondale Executive Officers and Their Alleged Insurer."[1] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner (collectively, "Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4] Plaintiffs sued SPARTA pursuant to the Louisiana Direct Action Statute alleging that SPARTA insured fifteen alleged executive officers of

---

[1] Rec. Doc. 474.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

1

Avondale, who Plaintiffs claim are liable to them.[5] SPARTA moves the Court to dismiss Plaintiffs' claims against thirteen (13) of the fifteen (15) alleged Avondale executive officers.[6] Plaintiffs oppose the motion.[7] Having considered the motion, the memoranda in support and opposition, the record, and the appliable law, the Court grants in part and denies in part SPARTA's motion for summary judgment. The motion is granted to the extent that is seeks the dismissal of claims against Dr. Joseph Mabey. The motion is denied in all other respects.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[8] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[9] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[10] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[11] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of

---

[5] *Id.* at 2–3. Avondale's fifteen alleged executive officers include Henry Zac Carter, C. Edwin Hartzman, Hettie Dawes Eaves, John Chantrey, James T. Cole, Ollie Gatlin, Earl Spooner, Steven Kennedy, Peter Territo, George Kelmell, J. Melton Garrett, Burnett Bordelon, Edward Blanchard, Albert Bossier, Jr. and Dr. Joseph Mabey.

[6] Rec. Doc. 474 at 1–2. SPARTA moves the Court to dismiss the claims against Henry Zac Carter, C. Edwin Hartzman, Hettie Dawes Eaves, John Chantrey, James T. Cole, Ollie Gatlin, Earl Spooner, Steven Kennedy, J. Melton Garrett, Burnett Bordelon, Edward Blanchard, Albert Bossier, Jr. and Dr. Joseph Mabey. The instant motion does not concern Peter Territo or George Kelmell.

[7] Rec. Doc. 483.

[8] Rec. Doc. 1-3 at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

2

[Decedent] and for which these defendants are strictly liable under Louisiana law."[12] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[13]

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[14] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[15] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[16]

On January 12, 2026, SPARTA filed the instant Motion for Summary Judgment.[17] On January 28, 2026, Plaintiffs opposed the motion.[18] On January 30, 2026, SPARTA filed a Reply in further support of the Motion.[19]

---

[12] *Id.* at 5.

[13] *Id.*

[14] *Id.* at 18.

[15] *Id.* at 19.

[16] *Id.*

[17] Rec. Doc. 474.

[18] Rec. Doc. 483.

[19] Rec. Doc. 484.

## II. Parties' Arguments

### A.    SPARTA's Arguments in Support of the Motion

SPARTA seeks dismissal of Plaintiffs' claims against thirteen of the fifteen alleged Avondale executive officers including: Henry Zac Carter, C. Edwin Hartzman, Hettie Dawes Eaves, John Chantrey, James T. Cole, Ollie Gatlin, Earl Spooner, Steven Kennedy, J. Melton Garrett, Burnett Bordelon, Edward Blanchard, Albert Bossier, Jr. and Dr. Joseph Mabey (collectively, "Purported Executive Officers").[20] SPARTA contends that the Purported Executive Officers "were not in a position to have any direct supervisory oversight or responsibility for safety, health and/or anything to do with the impacts of exposure to asbestos during the time that [Decedent] was working for Avondale."[21] Therefore, SPARTA claims that Plaintiffs cannot meet their burden of proving that each of the Purported Executive Officers are liable under the test established in *Canter v. Koehring Co.* and its progeny, which set out the standard in Louisiana for executive officer liability.[22]

SPARTA asserts that Plaintiffs have not met their burden of establishing liability with respect to each of the Purported Executive Officers in turn.[23] Beginning with Dr. Joseph Mabey, SPARTA avers that it is uncontested that Dr. Mabey was not an Avondale employee at the time of Decedent's employment.[24] Further, SPARTA submits that there is no evidence that Dr. Mabey ever saw Decedent or visited Avondale during the time Decedent was employed there.[25] However,

---

[20] Rec. Doc. 474-1 at 2.

[21] *Id.*

[22] *Id.* (citing 283 So.2d 716 (La. 1973)).

[23] *Id.* at 5–25.

[24] *Id.* at 6.

[25] *Id.*

SPARTA submits that in the early 1970's Dr. Mabey, while working as a staff surgeon, head of the emergency department, and participating in the development of the Department of Occupational Medicine at the Ochsner Clinic, rotated between Ochsner and all of the plants contracted by Ochsner including Avondale.[26] SPARTA notes that, "[i]mportantly, Dr. Mabey was not in any way involved with obtaining the contract to perform medical services at Avondale."[27]  Further, SPARTA asserts that Dr. Mabey testified that he merely provided Dr. Gidman, another physician, with "overload assistance regarding patient care," and that Dr. Mabey was "not involved in any manner with the medical surveillance program at Avondale prior to Dr. Gidman's death in 1979."[28]

Additionally, SPARTA contends that there is no evidence that Avondale exercised any control or direction over Dr. Mabey's professional judgment or practice of medicine.[29] Moreover, SPARTA avers that the fact that Dr. Mabey was visiting other industrial facilities at the time besides Avondale, "supports the argument that he was in no way an agent or employee of Avondale."[30] Therefore, SPARTA argues that Plaintiffs' cannot carry their burden to establish that Dr. Mabey was an "executive officer" of Avondale, at the time of Decedent's employment there.[31] Thus, SPARTA asserts that the Court should grant summary judgment as to Dr. Mabey.[32]

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 6–7.

[29] *Id.* at 7 (citing *Bordelon v. Avondale Industries, Inc.*, 03-228 (La. App. 5 Cir. 5/28/03), 846 So. 2d 993 (holding that that Avondale was not liable for the actions of Dr. Mabey and that there was no evidence that Avondale exercised any control or direction over Dr. Mabey's professional judgment and practice of medicine)).

[30] *Id.*

[31] *Id.*

[32] *Id.* at 8.

Turning to Albert L. Bossier, Jr., SPARTA points out that Mr. Bossier had climbed the ranks to become Avondale's Vice President of Production Operations by the time Decedent was employed there.[33] Although Mr. Bossier became Avondale's president in 1978, SPARTA asserts that he was never a member nor supervisor of the Avondale Safety Department.[34] Further, SPARTA contends that Mr. Bossier was never delegated any personal duty of responsibility for providing any Avondale employee with a safe work environment during the relevant time.[35] Moreover, SPARTA avers that Mr. Bossier was never charged by the corporation with the responsibility of monitoring Avondale's compliance with asbestos standards and regulations.[36] Additionally, SPARTA offers Mr. Bossier's testimony to assert that the safety department was responsible for the health and safety policies at Avondale during the relevant time, and that he never worked in the safety department.[37] Therefore, SPARTA contends that Mr. Bossier cannot be considered an "executive officer" nor can he be considered negligent under Plaintiff's theory of recovery.[38] Thus, SPARTA argues that summary judgment should be granted as to Mr. Bossier.[39]

Regarding James Garrett, SPARTA asserts that he was the Executive Vice President of Divisions at Avondale during Decedent's tenure with the company.[40] Notably, SPARTA points out

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 9.

[38] *Id.* at 9–10.

[39] *Id.* at 10.

[40] *Id.*

that this position did not include oversight of the "Main Yard" where Decedent worked.[41] Further, SPARTA asserts that Mr. Garrett testified that he had "nothing to do with the safety operation" and had "no responsibility for safety" at Avondale.[42]

Turning to John Chantrey, SPARTA submits that he served as the Assistant Department Head of Personnel at the time Decedent was employed.[43] SPARTA concedes that Mr. Chantrey was later appointed to take over the safety department but maintains that this change did not take effect until 1973.[44] Further, SPARTA asserts that Mr. Chantrey had no safety responsibilities before 1973.[45] Additionally, SPARTA offers *Abadie, et al. v. Metropolitan Life Ins. Co.*, where it alleges that court "exonerated Mr. Chantrey from any liability involving pre-1973 work at Avondale because he had no safety duties before that time."[46] Hence, SPARTA contends that there is no way a jury could find that Mr. Chantrey is an "executive officer" during the time that Decedent worked at Avondale, and Plaintiffs' claims against Mr. Chantrey should be dismissed with prejudice.[47]

Looking to Steven Kennedy, SPARTA points out that he worked in the quality control department during Decedent's employment with Avondale.[48] SPARTA concedes that Mr. Kennedy did work in the safety department in 1971 but submits that this did not occur until December,

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 11.

[44] *Id.*

[45] *Id.*

[46] *Id.* (citing 2000-344 (La. App. 5 Cir. 5/8/01), 791 So. 2d 126, 128).

[47] *Id.* at 11–12.

[48] *Id.* at 12.

which was months after Decedent left Avondale.[49] Accordingly, SPARTA argues that Plaintiffs' claims against Mr. Kennedy should be dismissed with prejudice.[50]

Turning to Edward Blanchard, SPARTA asserts that he was the Assistant Vice President of Production, during Decedent's tenure at Avondale.[51] Further, SPARTA insists that even though Mr. Blanchard held several roles during his time working for Avondale, none of those roles involved control or supervisory functions over the safety department.[52] SPARTA argues that Mr. Blanchard's lack of any safety, health, or occupational safety responsibilities coupled with the lack of evidence establishing his negligence should result in dismissal of Plaintiffs' claims against him.[53]

Regarding Hettie Eaves, SPARTA contends that she was Avondale's Executive Vice President of Finance when Decedent was working at Avondale.[54] Further, SPARTA asserts that Ms. Eaves was not in the safety department, was never a Director of Safety, and did not even participate in safety policy discussions.[55] SPARTA argues that the lack of any safety or asbestos-related responsibilities held by Ms. Eaves, along with the lack of any evidence establishing her negligence should result in the dismissal of Plaintiffs' claims against her.[56]

---

[49] *Id.*

[50] *Id.* at 13.

[51] *Id.* at 14.

[52] *Id.*

[53] *Id.* at 15.

[54] *Id.* at 16.

[55] *Id.*

[56] *Id.* at 16–17.

Concerning Edwin Hartzman, SPARTA avers that he was the Vice President of Engineering and Production at Avondale during Decedent's time working at the company.[57] SPARTA asserts that Mr. Hartzman testified that his position included oversight of the engineering design of vessels as well as the individuals who constructed the vessels.[58] SPARTA argues that because Mr. Hartzman was not responsible for safety or air quality standards while Decedent worked at Avondale, Plaintiffs' claims against him should be dismissed.[59]

Turning to James T. Cole, SPARTA alleges that he was Avondale's Vice President of Production when Decedent worked at the company.[60] Further, SPARTA contends that Mr. Cole had no role in Avondale's Safety Department and was never charged with establishing policies and procedures to provide Avondale employee with a safe work environment.[61] Therefore, SPARTA argues that summary judgment should be entered in its favor for claims asserted against Mr. Cole.[62]

Regarding Burnette Bordelon, SPARTA asserts that he was the Superintendent of Insulation and Stud Welding at the time of Decedent's employment.[63] SPARTA contends that while Mr. Bordelon oversaw the work of insulating on the ships, he was not in charge of specifying or purchasing any insulation or other asbestos products.[64] Further, SPARTA points out the Decedent

---

[57] *Id.* at 17.

[58] *Id.*

[59] *Id.* at 18.

[60] *Id.*

[61] *Id.* at 18–19.

[62] *Id.* at 19.

[63] *Id.*

[64] *Id.*

was not an insulator, so Mr. Bordelon was not in his chain of command.[65] Moreover, SPARTA submits that Mr. Bordelon was not a member or supervisor of the safety department.[66] Thus, SPARTA asserts that because there is no evidence that Mr. Bordelon failed to follow the standards set by the safety department, Plaintiffs' claims against him should be dismissed.[67]

With respect to Earl Spooner, SPARTA avers that he served as an Assistant Plant Engineer during Decedent's employment.[68] SPARTA offers Mr. Spooner's work records to assert that this position consisted of merely maintaining the equipment used at Avondale.[69] Moreover, SPARTA contends that Mr. Spooner was never a member of Avondale's Safety Department, nor did he supervise the activities of the safety department.[70] Hence, SPARTA argues that Plaintiffs' claims against Mr. Spooner should be dismissed.[71]

As to Ollie Gatlin, SPARTA asserts that he was Avondale's Superintendent of Plant Engineering in the maintenance department while Decedent was employed there.[72] SPARTA concedes that Mr. Gatlin testified that he knew of the hazards of asbestos in 1960 and discussed those hazards with the "Avondale superintendents" in 1964.[73] However, SPARTA highlights that Mr. Gatlin never testified that he was aware of any asbestos health hazard in connection with

---

[65] *Id.*

[66] *Id.*

[67] *Id.* at 20.

[68] *Id.*

[69] *Id.*

[70] *Id.* at 20.

[71] *Id.* at 21.

[72] *Id.*

[73] *Id.*

operations at Avondale.[74] SPARTA contends that Mr. Gatlin discharged any responsibility he may have had in relation to asbestos-hazards by sharing his general knowledge of asbestos dangers with the safety department.[75] Further, SPARTA submits that Mr. Gatlin was not involved with monitoring Avondale's compliance with asbestos standards.[76] Therefore, SPARTA argues for the foregoing reasons and the fact that there is no evidence that Mr. Gatlin was negligent, the claims against him should be dismissed.[77]

Finally, turning to Henry Carter, SPARTA alleges that he was president of the company during the time Decedent worked there.[78] Further, SPARTA claims that Mr. Carter was never a member or supervisor of the safety department.[79] Moreover, SPARTA asserts that there is no evidence that Mr. Carter was negligent in any way.[80] As a result, SPARTA contends that Mr. Carter only had a "only a general administrative responsibility, which is insufficient to establish executive officer liability under the Louisiana Supreme Court's *Canter* decision."[81] SPARTA alleges that Mr. Carter delegated safety responsibilities to others at the company.[82] SPARTA bolsters this allegation by pointing out that James O'Donnell was the head of the Safety Department for twelve years before Mr. Carter become president, therefore Mr. O'Donnell was the individual with the ultimate

---

[74] *Id.*

[75] *Id.*

[76] *Id.* at 23.

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* at 24.

[81] *Id.* (citing 283 So. 2d 716 (La. 1973)).

[82] *Id.*

responsibility for safety at the company.[83] Accordingly, SPARTA argues that Plaintiffs' claims against Mr. Carter should be dismissed.[84]

Finally, SPARTA offers several Louisiana Supreme Court cases that it claims limit the liability of executive officers.[85] SPARTA claims that these cases hold that a party alleging executive officer liability must prove that:

1) the employer owes a duty of care, the breach of which has caused the particular damage for which recovery is sought;
2) this duty is delegated to the defendant; and
3) the defendant has negligently breached this duty through personal fault in failing to discharge his personal obligation to the plaintiff.[86]

Regarding the second element, SPARTA asserts that "a defendant executive officer cannot be found liable absent a clear finding that the particular duty at issue in a case was delegated to the executive officer and that he, in turn, had not delegated with due care that duty to a responsible subordinate."[87] Concerning the third element, SPARTA contends that Plaintiff "must show that each alleged executive officer was aware of the danger of unsafe levels of asbestos and knew or should have known that the plaintiff was overexposed."[88]

---

[83] *Id.* at 25. However, SPARTA alleges that Mr. O'Donnell was not the head of the Safety Department during the relevant times. SPARTA claims that he was serving as a consultant in the Safety Department when Decedent worked at Avondale.

[84] *Id.*

[85] *Id.* at 26 (citing *Canter*, 283 So.2d 716 (La. 1973); *Pisciotta v. Allstate Insurance Co.*, 385 So.2d 1176 (La. 1980); *Lytell v. Hushfield*, 408 So.2d 1344 (La. 1982); *Brown v. White*, 430 So.2d 16 (La. 1982); *Esco v. Smith*, 468 So.2d 1169 (La. 1985)).

[86] *Id.* at 27.

[87] *Id.* at 29 (citing *Esco*, 468 So.2d 1169).

[88] *Id.* at 32 (citing *Smith v. Dow Chemical Co.*, 92-0883, (La. App. 1 Cir. 3/28/94), 635 So. 2d 325, 337.

SPARTA avers that Avondale delegated its safety duties to its safety department, which did not include any of the Purported Executive Officers.[89] Further, SPARTA claims that Avondale had a "competent and respectable safety program" which did not put any of the Purported Executive Officers on notice that there were unsafe levels of asbestos at Avondale.[90] Accordingly, SPARTA argues that none of the Purported Executive Officers are liable for Plaintiffs' claims, because Plaintiffs fail to satisfy the test for executive officer liability laid out by the Louisiana Supreme Court.[91]

### B.    *Plaintiffs' Arguments in opposition of the Motion*

Plaintiffs first respond by pointing to *Becnel v. Northrop Grumman Ship Systems, Inc.*, where Louisiana's Fourth Circuit reversed a trial court's granting of an allegedly similar motion for summary judgment.[92] In *Becnel*, the circuit court allegedly rejected a similar argument that Avondale's Safety Department was charged with asbestos air quality safety.[93] Further, Plaintiffs point out that Louisiana's Fourth Circuit made note of relevant facts regarding the liability of some Avondale's executive officers, including Henry Zac Carter, C. Edwin Hartzman, Hettie Dawes Eaves, James T. Cole, Ollie Gatlin, Earl Spooner, and Burnette Bordelon, who are also the subject of the instant motion.[94] Plaintiffs submit that Louisiana's Fourth Circuit held that "there is a genuine issue of material fact as to whether each of the Deceased Executive Officers had a personal duty, as contemplated by *Canter* and its progeny, to provide a safe workplace" and that the "facts

---

[89] *Id.*

[90] *Id.* at 33–36.

[91] *Id.* at 36.

[92] Rec. Doc. 483 at 1 (citing 2009-0982 (La. App. 4 Cir. 9/28/09), 2009 WL 5667696).

[93] *Id.* at 2.

[94] *Id.* at 2–3.

indicate that each of the Deceased Executive Officers had some role in the safety program at Avondale during the pertinent period."[95] Plaintiffs argue that the facts here indicate that, like in *Bencel*, the Purported Executive Officers had personal duties as established under *Canter* to provide safe workplace and played a role in Avondale's safety program.[96]

Plaintiffs discuss each Purported Executive Officer's liability in turn beginning with Henry Carter and Edwin Hartzman.[97] Plaintiffs allege that Mr. Carter was Avondale's president from July 1961 to March 1972, and he testified that he "was always interested in safety and the safety of the employees" and that he "had a responsibility to supervise it."[98] Additionally, Plaintiffs claim that Mr. Hartzman served as executive vice president of main plant production from 1968 to 1972, and testified that the division managers reported to him and that a safety department man would have to go through the chain of command.[99] Further, Plaintiffs assert that Ollie Gatlin testified that he attended regular meetings with all of the superintendents during which safety issue were discussed and that Mr. Carter and Mr. Hartzman were present.[100]

Turning to Burnette Bordelon, Plaintiffs contend that he was the insulation superintendent at Avondale and attended meetings regarding asbestos safety.[101] Also, Plaintiffs offer Albert Bossier's testimony that "[t]he Safety Department worked through the superintendants [*sic*]

---

[95] *Id.* at 3 (citing *Bencel*, 2009 WL 5667696, at *5).

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.* at 3–4.

[101] *Id.* at 4.

relative to making certain that safety was accomplished in the plant."[102] Moreover, Plaintiffs assert that Mr. Bordelon allowed employees to work with asbestos without proper protective measures in place.[103]

Regarding Hettie Eaves, Plaintiffs aver that she was a vice president at Avondale to whom the safety department reported.[104] Further, Plaintiffs assert that Avondale's vice presidents met with the safety department to discuss safety issues.[105] Concerning James Cole, Plaintiffs submit that he was in charge of production from 1963 to 1975, and that Danny Joyce testified that Mr. Cole "was a management type in production, namely Quality Control, who had—Mr. Cole had taken these individuals from QC and tried to get them actively involved in the safety program."[106]

Turning to Ollie Gatlin, Plaintiffs aver that he was an assistant plant engineer and later vice president of plant engineering.[107] Further, Plaintiffs assert that Mr. Gatlin testified that he and his subordinate Earl Spooner were responsible for providing adequate ventilation as well as purchasing and planning exhaust systems.[108] Moreover, Plaintiffs claim that Mr. Gatlin and Mr. Spooner were responsible for cleaning and maintaining ventilation and respiratory equipment.[109] Additionally, Plaintiffs allege that Mr. Gatlin knew of the dangers of asbestos before coming to Avondale, and even discussed his experience with asbestos safety programs with the

---

[102] *Id.*

[103] *Id.* at 3.

[104] *Id.* at 4.

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] *Id.* at 5.

"superintendents of the various areas in production management and safety personnel on many occasions starting in 1964."[110]

Looking to John Chantrey, Plaintiffs assert that much like Ms. Eaves, who he reported to, he played a role in safety.[111] Plaintiffs allege that Mr. Chantrey was the personnel director at the relevant times, and that the safety department reported to him.[112] Further, Plaintiffs claim that Mr. Chantrey worked with the medical surveillance program to advise Ms. Eaves when to take a safety-driven action as part of the program.[113]

Concerning Steven Kennedy, Plaintiffs contend that he was Avondale's safety director during the relevant period, and that he had testified that everyone within the chain of command at Avondale had a responsibility for safety.[114] Further, Plaintiffs aver that Mr. Kennedy did not know whether workers were warned about the dangers of asbestos or wore protective clothing.[115] Regarding Melton Garret, Plaintiffs assert that he was Avondale's executive vice president in charge of all divisions, and that the vice presidents met with the safety department to discuss safety issues.[116] Moreover, Plaintiffs offer testimony suggesting that vice presidents played a role in shaping Avondale's safety policies.[117] Turning to Edward Blanchard, Plaintiffs contend that throughout his time at Avondale he served as a superintendent, assistant vice president, and vice

---

[110] *Id.*

[111] *Id.* at 24.

[112] *Id.*

[113] *Id.* at 25.

[114] *Id.* at 29–30.

[115] *Id.* at 30.

[116] *Id.*

[117] *Id.* at 30–31.

president.[118] Further, Plaintiffs allege that he was responsible for informing contractors of the safety rules and regulations to be followed at Avondale's main yard.[119]

Moving to Albert Bossier, Jr., Plaintiffs assert that he was the vice president of production while Decedent was employed at Avondale.[120] Further, Plaintiffs aver that Mr. Bossier's responsibilities included bringing attention to unsafe conditions and remediating those conditions.[121] Relatedly, Plaintiffs claims that this included making sure that the safety department's rules were being implemented at Avondale.[122] Moreover, Plaintiffs offer testimonial evidence suggesting that Mr. Bossier attended meeting during which asbestos safety policy was discussed.[123]

Finally, Plaintiffs turn to Dr. Joseph Mabey who is the only non-Avondale employee amongst the Purported Executive Officers.[124] Plaintiffs assert that in 1971 Avondale contracted Ochsner Clinic to perform regular medical testing on Avondale employees.[125] Plaintiffs contend that Dr. Mabey was an Ochsner representative performing under the contract as one of Avondale's "plant physicians."[126] Further, Plaintiffs claim that Dr. Mabey was responsible for monitoring employees for symptoms consistent with asbestos exposure.[127]

---

[118] *Id.* at 33.

[119] *Id.*

[120] *Id.* at 34.

[121] *Id.*

[122] *Id.*

[123] *Id.* at 35.

[124] *Id.* at 36.

[125] *Id.*

[126] *Id.*

[127] *Id.*

Next Plaintiffs assert that Decedent was exposed to respirable asbestos fibers while working at Avondale, and that the Purported Executive Officers were aware of the dangers of asbestos by that point.[128] Further, Plaintiffs contend that the Purported Executive Directors breached their duty to provide a safe workplace for Decedent.[129] Plaintiffs allege that the Purported Executive Directors failed to place warnings on the asbestos products or take other precautions despite having known about the dangers of asbestos.[130] Specifically, Plaintiffs allege that the Purported Executive Officers: required workers of different crafts to work together despite a requirement that they be segregated; required workers to work around asbestos products without warning or special clothing; did not conduct any medical or air quality monitoring; instructed workers to refrain from working with asbestos products when safety inspectors were in the yard; failed to provide vacuums on the saws used to cut asbestos insulation; and failed to provide a proper procedure for asbestos disposal.[131]  Thus, Plaintiffs argue that the elements laid out by *Canter* and its progeny have been satisfied to permit finding the Purported Executive Officers personally liable for Decedent's injuries.[132]

## C.    *SPARTA's Arguments in Further Support of the Motion*

In reply, SPARTA reasserts that none of the Purported Executive Officers had direct supervisory oversight and responsibility for safety and health in relation to Decedent during his tenure at Avondale.[133] Further, SPARTA points out that Plaintiffs have fail to meet their burden of

---

[128] *Id.* at 12–17.

[129] *Id.* at 17.

[130] *Id.* at 17.

[131] *Id.* at 17–18.

[132] *See generally* Rec. Doc. 483.

[133] Rec. Doc. 484 at 2.

proving that each of the Purported Executive Officers satisfy the test for executive officer liability during the "brief time" that Decedent worked at Avondale.[134] Additionally, SPARTA claims that Plaintiffs improperly rely on Steven Kennedy's testimony to establish a personal duty to provide a safe working space for ten of the thirteen Purported Executive Officers.[135] SPARTA contends that this type of "evidence" references a general duty that does not describe the type of personal duty required by *Canter*.[136]

SPARTA also claims that five deposition excerpts cited by Plaintiffs were misrepresented.[137] Specifically, SPARTA points out that asbestos was never mentioned in Mr. Gatlin's testimony about safety meetings, that the timeframe discussed in the Mr. Chantery's testimony is unclear, and that Mr. Kennedy's testimony concerned a silicosis case rather than an asbestos exposure case.[138] Further, SPARTA claims that deposition testimony cited by Plaintiffs where an executive stated that he "had some policy oversight or generally thought about safety for Avondale workers" does not amount a personal duty to ensure worker safety.[139]

Turning to *Bencel*, SPARTA first submits that it is an "unreported" opinion of Louisiana's Fourth Circuit, thus holding no precedential value.[140] Second, SPARTA points out that the injured employee in *Bencel* worked at the company from 1952 to 1998, which allowed that court to

---

[134] *Id.*

[135] *Id.* at 3. Steven Kennedy testified that "everyone in the chain of command at Avondale had a responsibility for safety, including the foremen, superintendents, assistant safety directors, vice-president of engineering and executive vice president."

[136] *Id.*

[137] *Id.* at 3–4.

[138] *Id.*

[139] *Id.* at 4–5.

[140] *Id.* at 5.

consider the actions of the executive officers over 46 years as opposed to the Summer of 1971 which is the timeframe under consideration here.[141]

Finally, SPARTA asserts that Plaintiffs failed to fully address the nuances of the executive officer liability test laid out in *Cantor* and its progeny.[142] SPARTA particularly highlights *Pisciotta* where that court allegedly held that a general responsibility for safety, which is properly delegated does not satisfy the *Canter* test.[143] SPARTA goes on to discuss the facts surrounding six of the Purported Executive Officers.[144] Beginning with Dr. Mabey, SPARTA contends that there is no evidence that Dr. Mabey worked at Avondale during the six weeks that Decedent worked there.[145] Further, even if Dr. Mabey did work at Avondale during that time, SPARTA avers that he was also servicing three other industrial operations, was not involved in Avondale's medical surveillance program until 1979, and there is no evidence he ever met Decedent.[146]

Moving on to Mr. Garrett, SPARTA claims that his authority as executive vice president of divisions during the summer of 1971 did not encompass the main yard where Decedent worked.[147] Further, SPARTA argues that Mr. Garrett's job title alone is not enough to find him personally liable.[148] Turning to Mr. Chantrey, SPARTA asserts that Plaintiffs' evidence merely establishes that he was a personnel or medical liaison, not a decision maker over work practices that generated

---

[141] *Id.*

[142] *Id.* at 7.

[143] *Id.* at 8 (citing 385 So. 2d at 1185).

[144] *Id.* at 8–10.

[145] *Id.* at 9.

[146] *Id.*

[147] *Id.*

[148] *Id.*

asbestos exposure.[149] Moreover, SPARTA points out the Mr. Chantrey did not take over the Safety Department until 1973, well after Decedent stopped working at Avondale.[150] Next SPARTA alleges that Mr. Kennedy did not work in the Safety Department until December 13, 1971, several months after Decedent stopped working at Avondale.[151] Further, SPARTA contends that Plaintiffs fail to identify an act, omission, or asbestos-control decision tied to Decedent's exposure.[152] Looking to Mr. Blanchard, SPARTA avers that his supervisory status and general safety involvement is not enough to prove executive officer liability.[153] SPARTA asserts that Mr. Blanchard was never involved in supervisory functions over the safety department or the use of asbestos.[154] Finally, turning to Mr. Bossier, SPARTA submits that at most he had a general administrative duty for safety when Decedent was at Avondale.[155] Thus, SPARTA argues that Plaintiffs have failed to carry their burden of proof as to the liability of the Purported Executive Officers.[156]

### III. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[157] The court must view the evidence in the light most favorable to the nonmovant.[158] Initially, the movant bears the burden of presenting the

---

[149] *Id.*

[150] *Id.*

[151] *Id.*

[152] *Id.*

[153] *Id.*

[154] *Id.* at 9–10.

[155] *Id.* at 10.

[156] *Id.*

[157] Fed. R. Civ. P. 56(a).

[158] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.[159] The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute.[160] "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[161]

## IV. Analysis

SPARTA moves the Court to dismiss the claims against the Purported Executive Officers, because it asserts the Plaintiffs have failed to establish liability under the executive officer liability standard laid out in *Canter* and its progeny. Plaintiffs argue that each of the thirteen Purported Executive Officers played a role in asbestos safety during the relevant time period and was negligent in regard to those responsibilities. Thus, Plaintiffs argue that they have met the test established under *Canter* and its progeny.

In Louisiana, a statutory duty is imposed on every employer to furnish a reasonably safe employment.[162] An executive officer can be sued in tort for his own fault based on acts, omissions, or neglects occurring before the effective date of Act 147 of 1976, which amended the workers' compensation law to extend tort immunity to executive officers.[163] However, personal liability

---

[159] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[160] *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[161] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (internal citation omitted).

[162] La. Rev. Stat. § 23:13 states: Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations.

[163] *Hoerner v. ANCO Insulations, Inc.*, 00-2333, p. 21 (La. App. 4 Cir. 1/23/02), 812 So. 2d 45, 63 (quoting *Cole v. Celotex Corp.*, 588 So. 2d 376, 383 (La. App. 3 Cir. 1991)).

cannot be imposed upon an executive officer simply because of his general administrative responsibility for performance of some function of the employment.[164] He must have a personal duty towards the injured plaintiffs, breach of which specifically has caused plaintiffs' damages.[165]

The issue of executive officer liability was addressed in *Canter v. Koehring*.[166] In *Canter*, the Louisiana Supreme Court laid out the following four-part inquiry to apply in resolving this issue:

1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.

2. This duty is delegated by the principal or employer to the defendant.

3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiffs damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-

---

[164] *Cole*, 588 So. 2d at 383.

[165] *Id.*

[166] 283 So. 2d 716 (La. 1973).

performance or mal-performance and has nevertheless failed to cure the risk of harm.[167]

In *Cole v. Celotex Corp.*, the court summarized the law regarding executive officer liability as follows:

> Personal liability cannot be imposed upon an officer simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the plaintiffs, breach of which specifically has caused plaintiff's damages.[168]

The parties particularly dispute whether the Purported Executive Officers owed a personal duty to Decedent to provide a safe workplace, and if so whether they breached said duty. The *Bencel* court held that the "correct test to be applied is whether the executive officer had 'some direct duty' to provide the employee in question with 'a safe place to work, including some control over purchase and availability of equipment and supplies.'"[169]

Notably, SPARTA asserts that the Court should limit its consideration of what safety responsibilities the Purported Executive Directors had to the period when Decedent worked at Avondale. Plaintiffs do not dispute this assertion, and the court in *Cole* expressly limited a finding of executive officer liability to the years that the injured party worked at the defendant-employer.[170] Hence, the Court will only consider the Purported Executive Officers' responsibilities between June 1, 1971 and August 16, 1971, when Decedent was employed at Avondale.

---

[167] *Id.* at 721.

[168] *Cole,* 588 So. 2d at 383.

[169] 2009 WL 5667696 at *2 (citing *Hoerner*, 812 So. 2d at 64).

[170] 588 So.2d at 380 ("According to the record, Perry did not begin working for Cities Service until 1948. Thus, the jury's verdict finding negligence as to Perry from 1945 to 1947 was mistaken.").

As an initial matter Plaintiffs have produced voluminous evidence establishing that individuals working at Avondale were exposed to asbestos well after asbestos was known to be dangerous when inhaled. Further, this Court has already determined that there are unresolved issued of material fact as to the source of the asbestos that caused Decedent's mesothelioma.[171] Therefore, assuming that Plaintiff is able to establish at trial that the Purported Executive Officers owed Decedent a personal duty of safety, the Court finds that there is a genuine dispute of material fact as to whether they breached said duty.

The Court will now address whether each Purported Executive Director owed Decedent a personal duty to provide him with a safe workplace in turn, beginning with Henry Carter. Mr. Carter was Avondale's president during the relevant period. Further, Mr. Carter testified that he "was always interested in safety and the safety of the employees" and that he "had a responsibility to supervise it."[172] SPARTA alleges that Mr. Carter only had a general administrative responsibility for safety. However, there are clearly genuine disputes of material fact regarding Mr. Carter's safety responsibilities. Therefore, summary judgment is denied as to Mr. Carter's liability.

Turning to the next individual, C. Edwin Hartzman was Avondale's vice president of engineering and production during the relevant period. Plaintiffs offer the testimony of Ollie Gatlin, who confirmed that the vice presidents, Mr. Cole, himself, Mr. Hartzman, Ms. Eaves, and the safety department would all meet to discuss safety issue raised by the federal government.[173] Further, Plaintiffs offer the testimony of Mr. Hartzman, who testified that "[o]rganizationally, a safety department man is not high enough on the totem pole to go anywhere and direct anybody

---

[171] Rec. Doc. 302.

[172] *Becnel*, 2009 WL 5667696, at *4.

[173] Rec. Doc. 483-31 at 7.

on any occasion" and that if a safety department man "had a serious problem, taking a good bit of effort and money and so forth to clean up, he would have to have gone to the man in charge of operations."[174] SPARTA asserts that Mr. Hartzman was never charged with the "personal duty of establishing policies and procedures to provide the employees of Avondale with a safe work environment."[175] Further, SPARTA contends that Mr. Gatlin's testimony does not indicate a specific timeframe for when the alleged safety meetings took place. The Court agrees that Mr. Gatlin's testimony does not reference a specific period when the safety meetings took place, but SPARTA is free to point that out to the fact finder at trial. The fact that Plaintiffs' evidence does not conclusively establish that Mr. Hartzman has a personal duty to provide Decedent with a safe workplace, logically means that there is a dispute of genuine material fact. Hence, the Court denies summary judgment as to Mr. Hartzman's liability.

The Court continues with Burnette Bordelon, who was Avondale's insulation superintendent during the relevant period. Plaintiffs again rely on Mr. Gatlin's testimony where he said that he had discussed the "problems associated with asbestos with . . . Burnette Bordelon.[176] Further, Plaintiffs offer Albert Bossier's testimony, where he said "[t]he Safety Department worked through the superintendants [*sic*] relative to making certain that safety was accomplished in the plant."[177] SPARTA argues that because Decedent was not an insulator and therefore not in Mr. Bordelon's chain of command, he was owed no personal duty of safety by Mr. Bordelon. Once again SPARTA argument fails to neutralize Plaintiffs' evidence, but SPARTA will be able to argue

---

[174] Rec. Doc. 483-34 at 37–38.

[175] Rec. Doc. 471-1 at 18.

[176] Rec. Doc. 483-31 at 17.

[177] Rec. Doc. 483-45 at 5.

this point at trial. Accordingly, the Court denies summary judgment as to Mr. Bordelon's liability because there is a genuine dispute of material facts.

Next, the Court looks to James Cole, who was a vice president of production at Avondale during Decedent's employment. Plaintiffs offer the testimony of Avondale's corporate representative Danny Joyce who stated the Mr. Cole, "was a management type in production, namely Quality Control, who had—Mr. Cole had taken these individuals from QC and tried to get them actively involved in the safety program."[178] SPARTA offers no evidence to rebut Mr. Cole's potential involvement in the safety program, but instead asserts in a conclusory manner that he had nothing to do with the safety program. Thus, finding a genuine dispute of material facts the Court denies summary judgment as to Mr. Cole's liability.

The Court follows with Albert Bossier who was also a vice president of production during Decedent's term at Avondale. Mr. Bossier's own testimony confirms that making sure a job was being conducted in a safe manner was "certainly one of [his] responsibilities."[179] SPARTA cites other excerpts of Mr. Bossier's testimony where he stated that the director of the safety department had a personal responsibility of ensuring a safe work environment for the employees.[180] However, SPARTA's evidence does not preclude the possibility of both the director of the safety department and Mr. Bossier having safety responsibility, especially in light of the testimony cited by Plaintiffs. Hence, the Court denies summary judgment as to Mr. Bossier's liability.

The Court turns next to Ollie Gatlin and Earl Spooner, who both worked in the plant engineering department at Avondale during the relevant time frame. Mr. Gatlin and Mr. Spooner

---

[178] Rec. Doc. 483-35 at 3.

[179] Rec. Doc. 485-45 at 8.

[180] Rec. Doc. 474-6 at 80.

were responsible for determining where and when ventilation should be provided at Avondale.[181] This responsibility being logically linked to a duty to monitor air quality is sufficient to suggest that both Mr. Gatlin and Mr. Spooner had asbestos related safety duties. Therefore, summary judgment denied as to both Mr. Gatlin and Mr. Spooner.

Steven Kennedy was a director of quality control at Avondale during the pertinent period. SPARTA relies on Mr. Kennedy's testimony stating that he did not have any safety responsibilities until he became the director of the safety department on December 13, 1971 (several months after Decedent had left Avondale).[182] Plaintiffs cite Mr. Kennedy's testimony from a silicosis case deposition where Mr. Kennedy confirmed that everyone in the chain of command was responsible for safety.[183] SPARTA asserts that the testimony that Plaintiffs rely on concerned the safety of sandblasters as opposed to outside machinists like Decedent. It is unclear whether Mr. Kennedy's statement is limited to sandblasters, therefore the Court finds there is a genuine dispute of material fact on this issue. Accordingly, summary judgment is denied as to Mr. Kennedy's liability.

The Court continues with J. Melton Garrett, who was Avondale's executive vice president of division during Decedent's tenure.[184] Plaintiffs tie together testimonial evidence from several different individuals to assert that the safety department required approval from senior managers for expensive safety-based decisions and that anyone with "vice president" in their title had a role in safety at Avondale. The Court acknowledges SPARTA's contention that Plaintiffs' position is

---

[181] Rec. Doc. 483-31 at 5.

[182] Rec. Doc. 474-1 at 12–13.

[183] Rec. Doc. 483-41 at 4.

[184] Rec. Doc. 474-9 at 5.

attenuated. Nonetheless, viewing the evidence in the light most favorable to the non-movant the Court finds there is a genuine dispute of material fact sufficient to survive summary judgment.

Next, the Court looks to Edward Blanchard, who was the assistant vice president of production and general superintendent in charge of outfitting during the relevant period.[185] Plaintiffs reassert the same "vice president" argument they asserted against Mr. Kennedy and cite the testimony of a contractor who stated that Mr. Blanchard was responsible for informing him of the safety rules at Avondale's main yard.[186] Thus, the Court finds a genuine dispute of material facts and denies summary judgment as to Mr. Blanchard.

Hettie Eaves was Avondale's executive director of finance and administration during the relevant timeframe.[187] Plaintiffs allege that the safety department reported to Ms. Eaves while Decedent worked at Avondale, and that she attended many meetings where safety was discussed. While there is testimonial evidence that the safety department reported to Ms. Eaves at some point it is unclear if that period covered the pertinent timeframe.[188] Further, Ollie Gatlin testified in a silicosis case that he attended meeting with Ms. Eaves where ventilation complaints from the federal government were discussed.[189] There is a genuine dispute as to whether Mr. Gatlin's testimony included meetings where asbestos dangers were discussed. Thus, the Court denies summary judgment as to Ms. Eaves's liability.

Finally, the Court examines the role that Dr. Jospeh Mabey, an Ochsner Clinic contractor working with Avondale, may have played in the safety program. In *Canter*, the defendants that

---

[185] Rec. Doc. 474-16 at 2.

[186] Rec. Doc. 483-49 at 9–10.

[187] Rec. Doc. 474-18 at 2.

[188] Rec. Doc. 483-31 at 6.

[189] *Id.* at 7.

were found liable were contractors, rather than the plaintiff's co-employees.[190] In fact, the Louisiana Supreme Court specifically opined that "the duty may be imposed upon the defendant solely because of the employment or agency relationship, but its breach may nevertheless make him individually liable for harm thereby sustained by a third person (including a co-employee)."[191] Therefore, Dr. Mabey's status as a contractor of Avondale's does not bar his liability under the *Canter* test.

Plaintiffs assert that Dr. Mabey had a personal duty to provide a safe work environment to Decedent because: he regularly visited patients at Avondale; he was a plant physician at Avondale; and the plant physician ran Avondale's medical surveillance program, which included monitoring workers for asbestosis symptoms. However, all of the evidence cited by the parties indicates that Dr. Mabey took no part in the medical surveillance program until 1979.[192] While Dr. Mabey was a contractor for Avondale as early as 1971, the only evidence cited suggests that his responsibilities were limited to treating injuries, conducting preemployment evaluations, and return to work evaluations.[193] Plaintiffs do not offer any rebuttal evidence nor do they even discuss Dr. Mabey's responsibilities prior to becoming a plant physician. Therefore, the Court finds that there is no genuine dispute of material fact as to Dr. Mabey not having a personal duty to provide a safe workplace for Decedent in the summer of 1971. Thus, summary judgment is granted in favor of SPARTA as to Dr. Mabey's lack of liability.

## V. Conclusion

---

[190] *Canter*, 283 So. 2d at 723.

[191] *Id.* at 722.

[192] Rec. Doc. 474-4 at 6.

[193] *Id.*

Aside from Dr. Mabey, the Court finds that there is a genuine issue of material fact as to whether each of the Purported Executive Officers had a personal duty, as contemplated by *Canter* and its progeny, to provide a safe workplace to Decedent. These facts indicate that each of the Purported Executive Officers may have had some role in the safety program at Avondale during the pertinent period. Therefore, Plaintiffs have presented sufficient evidence to defeat summary judgment as to the other Purported Executive Officers. Accordingly,

**IT IS HEREBY ORDERED** that SPARTA's Motion for Summary Judgment[194] is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** to the extent that it seeks dismissal of any claims against Dr. Joseph Mabey. The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that all claims in the above-captioned matter against Dr. Joseph Mabey are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA,** this  13th  day of February, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[194] Rec. Doc. 474.