UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERICA DANDRY CONSTANZA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-871** |
| **SPARTA INSURANCE COMPANY, ET AL.** | **SECTION: "G"(5)** |

### ORDER AND REASONS

Before the Court is Defendant Liberty Mutual Insurance Company as alleged insurer of Hopeman Brothers, Inc.'s ("Liberty Mutual") "Motion for Judgment on the Pleadings."[1] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner (collectively, "Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Huntington Ingalls Incorporated ("Avondale"),[2] was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties, including Hopeman Brothers, Inc. ("Hopeman") (collectively, "Defendants").[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4] Liberty Mutual moves the Court to limit its potential liability to $100,000, due to an alleged limitation in Hopeman's insurance policy with Liberty Mutual.[5] Alternatively, Liberty Mutual

---

[1] Rec. Doc. 311.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

[5] Rec. Doc. 311-1 at 1–2.

moves the Court to allow a "separate hearing on the limits question prior to trial."[6] Plaintiffs oppose the motion.[7] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[8] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[9] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[10] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[11] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[12] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the

---

[6] Rec. Doc. 311.

[7] Rec. Doc. 329.

[8] Rec. Doc. 1-3 at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

[12] *Id.* at 5.

safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[13]

Plaintiffs also name numerous additional defendants, including Hopeman, that were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[14] Plaintiffs allege that Defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[15] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[16] It is also alleged that Hopeman failed to warn of the hazards of asbestos, including the risk of mesothelioma.[17] Additionally, Plaintiffs allege that Decedent died of mesothelioma as a result of exposures to asbestos, in part originating from asbestos attributable to Hopeman products.[18] Hopeman held an insurance policy from 1971 to 1972 with Liberty Mutual, with a bodily injury limit of $100,000 per person.[19]

---

[13] *Id.*

[14] *Id.* at 18.

[15] *Id.* at 19.

[16] *Id.*

[17] *Id.* at 5–6.

[18] *Id.*

[19] Rec. Doc. 311-1 at 1–2.

On November 10, 2025, Liberty Mutual filed the instant Motion for Judgment on the Pleadings.[20] On November 18, 2025, Plaintiffs opposed the Motion.[21] On November 24, 2025, Liberty Mutual filed a reply in further support of the Motion.[22]

## II. Parties' Arguments

### A.     *Liberty Mutual's Arguments in Support of the Motion*

Liberty Mutual alleges that a dispute "recently surfaced" between it and Plaintiffs regarding the policy limits of the policy covering Hopeman from 1971–72.[23] Liberty Mutual claims that the policy has limitation language that limits the potential amount owed for Decedent's death to $100,000.[24] Specifically, Liberty Mutual asserts that the policy contains a bodily injury limit of $100,000 for "each person" covered under the policy.[25] Further, Liberty Mutual contends that when applied to the case at bar, if it owes any amount at all it is limited to $100,000 because Decedent is one person who worked at Avondale during the summer of 1971.[26]

Liberty Mutual submits that Plaintiffs contend that the "each person" language in the policy applies to Decedent as well as Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner, which would allow a maximum payout of $300,000 under the policy.[27] Liberty Mutual argues that this interpretation fails as matter of law "because the Plaintiffs' loss of consortium claims are

---

[20] Rec. Doc. 311.

[21] Rec. Doc. 329.

[22] Rec. Doc. 415.

[23] Rec. Doc. 311-1 at 1–2.

[24] *Id.* at 2.

[25] *Id.*

[26] *Id.* at 2–3.

[27] *Id.* $100,000 for Decedent; $100,000 for Erica Dandry Constanza; and $100,000 for Monica Dandry Hallner.

4

derivative of Mr. Dandry's bodily injury and therefore subject to the same 'each person' limit, as confirmed by the Louisiana Supreme Court."[28] Additionally, Liberty Mutual asserts that Plaintiffs' claims did not arise until 2023 when Decedent was diagnosed with mesothelioma.[29] Therefore, Liberty Mutual contends that even if Plaintiffs have independent bodily injury claims, they would not be covered in light of the 1971–72 coverage period of the policy.[30]

Alternatively, Liberty Mutual requests that the Court bifurcate the trial under Rule 42(b) to decide the issue of limiting Liberty Mutual's liability before trying the case its merits.[31] Liberty Mutual asserts that deciding this legal issue in advance will streamline the trial and avoid wasting the jury's time.[32]

### B.     *Plaintiffs' Arguments in Opposition to the Motion*

As an initial matter, Plaintiffs assert that Liberty Mutual's motion should be denied because it is untimely.[33] Plaintiffs point out that dispositive motions in this case were due on September 16, 2025, meaning that Liberty Mutual's November 10, 2025, filing was nearly two months late.[34] Plaintiffs aver that Liberty Mutual failed to seek leave to file the instant motion.[35] Further, Plaintiffs contend that Liberty Mutual has not shown good cause to modify this Court's Scheduling

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at 6.

[32] *Id.*

[33] Rec. Doc. 329.

[34] *Id.* at 1–2.

[35] *Id.* at 3.

Order, or that it could not have reasonably met the deadlines in this Court's Scheduling Order.[36] Further, Plaintiffs maintain that their position has always been that they have been seeking "recovery on behalf of multiple plaintiffs for a variety of damages."[37] Therefore, Plaintiffs assert that Liberty Mutual had notice of the dispute concerning the policy limits since the filing of the complaint in this case, and there is no justification for Liberty Mutual's failure to abide by the Scheduling Order.[38]

Regarding the policy limits at issue, Plaintiffs contend that they are "entitled to the multi-person occurrence limit of $300,000."[39] Plaintiff cites the policy declaration's language to argue that Liberty Mutual is obligated to pay "all sums" that it is "legally obligated to pay as damages" because of bodily injury "caused by an occurrence."[40] Further, Plaintiffs acknowledge that the policy limits include a limit of $100,000 for "each person", but that there are three injured persons here (Decedent, Erica Dandry Constanza, and Monica Dandry Hallner).[41] Moreover, Plaintiffs argue that their injuries are included within the scope of the policy because the declaration defines bodily injury as "bodily injury, sickness, or disease sustained by any person[.]"[42] Thus, Plaintiffs argue that the "each occurrence" limit of $300,000 stated in the declaration should apply, and that

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 4 (citing 331-2 at 1).

[41] *Id.* at 4–5.

[42] *Id.* at 5 (citing 331-2 at 3).

this amount is consistent with the "each person" limit because each of the three injured persons is entitled to a $100,000 limit.[43]

Plaintiffs also argue that their wrongful death claims are not derivative of Decedent's bodily injury claim.[44] Plaintiffs assert that the caselaw that Liberty Mutual relies upon involves pre-death loss of consortium claims, whereas here Plaintiffs' loss of consortium claims are post-death.[45] Plaintiffs contend that this distinction means that their loss of consortium claims are essentially wrongful death claims, which are independent of Decedent's bodily injuries.[46] Plaintiffs aver that the elements of damage that they allege as part of their wrongful death claims include loss of love, affection, and companionship as well as mental pain, suffering, and distress.[47] Further, Plaintiffs assert that the Louisiana Supreme Court held in *Hill v. Shelter Mutual Insurance Company* that these types of wrongful death damages can be termed bodily injuries under a policy of insurance.[48] In light of that opinion, Plaintiffs argue that the language of Hopeman's insurance policy with Liberty Mutual clearly indicates that the bodily injuries of Decedent, Erica Dandry Constanza, and Monica Dandry Hallner are included within the scope of coverage.[49]

However, at worst Plaintiffs contend that the Court could find that the policy language is

---

[43] *Id.*

[44] *Id.* at 5–6.

[45] *Id.* at 6 (citing *Ferrell v. Fireman's Fund Ins.*, 96-3023 (La. 7/1/97), 696 So. 2d 569, 577).

[46] *Id.* at 7 (citing *Walls v. American Optical Corp.*, 98-455 (La. 9/8/99), 740 So. 2d 1262, 1273 ("Given this relational or causative origin, one could be [misled] into viewing the wrongful death action as derivative. However, in *Taylor v. Giddens*, 618 So.2d at 840, this Court left no doubt that the wrongful death action is an independent and separate cause of action.")).

[47] *Id.* 8 (citing Rec. Doc. 1-2 at 31–32).

[48] *Id.* at 8–9 (citing 05-1783 (La. 7/10/06); 935 So. 2d 691, 695).

[49] *Id.* at 9.

7

ambiguous as to whether it limits Plaintiffs' recovery to the single person limit or the multiple person occurrence limit.[50] In that event, Plaintiffs aver that the law requires the Court to construe the ambiguity in the policy language against the insurer, and find that Plaintiffs' mental anguish is covered as bodily injuries under the policy[51]

Next, Plaintiffs respond to Liberty Mutual's argument that Plaintiffs' bodily injuries arose in 2023 and are therefore not covered under the 1971–72 policy period.[52] Plaintiffs assert that the Louisiana Supreme Court and the Fifth Circuit have already recognized that that long latency disease cases, such as those involving asbestos-related diseases, are fundamentally different from other torts, and have applied the "exposure theory" to long latency disease cases, which provides that "coverage is triggered by mere exposure to the harmful conditions during the policy period."[53] Hence, Plaintiffs argue that coverage for their bodily injuries under Liberty Mutual's policy was "triggered by Decedent's exposure to asbestos by Hopeman during Liberty Mutual's policy period even though the manifestation of the disease did not occur until years later and the death did not occur until years later."[54]

C.  **_Liberty Mutual's Arguments in Further Support of the Motion_**

In its reply, Liberty Mutual reiterates that it does not matter whether Plaintiffs' injuries are derivative or independent, because their alleged injuries did not occur until 2023—51 years after

---

[50] *Id.*

[51] *Id.* (citing *Breland v. Schilling*, 550 So. 2d 609, 610–11 (La. 1989)).

[52] *Id.* at 14.

[53] *Id.* at 14–15 (citing *Porter v. American Optical Corp.*, 641 F.2d 1128 (5th Cir. 1981)).

[54] *Id.* at 18.

the policy period.[55] Further, Liberty Mutual asserts that Plaintiffs have not alleged the sort of mental anguish that rises to the level of "bodily injury", meaning that their claims seek damages for derivative injuries subject to a single "each person" limit.[56] Additionally, Liberty Mutual submits that one of the chief cases relied upon by Plaintiffs, *Walls v. American Optical Corp.*, held in the context of a wrongful death action the decedent's beneficiaries' injuries occurred "upon the death of [the decedent] and not before."[57] Hence, Liberty Mutual avers that even if the Court finds that Plaintiffs suffered independent bodily injuries, those injuries occurred after the effective period for the policy.[58] Accordingly, Liberty Mutual argues that any independent injury suffered by Plaintiffs could not have triggered coverage under the policy.[59]

Specifically, replying to Plaintiffs' claim that asbestos-related claims alter the analysis of whether an underlying insurance policy is triggered, Liberty Mutual asserts that it does not.[60] Liberty Mutual explains that the Louisiana Supreme Court has held that "exposure to asbestos *during the policy period* triggers the subject policy, because exposure causes injury."[61] Liberty Mutual contends that Plaintiffs were not exposed to asbestos or any other harmful condition during

---

[55] Rec. Doc. 415 at 2.

[56] *Id.* at 3 (*Compare Crabtree v. State Farm Ins.*, 93-C-0509, (La. 5/16/97), 632 So. 2d 736, 740, 745 (analyzing a *Lejeune* claim), *Hill*, at 693, 695 n.3 (holding emotional injuries could be bodily injury "if the injury rises to the level of severe and debilitating mental pain and anguish"), *with Ferrell*, 696 So. 2d at 576 ("Unlike Crabtree, however, where we determined that mental anguish constituted a separate 'bodily injury', we do not believe that loss of consortium is covered as a separate bodily injury under the per accident bodily injury limits of the policy.")).

[57] *Id.* at 4 (citing *Walls*, 740 So. at 1270).

[58] *Id.* at 5.

[59] *Id.* (citing *Society of the Roman Catholic Church v. Interstate Fire & Casualty Co.*, 26 F.3d 1359, 1362 (5th Cir. 1994) ("The policy does not, however, cover bodily injury occurring outside the policy period.").

[60] *Id.*

[61] *Id.* (emphasis in original) (citing *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076 (La. 1992)).

9

the policy period of 1971–72, thus any bodily injuries they may have incurred are not covered under the policy.[62] Thus, Liberty Mutual maintains that the "each person" policy limit for "bodily injury" of $100,000 should be the limit of their liability in the matter, because Decedent is the only person who suffered a bodily injury during the policy period.[63]

### III. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[64] A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[65] The motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."[66] "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[67] In ruling on a 12(c) motion, "[p]leadings should be construed liberally," and judgment is appropriate "only if there are no disputed issues of fact and only questions of law remain."[68] The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," but need not "accept as true conclusory allegations

---

[62] *Id.* at 6.

[63] *See generally id.*

[64] Fed. R. Civ. P 12(c).

[65] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

[66] *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

[67] *Great Plains Tr. Co.*, 313 F.3d at 312 (alteration in original) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).

[68] *Id.* (quoting *Hughes*, 278 F.3d at 420).

or unwarranted deductions of fact."[69] The Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[70]

## IV. Analysis

### A. *Timeliness of the Motion*

First, the Court addresses the timeliness of the instant motion because it was filed after the September 16, 2025 deadline.[71] Liberty Mutual asserts that there is good cause for the Court to consider the instant motion because Plaintiffs first articulated their position regarding Liberty Mutual's potential $300,000 liability in November 2025.[72] Liberty Mutual avers that it filed the instant motion seeking to resolve the policy limit dispute, on November 10, 2025, just a few days after it was raised by Plaintiffs.[73] Further, Liberty Mutual contends that because the question is purely legal, the Court will streamline trial by deciding this issue in advance.[74] Plaintiffs argue that they have held the multiple "each person" policy limit position since the inception of this case, and therefore Liberty Mutual has not established good cause for the Court to consider this untimely motion.[75]

---

[69] *Id*. at 312–13 (first quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); then quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (2000)).

[70] *Id.* at 312 (quoting *Jones*, 188 F.3d at 324).

[71] Rec. Docs. 58, 311.

[72] Rec. Doc. 415 at 2.

[73] *Id.*

[74] *Id.* at 2–3.

[75] Rec. Doc. 329 at 3.

Federal Rule of Civil Procedure 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent."[76] As the Fifth Circuit has explained, the four factors bearing on good cause in the context of untimely motions to amend pleadings are: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.[77]

Here, Liberty Mutual has explained that it only became aware of the policy limit dispute in November 2025, which was after the dispositive motion deadline in this case. Although Plaintiffs are correct that they have sought "recovery on behalf of multiple plaintiffs for a variety of damages," a review of the complaint does not reveal a specific allegation regarding the policy limits of the policy held by Hopeman during the relevant period.[78] Further, the resolution of this issue is important because it could either expand or limit Liberty Mutual's liability by a factor of three. Additionally, Plaintiffs have had an opportunity to fully brief this dispute in their opposition and would have to establish their policy limit position at trial if the Court does not deal with it now. Thus, Plaintiffs do not suffer from any prejudice by the Court's consideration of the instant motion. Accordingly, the Court will rule on the merits of the motion.

**B.    *Hopeman's Liberty Mutual Insurance Policy Period***

Turning to the substance of the motion, the Court begins by addressing whether Plaintiffs' bodily injuries would be covered by the Liberty Mutual policy, assuming that Plaintiffs suffered from independent bodily injuries. There is no dispute that that effective period of Hopeman's

---

[76] Fed. R. Civ. P. 16(b)(4).

[77] *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

[78] *See generally* Rec. Doc. 1-3.

insurance policy was from January 1, 1971, to January 1, 1972.[79] Further, it is undisputed that the insurance policy at issue has a $100,000 policy limit for "each person" that suffers from a "bodily injury" that is covered under the policy.[80] Lastly, it is undisputed that the total "bodily injury" policy limit for "each occurrence" is $300,000.[81] The dispute concerns whether or not Plaintiffs' alleged emotional damages (which according to them rise to the level of independent bodily injuries) are covered under Hopeman's policy.

Liberty Mutual contends that even if Plaintiffs' emotional damages amounted to independent "bodily injuries" which could be covered under the policy, these claims would not trigger coverage because they arose after the policy period ended.[82] Therefore, Liberty Mutual argues that Plaintiffs' alleged "bodily injuries" are not covered under Hopeman's policy. Plaintiffs assert that under the "exposure theory", which is applied to tort claims stemming from asbestos-related diseases, coverage for Plaintiffs' independent bodily injuries were triggered when Decedent was exposed to asbestos in 1971.[83] Thus, Plaintiffs argue that their "bodily injuries" resulting from Decedent's death are covered under Hopeman's policy.

Plaintiffs chiefly rely on *Porter v. American Optical Corp.*,[84] along with *Austin v. Abney Mills*[85] to support their position that Decedent's exposure to asbestos during the policy period

---

[79] Rec. Doc. 311-2 at 7.

[80] *Id.*

[81] *Id.*

[82] Rec. Doc. 311-1 at 2–3.

[83] Rec. Doc. 329 at 14–15.

[84] 641 F.2d 1128 (5th Cir. 1981).

[85] 2001-1598, (La. 9/4/02), 824 So. 2d 1137.

triggered coverage for Plaintiffs' alleged "bodily injuries." In *Porter*, the plaintiff was a man named Charles J. Porter ("Charles"), who worked at the National Gypsum Company ("Gypsum"), a manufacturer of building materials in New Orleans, Louisiana.[86] While working at Gypsum from 1960 to 1973 Charles was exposed to asbestos fibers.[87] Charles began to "manifest" symptoms of asbestosis in 1970, and in 1975 he was diagnosed with asbestosis, resulting from exposure to asbestos.[88] Charles filed suit for damages resulting from asbestosis contracted while he was an employee at Gypsum.[89] However, Charles died during litigation and members of his family were substituted as plaintiffs.[90] The trial court returned a jury verdict for Charles, holding the insurance company with an active policy during the period when Charles's asbestosis symptoms "manifested" solely liable.[91]

On appeal the Fifth Circuit held the controlling theory of insurance coverage liability in asbestosis cases is "injurious exposure."[92] In other words, liability is assigned to insurance carriers "who were on the coverage while the injured party was exposed to the asbestos hazards which resulted in illness and death."[93] However, in *Porter* the trial court solely considered the injuries that Charles had suffered, and gave no consideration to any injuries his family may have

---

[86] 641 F.2d at 1131.

[87] *Id.* at 1133–34.

[88] *Id.* at 1134.

[89] *Id.* at 1131.

[90] *Id.*

[91] *Id.* at 1134, 1142.

[92] *Id.* at 1145.

[93] *Id.*

14

independently incurred.[94] Hence, this Court finds that the Fifth Circuit's holding in *Porter* does not extend the "injurious exposure" theory of liability to Decedent's family's alleged injuries, in the case at bar.

In *Austin*, the plaintiff Alton Hogue ("Alton") suffered from mesothelioma, which was allegedly caused by asbestos exposure during his employment with International Paper Company and Arizona Chemical Company from 1955 to 1998.[95] Like in *Porter*, the trial court applied a manifestation theory of liability.[96] However, upon appellate review the Louisiana Supreme Court held that under Louisiana law in cases involving a long-latency disease, such as mesothelioma caused by asbestos, a tort action accrues when the injured party is exposed to asbestos.[97] This exposure theory does not apply to mesothelioma cases caused by exposure after 1975, when mesothelioma was added as an occupational disease under the Louisiana workers compensation law.[98] Although the Louisiana Supreme Court did not explicitly state whether it considered independent injuries alleged by Alton's family members, there is no mention of these types of injuries in the opinion.[99] Therefore, this Court finds that the Louisiana Supreme Court has not extended exposure theory to Decedent's family's alleged injuries, in the case at bar. Thus, the exposure theory for accrual of liability is limited to Decedent's individual bodily injuries in the

---

[94] *Id.* at 1137 n. 11.

[95] 2001-1598, (La. 9/4/02), 824 So. 2d at 1139.

[96] *Id.* at 1142.

[97] *Id.* at 1155.

[98] *Id.* at 1142 (citing La. R.S. § 23:2031.1).

[99] *See generally Austin*, 2001-1598, (La. 9/4/02), 824 So. 2d 1137.

15

instant matter. Accordingly, Plaintiffs' alleged bodily injuries, which resulted from Decedent's death in 2023, did not accrue during Hopeman's insurance policy period of 1971–72.

### V. Conclusion

Because Liberty Mutual has shown good cause the Court considers its untimely motion for judgment on the pleadings. There is no dispute that the policy period for Hopeman's Liberty Mutual insurance policy was from 1971 to 1972. The only theory of liability put forth by Plaintiffs which would result in their alleged independent bodily injuries triggering coverage under Hopeman's policy is exposure theory. The Court finds that exposure theory is only applicable to the accrual of Decedant's individual bodily injuries. Therefore, Plaintiffs' alleged bodily injuries did not trigger coverage under the policy. In light of Plaintiffs' injuries not being covered by the policy, the Court does not reach the parties' arguments concerning their interpretations of the policy language. Thus, Liberty Mutual's maximum liability is $100,000 under the "each person" policy limit, because Decedent is the only person whose cause of action accrued during the policy period. Accordingly,

**IT IS HEREBY ORDERED** that Liberty Mutual's Motion for Judgment on the Pleadings[100] is **GRANTED**. Defendant Liberty Mutual Insurance Company's maximum liability in this matter, as the insurer of Defendant Hopeman Brothers, Inc., is $100,000.

**NEW ORLEANS, LOUISIANA,** this  13th   day of February, 2026.

*[signature: Nannette Jolivette Brown]*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[100] Rec. Doc. 311.