UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERICA DANDRY CONSTANZA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-871** |
| **SPARTA INSURANCE COMPANY, ET AL.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Defendant Huntington Ingalls Incorporated's ("Avondale")[1] *Daubert* Motion to Exclude Certain Testimony of Dr. Stephen Terry Kraus.[2] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner (collectively, "Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Avondale, was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4] Avondale moves the Court to issue an Order prohibiting Dr. Kraus from offering expert opinions at trial on industrial hygiene, which Avondale argues is outside his qualified area and scope of expertise as a medical doctor and radiation

---

[1] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[2] Rec. Doc. 189.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

1

oncologist.[5] Defendant Liberty Mutual Insurance Company joins the motion.[6] Plaintiffs oppose the motion.[7] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.[8] During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.[9] Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.[10] Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.[11] Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."[12] Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the

---

[5] Rec. Doc. 189.

[6] Rec. Doc. 214.

[7] Rec. Doc. 254.

[8] Rec. Doc. 1-3 at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

[12] *Id.* at 5.

safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.[13]

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[14] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[15] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[16]

Trial in this matter is set to begin on March 9, 2026. On September 15, 2025, Avondale filed the instant *Dabuert* Motion to Exclude Certain Testimony of Dr. Stephen Terry Kraus.[17] On September 19, 2025, Defendant Liberty Mutual Insurance Company joined the motion.[18] On September 23, 2025, Plaintiffs opposed the motion.[19] On September 26, 2025, Avondale filed a reply brief in further support of the motion.[20]

## II. Parties' Arguments

### A.   *Avondale's Arguments in Support of the Motion*

Avondale moves the Court to issue an Order prohibiting Dr. Kraus from offering expert

---

[13] *Id.*

[14] *Id.* at 18.

[15] *Id.* at 19.

[16] *Id.*

[17] Rec. Doc. 189.

[18] Rec. Docs. 209, 214.

[19] Rec. Doc. 254.

[20] Rec. Doc. 278.

opinions at trial on industrial hygiene, which Avondale argues is outside his qualified area and scope of expertise as a medical doctor and radiation oncologist.[21] Avondale does not dispute that Dr. Kraus is an expert in the area of radiation oncology or that he is qualified to offer expert testimony on medical issues such as an explanation of the general cause of mesothelioma, the symptoms of mesothelioma, and the treatment of mesothelioma.[22] However, Avondale contends that Dr. Kraus is not qualified to testify regarding industrial hygiene topics, including: (1) sources of Decedent's asbestos exposure; (2) the standard of care for shipyard worker protection; (3) government standards applicable to the Avondale shipyard; (4) industry standards applicable to the Avondale shipyard; (5) permissible exposure limits for asbestos; and (6) state of the art knowledge of Avondale regarding the health hazards of asbestos.[23]

### B.     *Plaintiffs' Arguments in Opposition of the Motion*

In opposition, Plaintiffs contend that Dr. Kraus is eminently qualified to testify as an expert in this matter as he has dedicated his career to treating cancer and mesothelioma.[24] Plaintiffs note that Dr. Kraus reviewed the scientific and medical literature, the industrial hygiene report of Gerard Baril, and testimony regarding the exposures to Decedent.[25] From this information, Dr. Kraus opined that Decedent's exposures exceeded both current and historical exposure limits.[26] Plaintiffs dispute Avondale's argument that Dr. Kraus is offering industrial hygiene opinions.[27] Plaintiffs

---

[21] Rec. Doc. 189-1 at 1.

[22] *Id.* at 1–2.

[23] *Id.* at 2.

[24] Rec. Doc. 254 at 2–3.

[25] *Id.* at 5.

[26] *Id.*

[27] *Id.* at 7.

argue that Dr. Kraus can offer opinions on exposures and causation as well as whether the exposures exceeded permissible exposure limits.[28] Plaintiffs argue that the literature established that the exposures sustained by Decedent were well above the historical and current permissible exposure limits.[29] Plaintiffs assert that this methodology has been approved by the Fifth Circuit.[30] Plaintiffs also contend that it is well within the purview of a medical doctor to give opinions on state of the art knowledge.[31]

C.     *Avondale's Arguments in Further Support of the Motion*

In reply, Avondale clarifies that it does not dispute that Dr. Kraus may give specific medical causation opinions.[32] However, Avondale asserts that Dr. Kraus may not testify to industrial hygiene opinions, because such opinions are beyond the scope of his expertise.[33]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[34] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education," may provide expert testimony when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[35] For the testimony to be admissible, Rule 702 establishes

---

[28] *Id*. at 7.

[29] *Id*. at 8.

[30] *Id*. (citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999)).

[31] *Id*. at 12.

[32] Rec. Doc. 278.

[33] *Id*.

[34] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[35] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

5

the following requirements:

> (1) the testimony must be based upon sufficient facts or data,
>
> (2) the testimony must be the product of reliable principles and methods, and
>
> (3) the expert must reliably apply the principles and methods to the facts of the case.[36]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[37] The court's gatekeeping function mostly involves a two-part inquiry.

First, the court must determine whether the expert testimony is reliable, which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[38] The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[39] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[40] In analyzing reliability, *Daubert* instructs courts to consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[41]

---

[36] Fed. R. Evid. 702.

[37] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[38] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[39] *Seatrax*, 200 F.3d at 372.

[40] *See Daubert*, 509 U.S. at 590.

[41] *Id.* at 592–94. In *Kumho Tire*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 141. The overarching goal "is to make certain that an expert, whether basing testimony upon

Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[42] The second inquiry primarily analyzes whether the expert testimony is relevant.[43]

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[44] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[45] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[46] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left to the jury's consideration."[47]

Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."[48] "The rule was enacted to change the old view that [] giving an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the

---

professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[42] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[43] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[44] *See Daubert*, 509 U.S. at 596.

[45] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[46] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[47] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[48] Fed. R. Evid. 704(a).

jury."[49] The rule, however, "does not open the door to all opinions."[50] Witnesses may not "tell the jury what result to reach," nor may they "give legal conclusions."[51] The Fifth Circuit has explained that "the task of separating impermissible question which call for overbroad or legal responses from permissible questions is not a facile one," but one that requires courts to exclude questions or answers from experts that "would supply the jury with no information other than the expert's view of how its verdict should read."[52]

### IV. Analysis

Avondale moves the Court to limit the testimony of Dr. Kraus. Avondale does not dispute that Dr. Kraus is an expert in the area of radiation oncology or that he is qualified to offer expert testimony on medical issues such as an explanation of the general cause of mesothelioma, the symptoms of mesothelioma, and the treatment of mesothelioma.[53] However, Avondale contends that Dr. Kraus is not qualified to testify regarding industrial hygiene topics, including: (1) sources of Decedent's asbestos exposure; (2) the standard of care for shipyard worker protection; (3) government standards applicable to the Avondale shipyard; (4) industry standards applicable to the Avondale shipyard; (5) permissible exposure limits for asbestos; and (6) state of the art knowledge of Avondale regarding the health hazards of asbestos.[54]

---

[49] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[50] *Id.*

[51] *Id.* (citing *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir. 1981).

[52] *Id.*

[53] Rec. Doc. 189-1.

[54] *Id.* at 2.

Dr. Kraus is a medical doctor who received his medical degree from the University of Cincinnati College of Medicine in 1970.[55] He is board certified in radiation oncology, and he has treated patients with mesothelioma and other forms of cancer in Louisiana since 1982.[56]

As the Fifth Circuit noted in *United States v. Wen Chyu Liu*, "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."[57] In that case, the Fifth Circuit held that the district court abused its discretion when it excluded the testimony of an expert with extensive experience working in chemical plants and 50 years of engineering experience in a variety of high-level positions, finding that he had worked with polymers that had "many similarities" and "a lot of commonality" with the manufacturing process at issue in the case, even though he lacked experience with the specific substance at issue.[58]

Dr. Kraus reviewed deposition testimony regarding Decedent's exposures, Decedent's medical records, and the report of industrial hygienist Gerard Baril.[59] Based on Baril's report and Dr. Kraus's review of the scientific and medical literature, Dr. Kraus opined that Decedent would have sustained exposures to asbestos during his work at Avondale Shipyards that exceeded the current and historical permissible exposure limits.[60] Dr. Kraus also opines that Decedent's mesothelioma and death were caused by this occupational exposure to asbestos at Avondale.[61] To

---

[55] Rec. Doc. 254-3 at 77.

[56] *Id.* at 2.

[57] *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

[58] *Id.* at 169.

[59] Rec. Doc. 254-3 at 3–8.

[60] *Id.* at 8.

[61] *Id.* at 14.

9

the extent Avondale argues that Dr. Kraus is not qualified to offer this opinion, the Court finds this argument unpersuasive. Dr. Kraus's proposed testimony is based on scientific knowledge of the harmful level of exposure to asbestos and Baril's opinion that Decedent was exposed to such harmful levels.[62] An expert may rely on the reliable opinion of another expert in forming his own opinion.[63]

Avondale also takes issue with references to the 1942 Walsh Healey Public Contracts Act, the 1943 Sanitary Code, and the 1951 Walsh Healey Public Contracts Act contained in Dr. Kraus's report. Avondale suggests that an expert in industrial hygiene is the proper person to offer an opinion that there were government standards in place and whether Avondale's Safety or Industrial Hygiene Department was following those standards. The expert report briefly mentions the laws cited and discusses requirements that would prevent harmful materials from being carried home from work. Dr. Kraus's report does not opine on whether Avondale's Safety or Industrial Hygiene Department was following those standards.

Avondale also takes issue with the following statements found in Dr. Kraus's rebuttal report:

> The standard of care for worker protection includes Hazardous Materials (Hazmat) protection as well as respirator with replaceable high efficiency filers and wearing disposable clothing, gloves, booties or boots that can be cleaned or discarded. In the State of Louisiana, a license is required passing a test, a TSA background check and completing a medical screening for Hazmat endorsement.[64]
> …
>
> The Walsh Healey Public Contract Act of 1951 outlines the risks of asbestos exposure and prevention. Industrial compliance was required. The United States Maritime Commission: Minimum Requirements for Safety and Industrial Health

---

[62] *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996).

[63] Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments ("The term 'data' is intended to encompass the reliable opinions of other experts.").

[64] Rec. Doc. 254-3 at 45.

and Contract Shipyards outlines the risks of asbestos exposure and prevention. Industrial compliance was required. Mr. Dandry worked at Avondale Shipyards in 1971. In 1960 Dr. Wagner determined that asbestos exposure resulted in malignant mesothelioma. The industries that provided asbestos or used asbestos would have been well aware of the health risks and carcinogenicity of asbestos exposure.[65]

Avondale argues that this testimony should be excluded because Dr. Kraus is a medical doctor, rather than an industrial hygiene expert. Avondale argues that Dr. Kraus should not be allowed to give "state of the art" opinions because he is a medical doctor. Avondale does not cite any authority for the proposition that only an industrial hygiene expert can give state of the art opinions. In fact, part of the opinion Avondale takes issue with is a statement in rebuttal to a defense medical expert, Dr. Thomas Howard.[66] Experts are not strictly confined to their area of practice. As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[67] Rather than exclusion, the appropriate remedy is vigorous cross-examination on these issues.

Accordingly,

**IT IS HEREBY ORDERED** that Avondale's *Daubert* Motion to Exclude Certain Testimony of Dr. Stephen Terry Kraus[68] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  19th  day of February, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[65] *Id.* at 47.

[66] *Id.* at 45.

[67] *Daubert*, 509 U.S. at 596.

[68] Rec. Doc. 189.