UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERICA DANDRY CONSTANZA, ET AL. | CIVIL ACTION |
| VERSUS | CASE NO. 24-871 |
| SPARTA INSURANCE COMPANY, ET AL. | SECTION: "G"(5) |

## ORDER AND REASONS

Before the Court is Defendant Huntington Ingalls Incorporated's ("Avondale")[1] *Daubert* Motion to Exclude Testimony of Gerard Baril.[2] In this litigation, Plaintiffs Erica Dandry Constanza and Monica Dandry Hallner (collectively, "Plaintiffs") allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Avondale, was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[3] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[4] Avondale moves the Court to issue an Order excluding the testimony of Plaintiff's expert in industrial hygiene, Gerard Baril.[5] Defendant Liberty Mutual Insurance

---

[1] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[2] Rec. Doc. 191.

[3] Rec. Doc. 1-3 at 2. In addition to Avondale, Plaintiffs also named SPARTA Insurance Company, Bayer CropScience, Inc., Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] *Id.*

[5] Rec. Doc. 191.

1

Company joins the motion.⁶ Plaintiffs oppose the motion.⁷ Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiffs allege Decedent was employed in various positions by Avondale between June 1, 1971, and August 16, 1971.⁸ During that time, Plaintiffs claim Decedent was exposed to asbestos and asbestos-containing products on Avondale's premises.⁹ Plaintiffs further assert Decedent was exposed to asbestos carried home from his work at Avondale on his person, clothing, and other items.¹⁰ Plaintiffs argue, as a result of breathing in these asbestos fibers, Decedent later developed mesothelioma and other ill health effects, ultimately resulting in Decedent's death.¹¹ Plaintiffs contend Defendants had "care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Decedent] and for which these defendants are strictly liable under Louisiana law."¹² Plaintiffs claim "Avondale and its executive officers [ ] are answerable for the conduct of those handling asbestos products on their premises" and that "Avondale failed to exercise reasonable care for the safety of persons on or around their property" for which there were clear "standards" requiring protection for workers.¹³

---

⁶ Rec. Doc. 215.

⁷ Rec. Doc. 253.

⁸ Rec. Doc. 1-3 at 2.

⁹ *Id.*

¹⁰ *Id.*

¹¹ *Id.* at 4.

¹² *Id.* at 5.

¹³ *Id.*

Plaintiffs also name numerous additional defendants who were in the business of "manufacturing, fabricating, selling and/or distributing asbestos containing products."[14] Plaintiffs allege that these defendants "sold, installed, removed and/or abated these products to and/or at Avondale," and Decedent was exposed to asbestos containing products as a result.[15] Further, Plaintiffs allege that these asbestos containing products were "unreasonably dangerous per se, were defective in design, and constituted a breach of warranty from said manufacturers."[16]

Trial in this matter is set to begin on March 9, 2026. On September 15, 2025, Avondale filed the instant *Daubert* Motion to Exclude Testimony of Gerard Baril.[17] On September 19, 2025, Defendant Liberty Mutual Insurance Company joined the motion.[18] On September 23, 2025, Plaintiffs opposed the motion.[19] On September 29, 2025, Avondale filed a reply brief in further support of the motion.[20]

## II. Parties' Arguments

### A.   *Avondale's Arguments in Support of the Motion*

Avondale moves the Court to issue an Order excluding the testimony of Plaintiff's expert in industrial hygiene, Gerard Baril.[21] Avondale argues that Baril's opinions are inadmissible because they rest entirely on counsel-supplied, Avondale-only materials and ignore critical

---

[14] *Id.* at 18.

[15] *Id.* at 19.

[16] *Id.*

[17] Rec. Doc. 191.

[18] Rec. Docs. 210, 215.

[19] Rec. Doc. 253.

[20] Rec. Doc. 280.

[21] Rec. Doc. 191-1.

alternative exposures.[22] Avondale asserts an opinion based on a curated, one-sided record is inherently unreliable.[23] Because Baril did not consider Plaintiff's substantial Johns-Manville exposures, well-documented in family testimony and public records, Avondale argues that his methodology fails Rule 702.[24]

### B.  *Plaintiffs' Arguments in Opposition of the Motion*

In opposition, Plaintiffs contend that Avondale has not identified any testimony or records documenting substantial Johns-Manville exposures sustained by Decedent.[25] Plaintiffs suggest that no such evidence exists.[26] More importantly, even if evidence did exist that Decedent was environmentally exposed to asbestos from Johns-Manville, Plaintiffs point out that Avondale fails to explain what specific opinion or opinions of Baril it believes are unreliable.[27]

Plaintiffs argue that Baril is not required to specifically exclude every other possible exposure source as a possible contributing factor before offering opinions as to Avondale.[28] Plaintiffs contend that this is an improper attempt to require Plaintiffs to disprove Avondale's defense.[29] Plaintiffs assert that the factual basis of Baril's opinion goes to credibility, not admissibility.[30] Finally, Plaintiffs argue that Baril's opinions are reliable and he is eminently

---

[22] *Id.* at 7.

[23] *Id.*

[24] *Id.*

[25] Rec. Doc. 253 at 1–2.

[26] *Id.* at 2.

[27] *Id.*

[28] *Id.* at 5–6.

[29] *Id.* at 6.

[30] *Id.* at 12.

qualified to testify in this matter.[31]

C.     *Avondale's Arguments in Further Support of the Motion*

In reply, Avondale argues that the problem is not with Baril's methodology.[32] Instead, Avondale suggests the issue is that Plaintiffs' counsel altered the facts by deliberately depriving Baril of the facts necessary to apply those methods reliably.[33]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[34] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education," may provide expert testimony when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[35] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony must be based upon sufficient facts or data,

(2) the testimony must be the product of reliable principles and methods, and

(3) the expert must reliably apply the principles and methods to the facts of the case.[36]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific

---

[31] *Id.* at 14–21.

[32] Rec. Doc. 280 at 3.

[33] *Id*.

[34] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[35] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[36] Fed. R. Evid. 702.

testimony or evidence admitted is not only relevant, but reliable."[37] The court's gatekeeping function mostly involves a two-part inquiry.

First, the court must determine whether the expert testimony is reliable, which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[38] The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[39] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[40] In analyzing reliability, *Daubert* instructs courts to consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[41]

Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[42] The second inquiry primarily analyzes whether the expert testimony is relevant.[43]

---

[37] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[38] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[39] *Seatrax*, 200 F.3d at 372.

[40] *See Daubert*, 509 U.S. at 590.

[41] *Id.* at 592–94. In *Kumho Tire*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 141. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[42] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[43] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[44] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[45] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[46] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left to the jury's consideration."[47]

Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."[48] "The rule was enacted to change the old view that [] giving an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury."[49] The rule, however, "does not open the door to all opinions."[50] Witnesses may not "tell the jury what result to reach," nor may they "give legal conclusions."[51] The Fifth Circuit has explained that "the task of separating impermissible question which call for overbroad or legal responses from permissible questions is not a facile one," but one that requires courts to exclude questions or answers from experts that "would supply the jury with no information other than the expert's

---

[44] *See Daubert*, 509 U.S. at 596.

[45] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[46] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[47] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[48] Fed. R. Evid. 704(a).

[49] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[50] *Id.*

[51] *Id.* (citing *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir. 1981).

view of how its verdict should read."[52]

## IV. Analysis

Avondale argues that Baril's opinions are inadmissible because they rest entirely on counsel-supplied, Avondale-only materials and ignore critical alternative exposures. Avondale has not demonstrated that Baril's methodology was unreliable. The alleged alternative exposures are part of Avondale's defense. Avondale is free to cross-examine Baril about these exposures and whether they impact his conclusions. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[53] Outright exclusion of Baril's testimony is not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Avondale's *Daubert* Motion to Exclude Testimony of Gerard Baril[54] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  19th  day of February, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[52] *Id.*

[53] *14.38 Acres of Land*, 80 F.3d at 1077 (internal citations and quotation marks omitted).

[54] Rec. Doc. 191.