**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ERICA DANDRY CONSTANZA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-871** |
| **SPARTA INSURANCE COMPANY, ET AL.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court are two Motions to Strike Plaintiffs' Air Monitoring Expert and Report[1] filed by Defendant Huntington Ingalls, Inc. ("Avondale")[2] and Defendant Bayer CropScience, Inc.'s ("Bayer")[3] (collectively referred to herein as "Defendants"). In this litigation, Plaintiffs allege Decedent Michael P. Dandry, Jr. ("Decedent"), while an employee for Avondale, was exposed to asbestos and asbestos-containing products manufactured, distributed, sold, and/or handled by Avondale and other parties.[4] Plaintiffs allege this exposure caused and/or contributed to Decedent's development of mesothelioma and, ultimately, his death.[5] On the other hand, Defendants advance an alternative theory of asbestos exposure from other sources, including on properties near Decedent's childhood home and workplace.[6]

---

[1] Rec. Docs. 592, 593.

[2] Huntington Ingalls, Inc. was formerly known as: Northrop Grumman Shipbuilding, Inc., Northrop Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyard Inc., and Avondale Marine Ways, Inc.

[3] In addition to Avondale and Bayer, Plaintiffs also named SPARTA Insurance Company, Foster-Wheeler, LLC, General Electric Company, Hopeman Brothers, Inc., Taylor-Seidenbach, Inc., Paramount Global, Uniroyal, Inc., International Paper Company, Eagle, Inc., Uniroyal Holding, Inc., and Liberty Mutual Insurance Company as defendants.

[4] Rec. Doc. 1-3 at 2.

[5] *Id.*

[6] Rec. Doc. 243.

Reagan Maloney was originally hired by Avondale to take soil samples and test for asbestos contamination from various addresses in Marrero, Louisiana, the city where Decedent lived and worked.[7] On February 23, 2026, the Court granted in part Plaintiffs' Motion to Exclude Testimony and Report of Reagan Maloney[8] to the extent that it sought to exclude the testimony and report of Reagan Maloney, and the portions of other experts' reports and testimony that rely on the report and soil samples of Reagan Maloney, because Avondale destroyed the soil samples after they were tested.[9] Thus, Plaintiffs were denied the right to examine and/or test the samples.

On March 2, 2026, the Court granted Bayer's Motion to Continue Trial "for the limited purpose of allowing the parties to conduct soil testing at and around the Dandry family property."[10] The Court set forth a specific protocol to be followed for the soil testing.[11] The Court ordered the parties to confer and attempt to agree on the addresses from which soil would be collected.[12] If the parties were unable to agree on the locations where soil will be collected, the Court ordered the parties to meet with the assigned Magistrate Judge to resolve any dispute.[13] Additionally, the protocol established by the Court required the parties to provide advance notice of the sampling, preserve the samples through trial, and afford both Plaintiffs and Defendants the opportunity to independently test the samples.[14] The Court reiterated in the order that "discovery is open for the

---

[7] Rec. Doc. 194-4.

[8] Rec. Doc. 194.

[9] Rec. Doc. 515.

[10] Rec. Doc. 534 at 6.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

narrow and limited purpose of taking and testing the soil samples."[15] The Court further ordered that the parties must request leave of Court and present good cause to conduct any additional discovery or to file any motions related to the new soil samples.[16]

Ultimately, the parties could not agree on the scope of the soil sampling. Following a status conference, the Magistrate Judge ordered that soil sampling would occur at all of the proposed areas.[17] The Magistrate Judge further ordered that half of the sampling be provided to Plaintiffs to conduct their own testing.[18] The soil sampling was ultimately conducted as ordered.

On June 24, 2026, Plaintiffs produced expert reports, including a report by MY Environmental Consulting for air monitoring conducted at the former Dandry family property on June 5, 2026.[19] Avondale and Bayer both argue that the air monitoring expert and report should be excluded because: (1) Plaintiffs did not obtain leave of Court to conduct the additional air monitoring discovery; (2) Plaintiffs did not follow any protocol set forth by the Court; and (3) Plaintiffs violated the Court's express ruling that trial was continued for the limited purpose of conducting discovery related to the soil sampling.[20] Bayer also asserts that Plaintiffs' unilateral air monitoring resulted in the same prejudice that previously warranted exclusion of the original soil samples.[21] Bayer points out that Defendants received no advance notice of the air monitoring and

[15] *Id.*

[16] *Id.* at 7.

[17] Rec. Doc. 542.

[18] *Id.*

[19] Rec. Doc. 592-4.

[20] Rec. Doc. 592-1 at 4; Rec. Doc. 593 at 6.

[21] Rec. Doc. 593 at 6.

had no opportunity to observe the testing, evaluate the conditions under which it was performed, or conduct contemporaneous testing of their own.[22]

Plaintiffs oppose both motions.[23] Plaintiffs dispute Bayer's assertion that the air monitoring results should be excluded for the same reason the original soil sampling was excluded.[24] Plaintiffs submit that "[t]he issue with Reagan Maloney's report was not that Plaintiffs did not have input into how Reagan Maloney conducted the testing, but was that the samples were not preserved and that she did not even test the correct property."[25] Plaintiffs submit that their expert has preserved the air samples that he took, he took photographs during the air sampling, and all photographs have been produced to Defendants.[26] Plaintiffs assert that Defendants should not be allowed to direct what type of evidence Plaintiffs choose to offer to rebut Defendants' soil sampling expert reports.[27] Plaintiffs state they did not even know what expert reports would be needed until obtaining and reviewing the reports of Defendants' experts.[28]

In reply, Avondale suggests that Plaintiffs chose not to conduct their own soil sampling because they did not want to confirm the presence of asbestos in and around the family property.[29] Avondale contends that Plaintiffs deprived Defendants of the right to establish a protocol, to retain their own air monitoring company, and to otherwise be present and participate in the air

---

[22] *Id.* at 7.

[23] Rec. Doc. 602.

[24] *Id.* at 3.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 3, 11.

[29] Rec. Doc. 612 at 5.

monitoring, just like Plaintiffs were able to participate in the soil sampling.[30] Bayer argues that Plaintiffs could have reasonably anticipated the need for air monitoring long before receiving Defendants' soil sampling report.[31] Bayer contends that the evidence should be excluded because Plaintiffs went beyond the limited scope of soil sampling and testing authorized by the Court, without obtaining leave or providing good cause.[32]

The Court agrees with Defendants that Plaintiffs should have requested leave of Court before conducting the air monitoring. The March 2, 2026 Order reopened discovery "for the narrow and limited purpose of taking and testing the soil samples."[33] The Court further ordered that "the parties must request leave of Court and present good cause to conduct any additional discovery or to file any motions related to the new soil samples."[34] The March 25, 2026 Scheduling Order reiterated the same.[35] The Scheduling Order also stated that "[w]ritten reports of Plaintiffs' retained expert(s) . . . in relation to the soil samples, shall be obtained and delivered to counsel for Defendants as soon as possible, but in no event later than June 12, 2026."[36] Thereafter, the Court granted a motion to extend Plaintiffs' deadline to June 26, 2026.[37] Plaintiffs disclosed the air monitoring report on June 24, 2026.[38] Accordingly, although Plaintiffs timely disclosed the expert

---

[30] *Id.* at 6–7.

[31] Rec. Doc. 614 at 3.

[32] *Id.* at 5.

[33] Rec. Doc. 534 at 6.

[34] *Id.* at 7.

[35] Rec. Doc. 538 at 1.

[36] *Id.* at 2.

[37] Rec. Doc. 558.

[38] Rec. Doc. 592-1 at 4.

report pursuant to the Court's extended deadline, Plaintiffs should have sought leave before conducting the air monitoring, and their failure to do so violated the Court's Order.

Nevertheless, Defendants have not shown that exclusion of the air monitoring is warranted. Federal Rule of Civil Procedure 26(a)(2)(B) provides for the disclosure of expert reports. Disclosures under Rule 26(a)(2)(D) must be made in accordance with the deadlines set in the Court's Orders, or, absent a stipulation or a court order, at least 90 days before trial.[39] Any opinions that are not properly disclosed in accordance with Rule 26(a) may be excluded "unless the failure was substantially justified or is harmless."[40] However, exclusion is not mandatory or automatic.[41] Instead, the matter left to the district court's discretion.[42] In deciding whether to exercise its discretion to exclude an expert witness for failure to comply with Rule 26(a)(2), the Court is guided by four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."[43]

Considering the first factor, the air monitoring evidence is relevant to Plaintiffs' response to Defendants' evidence suggesting that Decedent may have been exposed to asbestos at or near the Dandry family property. Plaintiffs intend to use the air monitoring to rebut Defendants' soil sampling. The evidence therefore bears directly on a disputed issue in this litigation.

As to the second factor, Defendants have not shown that they will be prejudiced if the

---

[39] Fed. R. Civ. P. 26(a)(2)(D).

[40] Fed. R. Civ. P. 37(c)(1).

[41] *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

[42] *Id.*

[43] *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (internal citation omitted).

evidence is offered at trial. Defendants received the evidence on June 24, 2026, more than four months before the current trial date. Moreover, Defendants had the opportunity to depose Plaintiffs' air monitoring expert. Defendants suggest that they should have been given the opportunity to participate in the testing. Although Defendants did not have the opportunity to participate contemporaneously in the testing, Defendants have not raised any argument challenging the expert's methodology. Plaintiffs' expert preserved the air samples that he took and he took photographs during the air sampling. All of the photographs have been produced to Defendants. If Defendants wanted to have these samples evaluated by an expert of their choosing, they could have arranged such testing.

As to the third factor, a continuance of the trial date is not necessary to cure any prejudice, because no prejudice has been demonstrated. As to the fourth factor, the Court finds Plaintiffs' explanation for conducting the air monitoring sufficient under the circumstances. Plaintiffs explain that they determined the air monitoring was necessary after receiving and reviewing the results and expert opinions concerning the 2026 soil sampling. Although Defendants argue that Plaintiffs could have anticipated the need for air monitoring earlier, the Court finds Plaintiffs' explanation sufficient to weigh against exclusion.

Accordingly,

**IT IS HEREBY ORDERED** that the Motions to Strike Plaintiffs' Air Monitoring Expert and Report[44] are **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 20th day of October, 2026.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

[44] Rec. Docs. 592, 593.